# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### (JACKSONVILLE DIVISION)

| | | |
|---|---|---|
| Wendell Perez, individually and | ) | |
| as next friend of A.P., a minor | ) | |
| Maria Perez, individually and | ) | |
| as next friend of A.P, a minor, | ) | |
| | ) | |
| Plaintiffs | ) | Case No. 3:22-cv-83 |
| v. | ) | |
| David Broskie, individually, | ) | |
| and in his official capacity as | ) | Jury Trial Demanded |
| Superintendent of Clay County | ) | |
| District Schools, John O'Brian, | ) | |
| individually, and in his official | ) | |
| capacity as Principal of Paterson | ) | |
| Elementary School, | ) | |
| Courtney Schumacher, individually, | ) | |
| and in her official capacity as | ) | |
| Assistant Principal of Paterson | ) | |
| Elementary School, | ) | |
| Destiney Washington, individually | ) | |
| and in her official capacity as | ) | |
| counselor at Paterson Elementary | ) | |
| School, | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT AND DAMAGES

Plaintiffs, Wendell Perez, individually and as next friend of A.P., a minor,

Maria Perez, individually and as next friend of A.P, a minor, ("Plaintiffs") by and

through counsel, file this civil action and respectfully request this Court to issue

injunctive relief, a declaratory judgment and award damages for violations of the

United States Constitution, Florida Constitution, and Florida Statutes by Defendants, David Broskie, John O'Brian, Courtney Schumacher and Destiney Washington.

In support thereof, Plaintiffs state:

**INTRODUCTION**

1.     Plaintiffs bring this action to vindicate their fundamental rights as enumerated in the United States and Florida constitutions and rights protected under Florida Statutes. Defendants have violated Plaintiffs' fundamental rights by, *inter alia*, a) failing to notify Mr. and Mrs. Perez about their daughter A.P.'s mental health issues as required under Florida law, b) secretly meeting with A.P. over the course of several months to promote and affirm the idea that A.P. could be a boy named "M" rather than addressing A.P.'s problems with self-confidence and bullying; c) promising A.P. that her parents would not be informed about A.P. being treated at school as a boy named "M," d) breaching A.P.'s privacy by informing peers to refer to A.P. as a boy named "M" without A.P.'s permission, leading to increased bullying of A.P. e) continuing to breach A.P.'s privacy by promising to convince all of her teachers to refer to her as a boy named "M" without A.P. making such a request, causing A.P. increased distress; f) continuing to refuse to communicate with A.P.'s parents regarding A.P.'s mental health issues and bullying occurring at school until after A.P. attempted suicide twice while on school property, and g) blaming A.P.'s

suicide attempt on Mr. and Mrs. Perez's perceived lack of agreement with their daughter's gender confusion because of their Catholic Christian faith.

2.      Defendants further violated Plaintiffs' fundamental rights by intentionally and recklessly withholding information from Mr. and Mrs. Perez related to A.P.'s questions regarding gender identity issues based upon alleged "confidentiality rights" on the part of A.P. that are contrary to law.

## JURISDICTION AND VENUE

3.      This action is filed pursuant to 42 U.S.C. § 1983 seeking redress of injuries suffered by Plaintiffs from deprivation, under color of state law, of rights secured by the First and Fourteenth amendments to the United States Constitution, by Article I of the Florida Constitution and pursuant to laws of the United States and the laws of Florida. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a).

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and other applicable law because the events and omissions giving rise to the claims in this action arose in Clay County, Florida, which is situated within the district and divisional boundaries of the Middle District of Florida.  Venue is also proper in this Court because the Defendants reside or have their principal place of business in this District.

5.     This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, implemented through Federal Rule of Civil Procedure 57, and to issue injunctive relief under Federal Rule of Civil Procedure 65.

6.     An actual controversy exists between the parties involving substantial constitutional issues, in that Plaintiffs allege that Defendants' policies, procedures, directives and actions taken in accordance with them, as applied, violate the United States and Florida constitutions and Florida Statutes and have infringed Plaintiffs' rights, while Defendants will allege that their policies, procedures, directives, and actions comport with the United States and Florida constitutions and Florida Statutes.

7.     This Court is authorized to grant Plaintiffs' prayer for relief regarding costs, including a reasonable attorney's fee, under 42 U.S.C. § 1988.

## PARTIES

8.     Plaintiffs Wendell and Maria Perez, and their daughter, A.P. are residents of Clay County, Florida.

9.     Plaintiffs' daughter, A.P. is a student at Paterson Elementary School, which is part of Clay County District Schools.

10.     Defendant David Broskie is the Superintendent of Clay County District Schools, having been elected by the citizens of Clay County pursuant to Article IX,

§ 5 of the Florida Constitution. He is and was at all times relevant herein, acting within the course and scope of his constitutional authority as Superintendent and his duties under Fla. Stat. §§ 1001.49, 1001.51, and other applicable Florida law and consistent with the customs, policies, and practices of Clay County District Schools.

11.     As Superintendent, Defendant Broskie is the executive officer of the School Board, tasked with implementing and enforcing School District policies set out by the School Board, as well as supervising and disciplining employees under Fla. Stat. § 1001.33. He nominates candidates for district positions to the School Board which then votes on whether to hire the individuals. He is sued in his individual and official capacities.

12.     Defendant John O'Brian is the Principal of Paterson Elementary School, which is part of Clay County District Schools. He is and was at all times relevant herein, acting within the course and scope of his employment, under color of state law and consistent with the customs, policies, and practices of Clay County District Schools, having been hired by the School Board upon nomination by the Superintendent. As principal, he is responsible for the performance of all personnel employed by the district school board and assigned to the school to which he is assigned under Fla. Stat. § 1012.28. He is sued in his individual and official capacities.

13.     Defendant Courtney Schumacher is the Assistant Principal of Paterson Elementary School, which is part of Clay County District Schools. She is and was at all times relevant herein, acting within the course and scope of her employment, under color of state law and consistent with the customs, policies, and practices of Clay County District Schools. She is sued in her individual and official capacities.

14.     Defendant Destiney Washington is a School Counselor at Paterson Elementary School, which is part of Clay County District Schools. She is and was at all times relevant herein, acting within the course and scope of her employment, under color of state law and consistent with the customs, policies, and practices of Clay County District Schools. She is sued in her individual and official capacities.

## STATEMENT OF FACTS

15.     Plaintiffs' daughter, A.P. is a sixth grader at Paterson Elementary School.

16.     Plaintiffs and A.P. are practicing Roman Catholics whose sincerely held religious beliefs, including a Judeo-Christian worldview based on natural law and objective truth, permeate all aspects of their lives.

17.     Plaintiffs are informed and believe and based thereon allege that district staff was aware of their sincerely held religious beliefs and that those beliefs required adherence to the teachings of Scripture and the Church, honesty, and objectively verifiable scientific facts.

6

18.     On January 5, 2022, Mr. and Mrs. Perez received a call from Defendant Washington, who identified herself as a school counselor at Paterson Elementary School.

19.     Mrs. Washington told Mr. and Mrs. Perez that they needed to come to the school right away, "It's about A." Mrs. Washington would not reveal any further information.

20.     Mr. and Mrs. Perez arrived at the school and waited in the lobby for 20 minutes, still having no information about their daughter.

21.     Finally, Mr. and Mrs. Perez were escorted into a room with Mrs. Washington, Principal O'Brian, Vice Principal Schumacher, and a Clay County Schools Police officer. Mr. and Mrs. Perez were instructed to sit down.

22.     Mrs. Washington told Mr. and Mrs. Perez that the reason that they were called to the school was because A.P., their 12-year-old daughter, had tried to commit suicide by hanging herself in the school restroom.

23.     Mr. and Mrs. Perez were shocked by this revelation and Mrs. Perez asked why it happened.

24.     Mrs. Washington responded, "Because of her gender identity issue." Mrs. Washington said that A.P. wanted to be referred to as a male named "M." and "he" and that her parents would not be in agreement with these changes because of their Catholic Christian religious beliefs.

7

25.     Mrs. Washington thereby revealed her understanding that the Perez family adhered to sincerely held religious beliefs that did not agree with a girl being falsely identified as a male with a male name and use of male pronouns.

26.     Mrs. Washington revealed that the suicide attempt on January 5, 2022 was actually the second attempt, stating that A.P. had similarly tried to hang herself on January 4, 2022. Mrs. Washington claimed that school staff was not aware of the first attempt prior to the attempt on January 5, 2022.

27.     Mr. Perez stated that this was the first he had heard about A.P. having any issue with her sex.

28.     Prior to the incident on January 5, 2022, A.P. had not exhibited any signs of gender confusion or questioning of her biological sex. In fact, just before the incident she had told her mother that she believed that people who say they are transgender have a problem with their minds because "if you're a boy, you're a boy, if you're a girl, you're a girl."

29.     Prior to the meeting on January 5, 2022, Mr. and Mrs. Perez had not received any information from the school that A.P. was experiencing distress or exhibiting signs of gender confusion. Nor did they receive any information from the school that A.P. was being bullied at school and feeling insecure about being a girl, which was apparently happening.

30.     At the meeting on January 5, 2022, Mrs. Washington told Mr. and Mrs. Perez that she had been meeting with A.P. on a weekly basis for a period of three to four months during which time Defendant Washington discussed the gender confusion and bullying with A.P.  Thereafter A.P.'s distress escalated to the point of attempting suicide at school, all of which occurred without her parents' knowledge.

31.     Mr. and Mrs. Perez were not informed of the full extent of the matters discussed, or of who else might have been meeting with their daughter or who in district or school administration was aware of and approved of the surreptitious meetings. Mr. and Mrs. Perez are informed and believe and based thereon allege that Mrs. Schumacher was aware of the meetings based upon her comments during the January 5, 2022 meeting regarding "confidentiality."

32.     Mr. and Mrs. Perez were not notified about the meetings or asked for their consent for their minor child to discuss such mental health issues with anyone at school, and were not provided with the opportunity to participate in the discussions.

33.     At no time prior to the crisis on January 5, 2022 were Mr. and Mrs. Perez informed that their 12-year-old daughter had questions about or distress concerning her sex, let alone that while at school she had become distressed to the point of attempting suicide twice on school property.

34.     At the January 5, 2022 meeting, Mrs. Schumacher told Mr. and Mrs. Perez that school officials were "not required" to tell the parents about the meetings with their 12-year-old daughter, thus expressing that there was at least a *de facto* district policy against notifying parents. Mrs. Schumacher said "confidentiality issues" prevented them from notifying the parents. Neither she nor anyone affiliated with the school provided legal authority for these assertions.

35.     To the contrary, Clay County Schools' Webpage addressing "student mental health and well-being" includes a document entitled "Understanding Confidentiality" addressed to parents of children receiving counseling at school. A true and correct copy of the "Understanding Confidentiality" document is attached to this Complaint, marked as Exhibit A and incorporated herein by reference as if set forth in full.

36.     The "Understanding Confidentiality" document specifically states:

Children seen in individual sessions (except under certain conditions) **are not legally entitled to confidentiality** (also called privilege); **their parents have this right**. However, unless children feel they have some privacy in speaking with a counselor, the benefits of therapy may be lost. Therefore, it is necessary to work out an arrangement in which children feel that their privacy is generally being respected, at the same time that parents have access to critical information. This agreement **must have the understanding and approval of the parents** or other responsible adults and of the child in therapy.

Exhibit A, p. 1 (emphases added).

37.     Mr. and Mrs. Perez were not provided with this document prior to their daughter engaging in weekly sessions with Mrs. Washington and perhaps others. They were not provided access to critical information regarding their child. Since they were never informed that their daughter was being seen by the school counselor, they did not reach an understanding nor approve of any arrangement regarding their daughter's counseling sessions.

38.     Mr. and Mrs. Perez were not provided with, let alone did they sign, "Consent for Treatment" forms necessary for their daughter to be seen by school counseling staff.

39.     Nevertheless, Mrs. Washington, and perhaps others, met weekly with A.P. for several months, discussing and addressing mental health issues, and promoting the idea that A.P. could identify as a boy, be called "M" and "he" and thereby address her issues related to bullying and self-confidence in being a girl.

40.     At some point during those sessions, A.P.'s mental distress escalated to the point that she became suicidal. Still, her parents were not informed until she had actually attempted suicide at school twice.

41.     Mr. and Mrs. Perez did not receive so much as a phone call until their 12-year-old daughter had already tried to kill herself twice and was being admitted to a mental health facility under the Baker Act. Had A.P.'s suicide attempts been

successful, Mr. and Mrs. Perez would have known nothing about their daughter's mental health issues until they received word that their child was dead.

42.   At the January 5, 2022 meeting, Mr. and Mrs. Perez were informed by a Clay County Schools Police officer that A.P. had been placed in the back of a police car and was going to be transported to a mental health facility under the Baker Act.

43.   The officer advised Mr. and Mrs. Perez that A.P. was going to be transported regardless of whether the parents agreed. Mr. and Mrs. Perez agreed that A.P. be transported to the mental health facility.

44.   Mr. and Mrs. Perez were not given the option of transporting their traumatized daughter to the facility or even traveling with her to provide comfort.

45.   Instead, their suicidal 12-year-old daughter was taken in a police vehicle to an emergency room, where she stayed until 4 a.m. when she was transferred alone, without the comfort and/or support of her parents, to another emergency room and then admitted to the behavioral health unit at Wolfson Children's Hospital.

46.   At the meeting on January 5, 2022, Mr. Perez informed those present that he and Mrs. Perez did not agree with calling their daughter by a false male name and identity. He made it clear that as practicing Roman Catholics the parents are not in agreement with changing A.P.'s name, identity, and pronouns, and that such

actions would be directly contrary to the family's religious beliefs which permeate all of their lives.

47.     Principal O'Brian said that no one could impose changes on the family that are against their values. In the presence of Mr. O'Brian, Mrs. Washington claimed she would never do that, even though she had been doing exactly that clandestinely for many months.

48.     Despite Mrs. Washington's claim that A.P. attempted suicide because she was distressed because her parents would not affirm her desire to be referred to as a boy named "M." and with the pronoun "he," when A.P. was admitted to the hospital and staff referred to her as "M," she corrected them and said, "I'm not M, I'm A."

49.     A.P. remained as an inpatient at Wolfson Children's Hospital behavioral health unit with only limited access to her parents until January 13, 2022 when she was discharged into her parents' care.

50.     Only after A.P. returned home did Mr. and Mrs. Perez learn about the extent of Defendants' interference with their fundamental parental rights.

51.     After returning home. A.P. explained that during fall semester 2021 she was being bullied at school and felt weak, that as a girl she could not do anything to stop it.

52.     A.P. likes video games and sports and was told by her peers that those were "boy things." A friend confided in A.P. that she thought she was "transgender," and A.P. began to think she could be transgender too because she wanted to be strong and free "like a boy."

53.     A.P. went to see Mrs. Washington and noticed that Mrs. Washington had a lot of posters, literature, and other promotional materials related to LGBTQ "pride" in her office. A.P. thought those materials were "cool."

54.     A.P. asked Mrs. Washington if she supported transgender people and Mrs. Washington said that she did. A.P. said to Mrs. Washington, "in that case call me "M" and 'he'."

55.     A.P. continued to see Mrs. Washington at least weekly during which time Mrs. Washington endorsed the belief that A.P. could be a boy and called A.P. "M" and "he."

56.     Mrs. Washington, who had not informed Mr. and Mrs. Perez of her meetings with A.P. and of A.P.'s mental health concerns, asked A.P. whether her parents "accepted" her. A.P. replied that her parents did not know about A.P. being referred to as a boy and that she did not want her parents to know because of their Christian values as practicing Catholics.

57.     In further disregard for the law regarding parental notification and the school's own protocols regarding confidentiality, Mrs. Washington assured A.P. that she would not tell A.P.'s parents.

58.     However, Mrs. Washington's promise of confidentiality did not extend to A.P.'s peers and others. A.P. had not told others outside of Mrs. Washington's office about being called "M." Mrs. Washington took it upon herself to show her endorsement of a male identity by calling A.P. "M" outside of her office and in front of A.P.'s friends without first consulting A.P.

59.     A.P. was humiliated. Peers began further bullying her then about her purported gender confusion, hurling insults at her related to her discordant identity.

60.     A.P. became more confused and depressed as the bullying she was trying to remedy had only gotten worse because of Mrs. Washington's actions.

61.     A.P. did not ask Mrs. Washington for any help notifying other teachers about being called "M." Nevertheless, Mrs. Washington promised A.P: "I will get ALL of your teachers to call you "M." "I don't know when it will happen but it WILL happen."

62.      Still, neither Mrs. Washington nor anyone else from the school or the district contacted Mr. and Mrs. Perez about these meetings and incidents regarding A.P. being falsely referred to as a male.

63.     School officials had previously informed Mr. and Mrs. Perez about some concerns regarding A.P. falling behind academically and being unruly in class. Mr. and Mrs. Perez immediately addressed those issues and A.P.'s academic performance improved.

64.     However, those same protocols were ignored when A.P. was experiencing mental health issues, issues that are wholly and exclusively within the purview and responsibility of Mr. and Mrs. Perez as parents, and which posed a much greater threat to A.P.'s safety, mental health, and well-being. Rather than immediately contacting Mr. and Mrs. Perez as they had regarding academic and discipline issues, Defendants deliberately withheld critical mental health information from them based on an unsubstantiated assertion that the information was "confidential" because it related to gender identity.

65.     Defendants recklessly disregarded the rights of Mr. and Mrs. Perez as the parents of A.P. and substituted their judgment for that of the parents in providing mental health counseling and treatment without the knowledge or consent of A.P.'s fit parents.

66.     Defendants' clandestine and unauthorized actions regarding A.P. deprived Mr. and Mrs. Perez of their right to be informed of what was going on with their child concerning a serious mental health issue and of their ability to determine

and provide their child the mental health care and assistance she needed before she became suicidal.

67.    Defendants' reckless disregard for the rights of Mr. and Mrs. Perez and for the well-being of A.P. led to A.P. attempting suicide twice on school property, causing permanent injury to A.P. and to the familial relationship between A.P. and her parents.

68.    A.P. has suffered and continues to suffer emotional distress, psychological and physical injuries as the direct result of Defendants' reckless disregard for her right to receive care, comfort, and guidance from her parents, her right to free exercise of her sincerely held religious beliefs, her right to familial privacy, and other individual rights.

69.    Mr. and Mrs. Perez have suffered and continue to suffer emotional distress, psychological and physical injuries as the direct result of Defendants' reckless disregard for their fundamental parental rights to direct the upbringing, education and mental and physical health care for their daughter, their right to familial privacy, right to free exercise of religion, and their rights under the Parents' Bill of Rights and other Florida statutes.

**FIRST CAUSE OF ACTION**
**VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983**
**(Violation of Plaintiffs' Substantive Due Process Fundamental Parental Right**
**to Direct the Education and Upbringing of Their Child under the U.S.**
**Constitution)**
**(By Mr. and Mrs. Perez individually Against all Defendants)**

70.     Plaintiffs incorporate the preceding allegations by reference as if set forth in full.

71.     The Due Process Clause in the 14th Amendment to the United States Constitution protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children. *Troxel v. Granville*, 530 U.S. 57, 68 (2000)

72.     Defendants violated Plaintiffs' fundamental right to make decisions regarding the custody, care and control of their daughter when Mrs. Washington and perhaps others surreptitiously began meeting with A.P. weekly to discuss and address mental health issues, promote and affirm a discordant gender identity and continue meeting with A.P. without the knowledge and approval of her parents.

73.     Defendants acted with deliberate indifference to Plaintiffs' fundamental parental rights by meeting with Plaintiffs' daughter and engaging in mental health counseling over a period of several months without notifying parents despite enactment of the Parents' Bill of Rights and published district protocols which state, consistent with the law, that children do not enjoy rights of confidentiality vis-a-vis their parents.

74.     Defendants acted with deliberate indifference to Plaintiffs' fundamental parental rights by withholding information regarding their daughter's mental health based on a *de facto* district policy based on an unsubstantiated assertion that children have rights of confidentiality that prohibit disclosing information regarding gender identity to parents, thereby explicitly and intentionally excluding Plaintiffs from significant decision-making directly related to their daughter's well-being.

75.     Defendants further acted with deliberate indifference to Plaintiffs' fundamental rights by failing to notify Plaintiffs that their daughter's mental health was deteriorating to the point that she became suicidal.

76.     Defendants further acted with deliberate indifference to Plaintiffs' fundamental rights by implicitly affirming the message that because of the family's sincerely held religious beliefs A.P.'s parents would not accept A.P.'s request that she be falsely referred to as a boy named "M" with male pronouns, so that they would not be informed, thereby creating discord and division between A.P. and her parents without even communicating with Mr. and Mrs. Perez.

77.     Defendants' deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights.

78.     Plaintiffs' constitutionally protected right to direct the upbringing and education of their children was violated as the plainly obvious consequence of

Defendants' actions in intentionally and explicitly withholding information from Mr. and Mrs. Perez in accordance with a *de facto* school policy that parents were not to be notified when their children expressed a discordant gender identity and wanted to affirm that identity.

79.     Defendants cannot assert a compelling interest for disregarding Plaintiffs' long-established fundamental constitutional right to direct the upbringing, care, and education of their children, and Defendants' prohibition against parental notification is not narrowly tailored.

80.     Defendants' violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

81.     Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their fundamental rights.

**SECOND CAUSE OF ACTION**
**VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983**

**(Violation of Plaintiffs' Fundamental Parental Right to Direct the Medical and Mental Health Decision-making for Their Child Under the U.S. Constitution)**
**(By Mr. and Mrs. Perez individually Against all Defendants)**

82.     Plaintiffs incorporate the preceding allegations by reference as if set forth in full.

83.     The Due Process Clause in the 14th Amendment to the United States Constitution protects the fundamental right of parents to direct the medical and

20

mental health decision-making for their children. *Parham v. J. R.*, 442 U.S. 584 (1979).

84.   Defendants' violated Plaintiffs' fundamental right to make decisions regarding medical and mental health care for their daughter when Mrs. Washington and perhaps others surreptitiously began meeting with A.P. weekly to discuss and treat mental health issues, promote and affirm a discordant gender identity and continue meeting with A.P. without the knowledge and approval of her parents.

85.   Defendants acted with deliberate indifference to Plaintiffs' fundamental parental rights by withholding information regarding their daughter's mental health based on an unsubstantiated assertion that children have rights of confidentiality that prohibit disclosing information regarding gender identity to parents, thereby explicitly and intentionally excluding Plaintiffs from making the mental health decisions for their daughter that are exclusively their right to make.

86.   Defendants further acted with deliberate indifference to Plaintiffs' fundamental rights by failing to inform Plaintiffs about their daughter's mental health issues so that they could determine the provision of treatment and care before she became suicidal and had to be involuntarily committed under the Baker Act.

87.   Defendants' deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights.

88.    Plaintiffs' constitutionally protected right to direct the medical and mental health decision-making for their child was violated as the plainly obvious consequence of Defendants' actions in intentionally and explicitly withholding information from Mr. and Mrs. Perez in accordance with a *de facto* district policy that parents were not to be notified when their children expressed a discordant gender identity and wanted to affirm that identity.

89.    Defendants cannot assert a compelling interest for disregarding Plaintiffs' long-established fundamental constitutional right to direct the medical and mental health care for their child, and Defendants' prohibition against parental notification is not narrowly tailored.

90.    By excluding Mr. and Mrs. Perez from discussions regarding their child's mental health issues, including questions regarding gender identity and adopting protocols aimed at withholding information from parents, Defendants are making decisions that affect the mental health of their child in contravention of Plaintiffs' fundamental rights.

91.    Defendants have usurped Plaintiffs' responsibility for the health and well-being of their child and sought to supplant their authority for Plaintiffs' authority as fit parents to be the ultimate decision makers regarding the physical and mental health of their child, including decisions related to their child's confusion or distress about her sex or gender identity. Substituting their judgment for the

judgment of A.P.'s parents led to A.P. attempting suicide at school and being subject to police intervention and involuntary commitment and confinement under the Baker Act.

92.    Defendants' deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights to direct the medical and mental health decision-making for their child.

93.    Plaintiffs' constitutionally protected right to direct the medical and mental health decision-making for their child was violated as the plainly obvious consequence of Defendants' actions in meeting surreptitiously with A.P., withholding mental health information from Mr. and Mrs. Perez, promoting and affirming a discordant gender identity, affirming disparaging messages regarding the family's sincerely held religious beliefs and taking other actions of which Plaintiffs are presently unaware.

94.    Defendants cannot assert a compelling state interest for disregarding Plaintiffs' long-established fundamental constitutional right to make medical and mental health care decisions for their child, and Defendants' explicit prohibition against parental notification is not narrowly tailored.

95.    Defendants' violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

96.     Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their fundamental rights.

## THIRD CAUSE OF ACTION
## VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983

**(Violation of Plaintiffs' Right to Familial Privacy Under the U.S. Constitution)**
**(Against all Defendants)**

97.     Plaintiffs incorporate the preceding allegations by reference as if set forth in full.

98.     The Due Process Clause in the 14th Amendment to the United States Constitution protects the sanctity of the family as an institution deeply rooted in this Nation's history and tradition through which moral and cultural values are passed down. *Moore v. East Cleveland*, 431 U.S. 494, 503-04 (1977). The Constitution protects the private realm of the family from interference by the state. *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944).

99.     In substituting their judgment regarding the mental health of A.P. for the judgment of the parents by meeting secretly to promote and affirm gender confusion and a discordant gender identity without notifying the parents, Defendants have impermissibly injected themselves into the private realm of Plaintiffs' family by usurping Plaintiffs' rights to make decisions regarding their child's mental health and well-being.

100.    In substituting their judgment regarding the mental health of A.P. for the judgment of the parents by meeting secretly to promote and affirm gender

24

confusion and a discordant gender identity without notifying the parents, Defendants have impermissibly injected themselves into the private realm of Plaintiffs' family by depriving A.P. of her right to have decisions regarding her mental health and well-being made by her parents.

101.   Defendants have infringed Plaintiffs' right to family privacy by implicitly affirming that A.P.'s parents will unreasonably not agree with her assumption of a male name because of their religious beliefs and therefore cannot be trusted to be informed of or involved in decision-making related to her identity. Defendants have nurtured seeds of doubt within A.P.'s mind about whether her parents are acting in her best interest, thereby creating discord and division in the parent-child relationship that infringes Plaintiffs' right to family privacy.

102.   Defendants acted with deliberate indifference to Plaintiffs' rights to family privacy by their actions in intentionally casting doubt on the parents' support and ability to respond appropriately to their child's expression of a discordant gender identity and excluding parents from decision-making related to their child's questions regarding her sex and gender identity.

103.   Defendants' deliberate indifference to Plaintiffs' rights resulted in deprivation of their constitutional right to family privacy.

104.   Plaintiffs' constitutionally protected right to familial privacy was violated as the plainly obvious consequence of Defendants' actions in intentionally

and explicitly determining that Mr. and Mrs. Perez were not to be notified when their 12-year-old daughter was receiving mental health treatment and being affirmed and promoted as a boy named "M."

105.   Defendants cannot assert a compelling state interest for disregarding Plaintiffs' constitutional right to familial privacy, and Defendants' prohibitions against parental notification and involvement in children's mental health decisions related to gender identity are not narrowly tailored.

106.   Defendants' violation of Plaintiffs' constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm in that, *inter alia*, A.P. became depressed, attempted suicide twice and was committed to a mental health center without being permitted to have the care, companionship, and guidance of her parents.

107.   Defendants' violation of Plaintiffs' constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm in that Mr. and Mrs. Perez were denied their right to make mental health decisions for their daughter without interference from the state, to make decisions in keeping with their family values and sincerely held religious beliefs, and provide comfort, care and direction to their daughter as she was undergoing a mental health crisis.

108.   Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their fundamental rights.

## FOURTH CAUSE OF ACTION
### Violation of Civil Rights, 42 U.S.C.  § 1983
### (Violation of Plaintiffs' Right to Free Exercise of Religion
### Under the U.S. Constitution)
### (Against all Defendants)

109.   Plaintiffs incorporate the preceding allegations by reference as if set forth in full.

110.   The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits Defendants from abridging Plaintiffs' right to free exercise of religion.

111.   Plaintiffs have sincerely held religious beliefs that human beings are created male or female and that the natural created order regarding human sexuality cannot be changed regardless of individual feelings, beliefs, or discomfort with one's identity, and biological reality, as either male or female.

112.   Plaintiffs have sincerely held religious beliefs that parents have the non-delegable duty to direct the upbringing and beliefs, religious training, and medical and mental health care of their children and any intrusion of the government into that realm infringes upon the free exercise of their religion.

113.   Plaintiffs have sincerely held religious beliefs that all people are to be treated with respect and compassion, but that respect and compassion do not include misrepresenting an individual's natural created identity as either a male or a female.

114.   Plaintiffs have sincerely held religious beliefs that individuals are to speak the truth, including speaking the truth regarding matters of sexual identity as a male or female.

115.   Defendants' actions in excluding Mr. and Mrs. Perez from decision making regarding their daughter because of their Catholic Christian faith, target the Plaintiffs' beliefs regarding the created order, human nature, sexuality, gender, ethics, and morality which constitute central components of their sincerely held religious beliefs.

116.   Defendants were aware of the family's sincerely held religious beliefs and that such beliefs would conflict with untruthfully calling A.P. a male named "M" and using male pronouns. Defendants deliberately and recklessly used that knowledge to disparage the family's sincerely held religious beliefs to the detriment of A.P.'s mental health and in derogation of Plaintiffs' fundamental rights.

117.   Defendants' actions have caused a direct and immediate conflict with Plaintiffs' religious beliefs by prohibiting them from being informed of the mental health issues A.P. is undergoing and seeking counseling and guidance for A.P. in a manner that is consistent with the beliefs held by Mr. and Mrs. Perez and A.P. herself before A.P. became suicidal.

118.   Defendants' actions have impermissibly burdened Plaintiffs' sincerely held religious beliefs by nurturing seeds of doubt and distrust in A.P.'s mind

regarding the family's beliefs and whether adherence to them is beneficial and healthy.

119.   Defendants' actions are neither neutral nor generally applicable, but rather specifically and discriminatorily target the religious speech, beliefs, and viewpoint of Plaintiffs and thus expressly constitute a substantial burden on sincerely held religious beliefs that are contrary to Defendants' viewpoint regarding gender identity and affirmation of a discordant gender identity.

120.   No compelling state interest justifies the burdens Defendants imposed on Plaintiffs' rights to the free exercise of religion.

121.   Defendants' actions are not the least restrictive means to accomplish any permissible government purpose Defendants seek to serve.

122.   Defendants' violation of Plaintiffs' rights to free exercise of religion has caused, is causing, and will continue to cause Plaintiffs to suffer undue and actual hardships. Said hardships include exacerbation of A.P.'s mental health concerns to the point of her attempting suicide and now having to seek therapeutic intervention to address the long-term effects of Defendants' actions, diminution of the parent-child relationship, invasion of familial privacy, and physical and emotional injuries to all Plaintiffs.

123.   Defendants' violation of Plaintiffs' rights to free exercise of religion has caused, is causing, and will continue to cause Plaintiffs to suffer irreparable

injury. Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

## FIFTH CAUSE OF ACTION
### (Violation of Plaintiffs' Right to Free Exercise And Enjoyment Of Religion Under Article I, §3 Of The Florida Constitution)
### (Against All Defendants)

124.   Plaintiffs incorporate all of the preceding allegations by reference as if set forth in full.

125.   Article I, § 3 of the Florida Constitution states, "There shall be no law respecting the establishment of religion or prohibiting or penalizing the free exercise thereof."

126.   Plaintiffs have sincerely held religious beliefs that human beings are created male or female and that the natural created order regarding human sexuality cannot be changed regardless of individual feelings, beliefs, or discomfort with one's identity, and biological reality, as either male or female.

127.   Plaintiffs have sincerely held religious beliefs that parents have the non-delegable duty to direct the upbringing and beliefs, religious training, and medical and mental health care of their children and any intrusion of the government into those duties and responsibilities infringes upon the free exercise of their religion.

128.   Plaintiffs have sincerely held religious beliefs that all people are to be treated with respect and compassion, but that respect and compassion do not include misrepresenting an individual's natural created identity as either a male or a female.

129.   Plaintiffs have sincerely held religious beliefs that individuals are to speak the truth, including speaking the truth regarding matters of sexual identity as a male and female.

130.   Defendants' actions in excluding Mr. and Mrs. Perez from decision making regarding their daughter's mental health because of their Christian faith, target the Plaintiffs' beliefs regarding human nature, the created order, gender, sexuality, ethics, and morality which constitute central components of their sincerely held religious beliefs.

131.   Defendants were aware of the family's sincerely held religious beliefs and that such beliefs would conflict with untruthfully calling A.P. a male named "M" and using male pronouns. Defendants deliberately and recklessly used that knowledge to nurture doubts about the wisdom and benefit of those beliefs to the detriment of A.P.'s mental health and in derogation of Plaintiffs' fundamental rights.

132.   Defendants' actions have caused a direct and immediate conflict with Plaintiffs' religious beliefs by prohibiting them from being informed of the mental health issues A.P. is undergoing and seeking counseling and guidance for A.P. in a manner that is consistent with the beliefs held by Mr. and Mrs. Perez and A.P.

133.   Defendants' actions have impermissibly burdened Plaintiffs' sincerely held religious beliefs by nurturing seeds of doubt and distrust in A.P.'s mind

regarding the family's beliefs and whether adherence to them is beneficial and healthy.

134.   Defendants' actions are neither neutral nor generally applicable, but rather specifically and discriminatorily target the religious speech, beliefs, and viewpoint of Plaintiffs and thus expressly constitute a substantial burden on sincerely held religious beliefs that are contrary to Defendants' viewpoint regarding gender identity and affirmation of a discordant gender identity.

135.   No compelling state interest justifies the burdens Defendant imposed upon Plaintiffs' rights to the free exercise of religion.

136.   Defendants' actions are not the least restrictive means to accomplish any permissible government purpose Defendants seek to serve.

137.   Defendants' violation of Plaintiffs' rights to free exercise of religion has caused, is causing, and will continue to cause Plaintiffs to suffer undue and actual hardships. Said hardships include exacerbation of A.P.'s mental health concerns to the point of her attempting suicide and now having to seek therapeutic intervention to address the long-term effects of Defendants' actions, diminution of the parent-child relationship, invasion of familial privacy, and physical and emotional injuries to all Plaintiffs.

138.   Defendants' violation of Plaintiffs' rights to free exercise of religion has caused, is causing, and will continue to cause Plaintiffs to suffer irreparable

injury. Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

## SIXTH CAUSE OF ACTION

### (Violation of Plaintiffs' Right to Privacy Under Article 1, § 23 of the Florida Constitution) (Against all Defendants)

139.   Plaintiffs incorporate all of the preceding allegations by reference as if set forth in full.

140.   Plaintiffs, as Floridians, enjoy an explicit right of privacy under Article 1, § 23 of the Florida Constitution, which provides in pertinent part that "[e]very natural person has the right to be let alone and free from governmental intrusion into his private life."

141.   Under Article 1, § 23 of the Florida Constitution, "the State may not intrude upon the parents' fundamental right to raise their children except in cases where the child is threatened with harm." *Von Eiff v. Azicri*, 720 So.2d 510 (FL 1998).

142.   In substituting their judgment regarding the mental health of A.P. for the judgment of the parents by meeting secretly to discuss gender identity issues without notifying the parents, Defendants have impermissibly injected themselves into the private realm of Plaintiffs' family by usurping Mr. and Mrs. Perez's fundamental right to make decisions regarding their child's well-being.

143.   In substituting their judgment regarding the mental health of A.P. for the judgment of the parents by meeting secretly to discuss and address gender identity issues without notifying the parents, Defendants have impermissibly injected themselves into the private realm of Plaintiffs' family by depriving A.P. of her right to have decisions regarding her mental health and well-being made by her parents.

144.   Defendants have infringed Plaintiffs' right to family privacy by prompting Plaintiffs' daughter to affirm a discordant gender identity without the approval of her parents and to implicitly endorse a belief that A.P.'s parents do not "accept" her sufficiently to participate in decision-making related to questions regarding her identity.  Defendants have nurtured seeds of doubt within Plaintiffs' daughter's mind about whether her parents are acting in her best interest, thereby creating discord and division in the parent-child relationship that infringes Plaintiffs' right to family privacy.

145.   Defendants acted with deliberate indifference to Plaintiffs' rights to family privacy by their actions in intentionally excluding Mr. and Mrs. Perez parents from decision-making related to their child's questions regarding her sex and gender identity and reinforcing in A.P.'s mind that her parents should not be trusted with that decision making by promising to not inform them.

146.  Defendants' deliberate indifference to Plaintiffs' rights resulted in deprivation of their constitutional right to family privacy.

147.  Plaintiffs' constitutionally protected right to familial privacy was violated as the plainly obvious consequence of Defendants' actions in intentionally withholding information from Mr. and Mrs. Perez and implicitly communicating to A.P. that her parents were unsupportive of her struggle with gender identity because of the family's religious beliefs.

148.  Defendants cannot assert a compelling state interest for disregarding Plaintiffs' constitutional right to familial privacy, and Defendants' prohibition against parental notification and involvement in children's mental and emotional health decisions are not narrowly tailored.

149.  Defendants' violation of Plaintiffs' constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

150.  Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their fundamental rights.

**SEVENTH CAUSE OF ACTION**
**(Violation of Plaintiffs' Right to Substantive Due Process under Art. I § 9 of the Florida Constitution)**
**(Against all Defendants)**

151.  Plaintiffs incorporate the preceding allegations by reference as if set forth in full.

152.   Art. I, § 9, Fla. Const., like the 14th Amendment to the U.S. Constitution, provides that "[n]o person shall be deprived of life, liberty or property without due process of law."

153.   Substantive due process under Art. I, § 9 of the Florida Constitution protects the "full panoply of individual rights" and in particular, the long-established fundamental right of parents to direct the upbringing of their children, from unwarranted encroachment by the government. *J.B. v. Fla. Dep't of Child. & Fam. Servs.*, 768 So. 2d 1060, 1063 (Fla. 2000).

154.   Defendants' violated Plaintiffs' fundamental right to make decisions regarding upbringing, education, medical and mental health care, and religious training for their daughter when Mrs. Washington and perhaps others surreptitiously began meeting with A.P. weekly to discuss and address mental health issues and promote and affirm a discordant gender identity and continued to meet with A.P. for months without the knowledge and approval of her parents.

155.   Defendants acted with deliberate indifference to Plaintiffs' fundamental parental rights by meeting with Plaintiffs' daughter and engaging in mental health counseling over a period of several months without notifying parents despite enactment of the Parents' Bill of Rights requiring such notifications and in contravention to the district's published statements, consistent with the law, that children do not enjoy rights of confidentiality vis-a-vis their own parents.

156. Defendants acted with deliberate indifference to Plaintiffs' fundamental parental rights by withholding information regarding their daughter's mental health based on an unsubstantiated belief that children have rights of confidentiality that prohibit disclosing information regarding gender identity to parents, thereby explicitly and intentionally excluding Plaintiffs from making the mental health decisions for their daughter that are exclusively their right to make.

157. Defendants further acted with deliberate indifference to Plaintiffs' fundamental rights by failing to inform Plaintiffs about their daughter's mental health issues so that they could provide treatment and care before she became suicidal and had to be involuntarily committed under the Baker Act.

158. Defendants' deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights.

159. Plaintiffs' constitutionally protected right to direct the upbringing, education, religious training, and medical and mental health decision-making for their child was violated as the plainly obvious consequence of Defendants' actions in intentionally and explicitly withholding information from Mr. and Mrs. Perez in accordance with a *de facto* school and district policy that parents were not to be notified when their children expressed a discordant gender identity and wanted to affirm that identity.

37

160.   Defendants cannot assert a compelling interest for disregarding Plaintiffs' long-established fundamental constitutional right to direct the upbringing, education, religious training, and medical and mental health care for their child, and Defendants' prohibition against parental notification is not narrowly tailored.

161.   By excluding Mr. and Mrs. Perez from discussions regarding their child's mental health issues, including questions regarding gender identity and adopting protocols aimed at withholding information from parents, Defendants are making decisions that affect the mental health of their child in contravention of Plaintiffs' fundamental rights.

162.   Defendants have usurped Plaintiffs' responsibility for the health and well-being of their child and supplanted their authority for Plaintiffs'  authority as fit parents to be the ultimate decision makers regarding the physical and mental health of their child, including decisions related to their child's confusion or distress about her sex or gender identity. Substituting their judgment for the judgment of A.P.'s parents led to A.P. attempting suicide and being subject to police intervention and involuntary commitment and confinement under the Baker Act.

163.   Defendants' deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights to direct the medical and mental health decision-making for their child.

164.   Plaintiffs' constitutionally protected right to direct the medical and mental health decision-making for their child was violated as the plainly obvious consequence of Defendants' actions in meeting surreptitiously with A.P., withholding mental health information from Mr. and Mrs. Perez, promoting and affirming a discordant gender identity, affirming disparaging messages regarding the family's sincerely held religious beliefs and taking other actions of which Plaintiffs are presently unaware.

165.   Defendants cannot assert a compelling state interest for disregarding Plaintiffs' long-established fundamental constitutional right to make medical and mental health care decisions for their child, and Defendants' explicit prohibition against parental notification is not narrowly tailored.

166.   Defendants' violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

167.   Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their fundamental rights.

## EIGHTH CAUSE OF ACTION
**(Violation of the Parents' Bill of Rights, Florida Statutes, Chapter 1014)**
**(Against All Defendants)**

168.   Plaintiffs incorporate the preceding allegations by reference as if set forth in full.

169.   Effective July 1, 2021, The Parents' Bill of Rights reserves all parental rights, including the rights to direct the education, upbringing, moral or religious training and to make health care decisions for their minor children to parents "without obstruction or interference from the state, any of its political subdivisions, any other governmental entity, or any other institution. Florida Statutes § 1014.04.

170.   Florida Statutes § 1014.03 provides:

> The state, any of its political subdivisions, any other governmental entity, or any other institution may not infringe on the fundamental rights of a parent to direct the upbringing, education, health care, and mental health of his or her minor child without demonstrating that such action is reasonable and necessary to achieve a compelling state interest and that such action is narrowly tailored and is not otherwise served by a less restrictive means.

171.   Clay County School Board is a political subdivision of the state. Defendant Superintendent Broskie is the executive officer of the School Board, tasked with implementing and enforcing School District policies set out by the School Board, including policies implementing the provisions of the Parents' Bill of Rights.

172.   Defendants have obstructed and interfered with Plaintiffs' fundamental parental rights and infringed on the fundamental rights of Plaintiffs to direct education, upbringing, moral or religious training and to make health care decisions for their minor child in providing mental health interventions to A.P. without the knowledge or consent of Mr. and Mrs. Perez, by withholding information regarding

A.P.'s questions regarding her sex and gender identity and the deterioration of her mental health to the point of being suicidal; by communicating the message that the family's sincerely held religious beliefs mean that A.P.'s parents will not act in her best interest, and otherwise interfering in the private realm of the Perez family.

173.  Defendants acted under auspices of the School Board through its executive officer Defendant Broskie and Defendants O'Brian, Schumacher and Washington were acting within the scope and course of their employment  with knowledge of the requirements of the Parents' Bill of Rights when they withheld information from Mr. and Mrs. Perez that is required to be provided under the law, obstruct Mr. and Mrs. Perez's exercise of the right to direct the education and upbringing of their daughter, interfered with medical and mental health decision making and obstructed the free exercise of the family's religion.

174.  Defendants cannot assert a compelling interest for violating Florida law, disregarding Plaintiffs' fundamental right to direct the upbringing, care, and education of their child, and Defendant's prohibitions against parental notification are not narrowly tailored.

175.  Defendants' violation of the Parents' Bill of Rights has caused and is continuing to cause harm to Plaintiffs.

## NINTH CAUSE OF ACTION
### (Violation of Florida's Religious Freedom Restoration Act, Florida Stat. §761.03)
### (Against all Defendants)

176.   Plaintiffs incorporate all of the preceding allegations by reference as if set forth in full.

177.   Florida's Religious Freedom Restoration Act ("RFRA"), Fla. Stat. § 761.03 (1), provides:

> The government shall not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, except that government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person:
> (a) Is in furtherance of a compelling governmental interest; and
> (b) Is the least restrictive means of furthering that compelling governmental interest.

178.   Plaintiffs have sincerely held religious beliefs that human beings are created male or female and that the natural created order regarding human sexuality cannot be changed regardless of individual feelings, beliefs, or discomfort with one's identity, and biological reality, as either male or female.

179.   Plaintiffs have sincerely held religious beliefs that all people are to be treated with respect and compassion, but that respect and compassion do not include misrepresenting an individual's natural created identity, and biological reality, as either a male or a female.

180.   Plaintiffs have sincerely held religious beliefs that individuals are to speak the truth, including speaking the truth regarding matters of sexual identity as a male and female.

181.   Defendants' actions in excluding Mr. and Mrs. Perez from decision making regarding their daughter because of their Catholic Christian faith, target the Plaintiffs' beliefs regarding human nature, the created order, gender, sexuality, ethics, and morality which constitute central components of their sincerely held religious beliefs.

182.   Defendants were aware of the family's sincerely held religious beliefs and that such beliefs would conflict with untruthfully calling A.P. a male named "M" and using male pronouns. Defendants deliberately and recklessly used that knowledge to disparage the family's sincerely held religious beliefs to the detriment of A.P.'s mental health and in derogation of Plaintiffs' fundamental rights.

183.   Defendants' actions have caused a direct and immediate conflict with Plaintiffs' religious beliefs by prohibiting them from being informed of the mental health issues A.P. has been experiencing and seeking counseling and guidance for A.P. in a manner that is consistent with the beliefs held by Mr. and Mrs. Perez and A.P.

184.   Defendants' actions have impermissibly burdened Plaintiffs' sincerely held religious beliefs by nurturing seeds of doubt and distrust in A.P.'s mind

regarding the family's beliefs and whether adherence to them is beneficial and healthy. A.P. was being compelled to choose between her religious beliefs and the idea that she was a boy named "M," a conflict so significant that it led to her being suicidal.

185.   Defendants' actions expressly constitute a substantial burden on sincerely held religious beliefs that are contrary to Defendants' viewpoint regarding gender identity and affirmation of a discordant gender identity.

186.   No compelling state interest justifies the burdens Defendants imposed upon Plaintiffs' rights to the free exercise of religion.

187.   Defendants' actions are not the least restrictive means to accomplish any permissible government purpose Defendants seek to serve.

188.   Defendants' violation of Plaintiffs' rights under Florida's RFRA has caused, is causing, and will continue to cause Plaintiffs to suffer undue and actual hardships. Said hardships include exacerbation of A.P.'s mental health concerns to the point of her attempting suicide and now having to seek therapeutic intervention to address the long-term effects of Defendants' actions, diminution of the parent-child relationship, invasion of familial privacy, and physical and emotional injuries to all Plaintiffs.

## TENTH CAUSE OF ACTION

**(Violation of Plaintiffs' Right to Choose Medical Treatment for their Children Under Florida Statutes § 743.07)**

**(Against all Defendants)**

189.   Plaintiffs incorporate the preceding allegations by reference as if set forth in full.

190.   Under Fla. Stat. § 743.07 parents are responsible for selecting the manner of medical/mental health treatment received by their children until the children reach age 18. That fundamental right cannot be diminished or eliminated by state, city, or, in this case, school board actors without a compelling state interest. *Vazzo v. City of Tampa*, 415 F.Supp.3d 1087, 1098 (M.D. Fla. 2019).

191.   By excluding Mr. and Mrs. Perez from discussions regarding their daughter's mental health concerns, including assertion of a discordant gender identity and other issues that rose to the level of attempting suicide, Defendants are making, and have made, decisions that affect the mental health of their child in contravention of Plaintiffs' fundamental rights.

192.   Defendants have usurped Plaintiffs' responsibility for the health and well-being of their children and supplanted their authority for Plaintiffs'  authority as fit parents to be the ultimate decision makers regarding the physical and mental health of their child, including decisions related to their child's confusion or distress about her sex or gender identity.

45

193.   Affirming a child's discordant gender identity involves significant mental health and medical decisions affecting the well-being of children with potentially life-long consequences. Therefore, by excluding parents from discussions regarding their child's assertion of a discordant gender identity, Defendants are making decisions that affect the mental health of their child in contravention of Plaintiffs' rights under Fla. Stat. § 743.07.

194.   Plaintiffs' right to direct the medical and mental health decision-making for their children was violated as the plainly obvious consequence of Defendants' actions in surreptitiously meeting with A.P. to discuss and address mental health issues including gender identity questions, withholding information from Mr. and Mrs. Perez and disparaging the family's religious beliefs.

195.   Defendants cannot assert a compelling interest for disregarding Plaintiffs' long-established right to make medical and mental health decisions for their children, and Defendants' explicit prohibition against parental notification is not narrowly tailored.

196.   Defendants' violation of Plaintiffs' fundamental rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

197.   Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their fundamental rights.

## ELEVENTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

198.   Plaintiffs incorporate the preceding allegations by reference as if set forth in full.

199.   Defendants engaged in extreme and outrageous conduct toward Plaintiffs in flagrantly disregarding Mr. and Mrs. Perez's rights to direct the education, upbringing, religious training, and medical and mental health decision making for their 12-year-old daughter as long memorialized by the United States and Florida constitutions and in the Parents' Bill of Rights which became effective July 1, 2021 prior to Defendants' conduct.

200.   Defendants knew or should have known that under the federal and state constitutions and specifically under the Parents' Bill of Rights they were prohibited from engaging in mental health treatment with A.P. without notifying and obtaining the consent of her parents, Mr. and Mrs. Perez. Defendants' own published documents, Understanding Confidentiality, and consent forms on their website state that children do not have rights of confidentiality from their parents and that parents must be provided with critical information related to their child's mental health.

201.   Nevertheless, in flagrant disregard of their published documents and of long-standing constitutional and statutory rights, Defendants intentionally and recklessly met secretly with A.P. regarding mental health issues that escalated to the point of attempted suicide with no notification to Mr. and Mrs. Perez.

47

202.   Defendants further engaged in extreme and outrageous conduct toward Plaintiffs in flagrantly disregarding Plaintiffs' inalienable rights to free exercise of religion as stated in the United States and Florida constitutions and Florida's RFRA by affirming the message to A.P. that her parents would not support and care for her because the family's sincerely held religious beliefs would not permit them to falsely affirm that she is a male named "M" using male pronouns.

203.   Defendants knew or should have known that under the federal and state constitutions and Florida's RFRA that Plaintiffs have the inalienable right to free exercise of their sincerely held religious beliefs without obstruction and interference from the state.

204.   Nevertheless, in flagrant disregard for Plaintiffs' inalienable rights, Defendants implied that A.P.'s family's religious beliefs were antithetical to her well-being.

205.   Defendants further engaged in extreme and outrageous conduct toward Plaintiffs by failing to even notify Mr. and Mrs. Perez that their daughter was receiving counseling for mental health issues that had escalated to the point of A.P. attempting suicide and then upon announcing that A.P. had attempted suicide communicating to Mr. and Mrs. Perez that it was because of their sincerely held religious beliefs against affirming a false male identity for A.P. that A.P. attempted suicide.

48

206.   In communicating the message to A.P. that her family's religious beliefs were antithetical to her well-being and the message to Mr. and Mrs. Perez that their religious beliefs were the cause of A.P.'s attempted suicide, Defendants acted with the intent to cause or with reckless disregard to the probability that they would cause Plaintiffs emotional distress.

207.   Plaintiffs suffered severe emotional distress as the result of Defendants' conduct in that A.P. was so distressed that she attempted suicide and Mr. and Mrs. Perez suffered severe emotional distress, shock, and outrage at being informed that their daughter attempted suicide after participating in clandestine meetings with school staff during which staff a) promoted and affirmed the idea that A.P. could be a boy named "M," b) breached A.P.'s privacy by telling her peers, whom A.P. had not confided in, that A.P. was a boy named "M," lending to humiliation,  increased bullying and depression, c) affirming that A.P.'s parents could not be trusted to appropriately respond to her desire to be treated as a boy named "M" because of the family's religious beliefs, and so would not be told.

208.   Mr. and Mrs. Perez further suffered severe emotional distress, shock, and outrage at being told by Defendants that their daughter's suicide attempt was due to their inability to accept her as a boy because of their religious beliefs and being falsely told that they had no right to receive information regarding their

daughter's gender identity issue because their 12-year-old daughter had the right to confidentiality that trumped her parents' rights.

209.   Meeting with a 12-year-old child without informing her parents as required by law, continuing to meet with her without her parents' consent as her mental health deteriorated to the point of being suicidal, communicating the message that her distress will not be properly addressed by her parents because of their religious beliefs, and then telling the parents that their daughter attempted suicide because of their non-"affirming" religious beliefs, are so extreme in degree and outrageous in character as to be beyond any definition of professional ethics and all possible bounds of decency in a civilized society.  Educators to whom the parents entrusted their child to receive knowledge and enrichment instead provided harmful indoctrination which nearly ended their child's life and created permanent psychological and emotional harm to the child and to the family.

210.   As a result of Defendants' extreme and outrageous conduct, Plaintiffs have suffered and are suffering physical, psychological and emotional harm, including shock, loss of sleep, loss of familial security, diminution in the parent-child relationship and other harms.

**TWELFTH CAUSE OF ACTION**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

211.   Plaintiffs incorporate the preceding allegations by reference as if set forth in full.

212.   Defendants intentionally and recklessly engaged in surreptitious meetings with a vulnerable 12-year-old girl with mental health concerns on a weekly basis over a course of many months without following established protocols and legal requirements that parents be notified and consent prior to their child engaging in mental health counseling. In so doing, Defendants endangered the health and well-being of A.P. who became increasingly distressed as the counseling progressed and was denied the care, comfort, and guidance of her parents.

213.   Defendants further jeopardized the mental and emotional health of A.P. by affirming a message that her family's sincerely held religious beliefs meant that her parents, with whom Defendants had not communicated, would not respond appropriately to help her regain she believed she needed to regain mental and emotional health.

214.   As a result of Defendants' intentional acts to deprive Plaintiffs of familial privacy, decision making and free exercise of religion, Plaintiffs have suffered physical injuries resulting from shock, outrage and despair at the near loss of their daughter to suicide. Mr. and Mrs. Perez endured descriptions of their daughter/s attempted suicide and observed their daughter being detained by police and placed in a police car for transport to and confinement in a mental health facility without the care and companionship of her parents. Mr. and Mrs. Perez further endured the fear, anxiety and uncertainty of having their child committed to and

confined in a mental health facility within hours of them being first informed that A.P. had any issues related to her mental health. A.P. suffered from the fear, anxiety, fright and shock of being detained by police, placed in a police car and sent alone to a mental health facility.

215.   As a result of Defendants' actions and observation of the harm done to A.P. as a result of Defendants' actions. The Plaintiffs have suffered and are continuing to suffer emotional distress, physical injuries and psychological harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

1. A declaration that Defendants have violated Plaintiffs' fundamental rights as parents, under the United States and Florida constitutions, the Florida Parents' Bill of Rights and other statutes to the extent that they: a) provided mental health counseling and advice on asserting a discordant identity to A.P. weekly for several months without informing Mr. and Mrs. Perez; b) violated Plaintiffs' right to privacy in divulging to A.P.'s friends that she was to be identified as a boy named "M" thereby leading to increased bullying, humiliation and depression c) affirming to A.P. that her parents should not be told about her struggle with gender identity because they would not accept her because of their religious beliefs; d) failed and refused to comply with parental notification requirements before meeting with A.P.

and continuing to meet without complying with the law; e) blaming Mr. and Mrs. Perez and their religious beliefs for leading A.P. to attempt suicide.

3. A permanent injunction prohibiting Defendants, their employees, agents and third parties acting at their direction from: Training staff to exclude parents from discussions, meetings, and other interventions with the parents' children related to the children's assertion of a discordant gender identity; Failing to notify parents when their children express the belief that they have a discordant gender identity and want to take actions to affirm that identify.

4. A permanent injunction prohibiting Defendants, their employees, agents and third parties acting at their direction from instructing, directing, or encouraging staff to participate in programs, initiatives, activities, or discussions in which staff promise children that their parents will not be told about children's disclosures related to a belief that they have a discordant gender identity.

5. For nominal damages;

6. For compensatory damages according to proof for the injuries caused by Defendants' acts and omissions, including a) emotional distress, b) ongoing emotional and psychological damage to A.P. requiring therapeutic interventions to rebuild the trust between her and her parents which was damaged by the actions of Defendants, c) ongoing emotional and psychological damage to the family dynamic,

requiring therapeutic interventions to rebuild trust between parents and child which was damaged by the actions of Defendants, and other injuries as proven at trial;

7.  For attorneys' fees and costs under 42 U.S.C. § 1988;

8.  For such other relief as the Court deems proper.


Dated: January 24, 2022.



/s/Mary E. McAlister
Mary E. McAlister (FL Bar No. 0010168)
CHILD & PARENTAL RIGHTS CAMPAIGN, INC.
P.O. Box 637
Monroe, VA 24574
770.448.4525
mmcalister@childparentrights.org

Vernadette R. Broyles (GA Bar No. 593026)*
CHILD & PARENTAL RIGHTS CAMPAIGN, INC.
5805 State Bridge Rd., Suite G310
Johns Creek, GA 30097
770.448.4525
vbroyles@childparentrights.org

Ernest G. Trakas (MO Bar 33813)*
Evans & Dixon, LLC
211 N. Broadway
St. Louis, MO 63102
 (314) 552-4188
etrakas@evans-dixon.com
* pro hac vice admissions pending

Attorneys for Plaintiffs

## VERIFICATION

I, Wendell Perez, am over the age of 18 and am a Plaintiff in this action. I declare under penalty of perjury under 28 U.S.C. §1746, that I have read the foregoing Verified Complaint, and the factual allegations contained within, and that to the best of my knowledge, the facts alleged within are true and correct.

Executed on  January  2 2 , 2022 at Fleming Island, Florida.


_____
Wendell Perez


I, Maria Perez, am over the age of 18 and am a Plaintiff in this action. I declare under penalty of perjury under 28 U.S.C. §1746, that I have read the foregoing Verified Complaint, and the factual allegations contained within, and that to the best of my knowledge, the facts alleged within are true and correct.

Executed on  January  2 2 , 2022 at Fleming Island, Florida.


_____
Maria Perez