IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WENDELL PEREZ, individually
and as next friend of A.P., a minor
MARIA PEREZ, individually, and
as next friend of A.P., a minor,

      Plaintiffs

v.                                   Case No.: 3:22-CV-83-TJC-JBT

DAVID BROSKIE, individually,
and in his official capacity, as
Superintendent of Clay County
District Schools, *et al.*,

      Defendants.

_____/

**DEFENDANTS' PARTIALLY DISPOSITIVE
<u>MOTION TO DISMISS THE COMPLAINT</u>**

Defendants, David Broskie, John O'Brian, Courtney Schumacher, and

Destiney Washington, in their individual and official capacities ("Defendants"),

hereby file their Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P.

12(b)(6) for failure to state a claim upon which relief may be granted, and in support

thereof state:

## I.    INTRODUCTION AND BACKGROUND

Plaintiffs have brought a twelve-count complaint on behalf of themselves and their minor daughter, A.P.,[1] against Defendants for their official conduct committed within the course and scope of their employment as school administrators and counselor. The Complaint centers on purported actions taken by Defendants regarding A.P.'s gender identity, and the alleged lack of notification Plaintiffs received from Defendants regarding it.

## II.    STATEMENT OF THE ALLEGED FACTS

In the fall of 2021, Plaintiff A.P., a twelve year old female student at Paterson Elementary School, approached Washington, a school counselor, and inquired about A.P.'s apparent questioning of her own gender identity. [D.E. 1 at ¶¶ 51–56]. After discussions, A.P. requested Washington call her "M," a boy's name, and refer to her as "he." [*Id.* at ¶ 54]. Plaintiffs allege Washington continued to meet with A.P., referred to her as "M" to others, and reassured A.P. that she would not tell her parents about their conversations. [*Id.* at ¶¶ 30, 57–58]. A.P. was allegedly humiliated by Washington's actions, which resulted in bullying and distress. [*Id.* at ¶¶ 59–60]. Many of Plaintiffs' claims are disputed, refuted by the evidence, or are demonstrably

---

[1] Defendants refer to A.P. using female pronouns and as a female, in conformity with the Complaint.

2

untrue. However, for the purposes of this Motion only, Defendants assume as they must, but do not concede, Plaintiffs' allegations are true.

This culminated in A.P.'s alleged suicide attempt on January 5, 2022. [*Id.* at ¶ 22]. Plaintiffs allege this was the first time they learned about A.P.'s purported gender identity issues and Washington's weekly meetings with A.P. [*Id.* at ¶¶ 24, 27–30]. Plaintiffs claim Washington informed them during this January 5 meeting that A.P. had apparently attempted suicide on January 4, 2022, as well. [*Id.* at ¶ 26].

Plaintiffs allege Assistant Principal Schumacher told them during this meeting the reason they were not informed of these conversations prior was due to "confidentiality," an alleged "*de facto* district policy against notifying parents" regarding these issues. [*Id.* at ¶¶ 31, 34]. Plaintiffs allege they did not consent to these meetings and that they informed Defendants during the January 5 meeting that they did not agree with referring to A.P. as a male, due to their faith. [*Id.* at ¶¶ 37–38, 46]. Principal O'Brian and Washington told Plaintiffs they would not impose such changes on Plaintiffs' family. [*Id.* at ¶ 47]. Plaintiffs allege various damages to themselves and A.P. due to Defendants' actions. [*Id.* at ¶¶ 67–69].

## III.   MEMORANDUM OF LAW

### A.   Standard of Review

The Court is well-versed on the motion to dismiss standard. It is sufficient to state that in order to overcome a motion to dismiss, a plaintiff must allege sufficient

facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Granting a motion to dismiss is appropriate if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. *Hishon v. King & Spalding*, 467 U.S. 69 (1984). The allegations of the complaint must be deemed true and construed in a light most favorable to the plaintiff. *Shands Teaching Hosp. and Clinics, Inc. v. Beech Street Corp.*, 208 F. 3d 1308, 1310 (11th Cir. 2000). Where a plaintiff is unable to state a cause of action and further leave to amend the complaint is futile, claims should be dismissed with prejudice. *See Muhammad v. JPMorgan Chase Bank, NA*, 567 Fed. App'x 851, 853–54 (11th Cir. 2014.

## B.    The Complaint Is an Impermissible Shotgun Pleading

The Complaint should be dismissed because it is a quintessential "shotgun pleading," in violation of Rules 8 and 10(b) of the Federal Rules. "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as "shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d. 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has identified four rough categories of shotgun pleadings: (1) a complaint containing multiple counts adopting the allegations of all preceding counts; (2) a complaint replete with conclusory, vague, and immaterial facts not connected to any particular cause of action; (3) a complaint that does not separate into a different count each cause of action or claim for relief;

4

and a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions. *Id.* at 1321–23. The Complaint fails in each regard, and should be dismissed.

In each Count Plaintiffs adopt all preceding paragraphs such that the twelfth count incorporates the preceding 210 paragraphs. Most counts do not specify whom amongst the Plaintiffs are asserting the claim or which damages are being pursued. Each count apparently contains individual and official capacity claims against all defendants. By way of example, Count I contains claims by two plaintiffs against four defendants in their individual and official capacities, thus totaling *sixteen separate claims*. "[I]t is exceedingly difficult, if not impossible to know which allegations pertain to that count (according to its label), to separate the wheat from the chaff." *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1045 n.39 (11th Cir. 2014). This is particularly prejudicial because the individual capacity defendants are entitled to assert qualified immunity (federal claims) and sovereign immunity (Florida tort claims) defenses. Plaintiffs' Prayer for Relief seeks uniform damages without regard to each claim, and therefore fails to comply with Rule 8 because the damages available across Plaintiffs' twelve claims, if any, differ significantly.

### C.      The Official Capacity Claims Are Improper and Duplicative

The official capacity claims against Superintendent Broskie are claims against the entity of which he is an agent. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436

U.S. 658, 691 (1978). As a duly elected constitutional officer, Plaintiffs have thus sued the "Office of the Superintendent." In Florida, the School Board, not the Office of the Superintendent, is the government entity with the power to contract, to sue, and be sued. §§1001.41(4); 1012.22(1), Fla. Stat. The Board, not the superintendent is the employer of school employees. *See, e.g.*, *Forehand v. Sch. Bd. of Gulf Cnty.*, 600 So. 2d 1187, 1188 (Fla. 1st DCA 1992). Accordingly, the Clay County School Board, and not the Superintendent in his official capacity, is the proper legal party that should have been sued in this case. Furthermore, the official capacity claims against the individual defendants are unnecessarily duplicative, as they all constitute claims against their employer, the School Board. *C.P. v. Collier Cnty.*, 145 F. Supp. 3d 1085, 1090 (M.D. Fla. 2015) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (Section 1983 claims); *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (Florida claims)). Each official capacity claim should be dismissed with prejudice.

### D.    Plaintiff Failed to State a Federal Law Claim

In order to state a claim pursuant to 42 U.S.C. §1983, a plaintiff must allege two essential elements: (1) that he was deprived of a right secured by the Constitution or federal law; and (2) that the deprivation occurred under color of state law. *Am. Mfrs. Mut. Ins. v. Sullivan*, 526 U.S. 40, 49 (1999). Plaintiffs have not alleged a violation of a cognizable federal right under the alleged facts.  For the

reasons more fully set forth below, the federal claims should be dismissed with prejudice.

### i.   Counts I–III – Substantive Due Process

### a.  Plaintiffs Have Not Identified a Violation of a Cognizable Right

Counts I–III fail to state a claim for a violation of the substantive Due Process Clause of the Fourteenth Amendment.[2] They allege violations of Plaintiffs' fundamental rights to: (1) direct the upbringing of their child; (2) make medical decisions for their child; and (3) familial privacy. [D.E. 1 at pp. 18, 20, 24]. Assuming these are fundamental rights, Plaintiffs have not cleared the "high bar" necessary to state a due process violation, as "conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Maddox v. Stephens*, 727 F.3d 1109, 1119 (11th Cir. 2013) (quoting *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003)). Plaintiffs' already high burden faces an additional hurdle, as "in §1983 cases asserting violations of parental liberty interests, 'we are venturing into the murky area of unenumerated constitutional

---

[2] Consistent with the Complaint's shotgun nature, only Count I specifies it is brought under the substantive due process clause; Counts II–III do not. Given the rights claimed, however, Defendants presume they are also brought under the Fourteenth Amendment's substantive due process clause.

rights.'" *Id.* at 1120 (quoting *Robertson v. Hecksel*, 420 F.3d 1254, 1256 (11th Cir. 2005)).

Against this overlay, Counts I–III should be dismissed because Plaintiffs have not alleged a cognizable right under the alleged facts. Plaintiffs' core contention is they had the right to be informed of alleged discussions between Washington and A.P. regarding her gender identity, and that by failing to notify them and having the conversation without parental consent, Defendants violated their fundamental rights. [*See* D.E. 1 at ¶¶ 72, 84, 99]. However, there is no protected constitutional right to receive such notification that these discussions were occurring, or for Defendants to obtain consent from Plaintiffs to engage in them, presuming they even occurred, which is disputed.

Cases recognizing a viable allegation of interference with parental liberty interest required the state to either require or prohibit some activity. The cases cited by Plaintiffs to support their allegations, in fact, support Defendants' argument. *See Troxel v. Granville*, 530 U.S. 57, 67 (2000); *Parham v. J.R.*, 442 U.S. 584, 600 (1979); *Prince v. Massachusetts*, 321 U.S. 158, 169–70 (1944). The common thread among these cases is they all involved actions by the state that either required or prohibited some activity. *See Meyer v. City of East Cleveland*, 431 U.S. 494, 498–99 (1977).

Here, Plaintiffs do not allege A.P. was forced to meet with Washington or others to discuss gender identity issues. Instead, they allege the opposite: A.P. initiated contact and "asked Mrs. Washington if she supported transgender people... [and] continued to see Mrs. Washington." [D.E. 1 at ¶¶ 53–55]. Plaintiffs allege Washington merely responded to A.P.'s inquiries and there are no allegations A.P. was forced, coerced, or encouraged to continue these meetings or to conceal them from her parents. Similarly flawed is the constitutional claim regarding A.P.'s alleged attempted suicide(s).

In *Wyke v. Polk Cnty. Sch. Bd.*, 129 F.3d 560 (11th Cir. 1997), the Eleventh Circuit found a school board had no affirmative constitutional duty to protect a student from committing suicide. *Id.* at 569–70. The court noted an affirmative duty to act only "arises from limitations the state places upon an individual's ability to act on his own behalf, 'not from the [s]tate's knowledge of the individual's predicament.'" *Id.* at 570 (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)). Despite the school's assurances they would "take care of" the student, upon which a third party relied, the court declined to find a constitutional violation. *Id.* The allegations here of the school's after-the-fact knowledge of an alleged attempted suicide do not even approach that level of potential culpability. There is no constitutional duty to inform a parent of a child's suicide attempt. *Id.* Nothing compels a different result here. The parents cannot

9

recast A.P.'s decisions to speak with a counselor and not tell her parents as the school's compulsion for her to do so.

Contrast *Wyke* with *Arnold v. Bd. of Educ. of Escambia Cnty.*, 880 F.2d 305 (11th Cir. 1989), *overruled on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163 (1993). In *Arnold*, school officials coerced a student into having an abortion. *Id.* at 310. The Eleventh Circuit found "a parent's constitutional right to direct the upbringing of a minor is violated when the minor is coerced to refrain from discussing with the parent an intimate decision such as whether to obtain an abortion; a decision which touches fundamental values and religious beliefs parents wish to instill in their children." *Id.* at 312. The issue is the existence, *vel non*, of coercion, however none is alleged or existed here.  Accordingly, Plaintiff's Due Process Clause claims fail.

Absent coercion, Plaintiffs cannot identify any authority establishing Defendants were under a constitutional duty to notify them of the "counseling" or that required parental consent, thus no constitutional infringement. "[A]bsent any authority, [the court should] heed the Supreme Court's caution against expanding the concept of substantive due process," *Wyke*, 129 F.3d at 570; *see also Doe v. Irwin*, 615 F.2d 1162, (6th Cir. 1980) (finding no due process violation when school failed to inform parents that student was participating in voluntary condom-distribution program).

10

## b. The Alleged Conduct Is Insufficient to Establish Substantive Due Process Violations

Even assuming Plaintiffs have a fundamental right to be informed as they claim, Counts I–III (Due Process) should also be dismissed because the Eleventh Circuit has been "explicit in stating that 'deliberate indifference' is insufficient to constitute a due-process violation in a non-custodial setting." *Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1377 (11th Cir. 2002). A school is not a custodial setting. *Wyck*, 129 F.3d at 569; *K.W. v. Lee Cnty. Sch. Bd.*, 67 F. Supp. 3d 1330, 1337 (M.D. Fla. 2014). Plaintiffs' claims of deliberate indifference do not rise to the level of a due process violation, even if the enumerated rights existed, therefore their claims also fail because they have alleged an incorrect legal standard.

By alleging deliberate indifference, Plaintiffs seek to avoid their weighty burden: "[c]onduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience-shocking in a constitutional sense." *Davis v. Carter*, 555 F.3d 979, 982 (11th Cir. 2009). Even conduct that would amount to an intentional tort under state law does not, without more, meet this bar. *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1048 (11th Cir. 2002). "There are very few cases [in the school setting] in the Eleventh Circuit in which the circumstances actually give rise to a constitutional violation," and in

11

the rare instances where this has been found, "the Eleventh Circuit [has] made clear that...claims of excessive corporal punishment shaped the outcome." *K.W.*, 67 F. Supp. 3d at 1337; *Kirkland v. Greene Cnty. Bd. of Educ.*, 347 F.3d 903, 904–05 (11th Cir. 2003) (student struck with metal cane as punishment); *Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069, 1076 (11th Cir. 2000) (student struck with metal lock as punishment). On the other hand, the Eleventh Circuit has declined to find conscious-shocking behavior, even in circumstances resulting in the death of a student. *See Davis*, 555 F.3d at 984 (coach allegedly subjected student to intense workout, failed to provide enough water and ignored student's collapse); *Nix*, 311 F.3d at 1378 (student died after touching live wire due to teacher's alleged arbitrary and deliberate indifference).

In *Wyke,* a student attempted to commit suicide multiple times at school before finally succeeding at home. 129 F.3d at 564–65. The Eleventh Circuit found no viable claims under the substantive due process clause, because the student: (1) had no custodial relationship with his school; (2) school officials did not assume an affirmative due process duty to prevent the student from committing suicide after he attempted to do so at school; and (3) school officials had no independent constitutional duty to inform the student's mother of her son's suicide attempts. *Id.* at 569–70. This Court too has declined to find conscience-shocking behavior, even when school officials allegedly intentionally failed to provide immediate medical

12

assistance to an eight-year-old student suffering from a serious medical injury. *See K.W.*, 67 F. Supp. 3d at 1338–39.

### c. Plaintiffs Have Not Alleged a Sufficient Custom, Policy, or Practice to Established Governmental Liability

Counts I–III (Due Process) official capacity claims fail because Plaintiff has not alleged their purported deprivation occurred pursuant to a governmental custom or policy. *Monell*, 436 U.S. at 693–94. It is clearly established that a plaintiff cannot rely on *respondeat superior* theory to hold a governmental entity or officials named in their official capacity liable for individual employee's actions. *Monell*, 436 U.S. at 776. In the absence of an official policy or custom, official policy or custom may only be made by officials "whose acts or edicts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694.

Here, Plaintiffs allege in a conclusory manner that a "*de facto* district policy" existed regarding withholding information from parents about gender identity issues. [D.E. 1 at ¶¶ 74, 88].[3] Yet, Plaintiffs point to no policy promulgated by the School Board, nor do they allege any statement, edict, pattern, or practice of the School Board. Instead, they appear to rely solely on alleged statements by Assistant Principal Schumacher. [D.E. ¶ 34]. Neither she nor any of the other named defendants are final policy decision makers sufficient for *Monell* purposes. *Johnson*

---

[3] Plaintiffs fail to allege such a policy exists for Count III, which provides a separate basis to dismiss that count.

13

*v. Dade Cty. Pub. Sch.*, No. 91-2952-CIV-DAVIS, 1992 WL 466902 at 4 (S.D. Fla. 1992) ("the school board, not the superintendent, clearly has final decision making authority. Therefore, the Plaintiffs' efforts to prove 'custom or policy' [through him is] unavailing"). The School Board, not the Office of the Superintendent, is the entity statutorily tasked with the establishment, organization, and operation of schools, and the standards of ethical conduct for administrative personnel and school officers and adoption of policies. *See* §1001.42, Fla. Stat. Plaintiffs' failure to point to any actions taken *by the School Board* to establish the requisite custom, policy or practice of unconditional withholding information about students' gender identity issues is fatal to their claims.

### d. The Individual Capacity Defendants Are Entitled to Qualified Immunity

Assuming without conceding a constitutional deprivation, the individual capacity defendants are entitled to qualified immunity because there was no violation of a clearly established right. *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (because qualified immunity is "an immunity from suit rather than a mere defense to liability," it is particularly appropriate to raise in a motion to dismiss). Courts have found a school employee's conduct to be constitutional under circumstances much more egregious than alleged here. There is no authority placing Defendants on notice that their alleged conduct, even if true, violated the Constitution. They are, therefore, immune from suit.

Qualified immunity is appropriate unless their "supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice what the defendant official was doing would be clearly unlawful given the circumstances." *Pace v. Capobianco*, 283 F.3d 1275, 1282 (11th Cir. 2002). It protects all but "obviously wrong" actions that, "in the light of pre-existing law... only a plainly incompetent [employee] or one who was knowingly violating the law would have done such a thing;" otherwise, "the government actor has immunity from suit." *Id.* Qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Government officials acting in their discretionary authority when the alleged wrong occurred are entitled to qualified immunity. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Defendants were indisputably acting within their discretionary authority. *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004) (finding official acts within discretionary authority when they "perform a legitimate job-related function"); *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991). They were each acting within the course and scope of their employment.  [DE 1, pp. 5-6].

15

Once Defendant's discretionary authority is established, the burden shifts to Plaintiffs to show that they: (1) have alleged a violation of a constitutional right; and (2) that the right was clearly established. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). Plaintiffs have not alleged violation of a cognizable constructional right under these facts, and clearly cannot show any asserted right was clearly established. Indeed, *Wyke* alone forecloses any argument that the right to parental notification is clearly established to strip Defendants of their immunity. Finally, Defendants' actions are not so egregious, such that the unlawfulness of the conduct was readily apparent to show that a constitutional right was clearly violated. *See Loftus v. Clark-Moore*, 690 F.3d 1200, 1205 (11th Cir. 2012). The individual capacity defendants should be dismissed with prejudice.

### ii.    Count IV – Free Exercise of Religion

Defendants' response to Count IV, Plaintiffs' free exercise of religion claim, is frustrated by Plaintiffs' pleading deficiencies, because the Complaint fails to identify which Plaintiff is asserting this claim. Regardless, Defendants have not infringed on any of Plaintiffs' free exercise rights, because no alleged conduct infringed on Plaintiffs' ability to freely exercise their religion.

"The Free Exercise Clauses require a plaintiff to allege a religious belief and a burden that has been placed by the government on the exercise of that belief. To plead a claim for relief under the Free Exercise Clauses of the U.S. and Florida

16

Constitutions, a plaintiff must allege that the government has impermissibly burdened one of its sincerely held religious beliefs. This belief must be rooted in religion, since personal preferences and secular beliefs do not warrant the protection of the Free Exercise Clause. . . . [T]his pleading requirement [has] two components: (1) the plaintiff holds a belief, not a preference, that is sincerely held and religious in nature, not merely secular; and (2) the law at issue in some way impacts the plaintiff's ability to either hold that belief or act pursuant to that belief." *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n*, 942 F.3d 1215, 1246 (11th Cir. 2019) (internal citations and quotations omitted). Defendants presume without conceding Plaintiffs have sincerely held religious beliefs regarding gender identity.

However, Plaintiffs have not, and indeed cannot, allege that Defendants' alleged conduct infringed on their ability to hold or express their beliefs regarding gender identity and/or act pursuant to those beliefs. The Complaint claims Defendants, in "excluding [Plaintiffs] from decision making regarding their daughter because of their Catholic Christian faith," impacted their ability to exercise their beliefs. [D.E. 1 at ¶ 115]. But there are no allegations Defendants prohibited A.P. or Plaintiffs from expressing, exercising, practicing, or speaking about their beliefs. Even assuming Defendants withheld information from Plaintiffs, which is disputed, this did not infringe on Plaintiff's right to freely exercise their religion. Further, A.P. sought "counseling" from Defendant Washington, and as such, the allegations that

17

Defendants specifically and discriminatorily targeted Plaintiffs are conclusory and internally inconsistent with their own allegations. *See GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1259 (11th Cir. 2012) ("[C]onclusory allegations that [government action] interferes with Plaintiffs' free exercise of religion are not sufficient to survive a motion to dismiss."). Nothing in Plaintiffs' Complaint can be fairly read as an unconstitutional burden on their ability to freely exercise their faith.

### E.      ARGUMENT – Florida Claims

### i.      Counts V–VII – Florida Constitution

Plaintiffs' claims for damages under the Florida Constitution (Counts V–VII) fail because such damages are unavailable as a matter of law. *Holcy v. Flagler Cnty. Sheriff*, 3:05-cv-1324-J-32HTS, 2007 WL 2669219, at *6 (M.D. Fla. Sept. 6, 2007) ("Florida constitutional claims do not support claims for damages absent a separate enabling statute . . . ."); *see also Smith v. Bell*, No. 06–60750 CIV, 2008 WL 868253, at *9 (S.D. Fla. Mar. 31, 2008) ("The Florida courts have generally declined to recognize damage actions for violations of the Florida Constitution itself."). These claims are also duplicative of the federal claims and serve no purpose other than to unnecessarily multiply this litigation.

The constitutional provisions in question do not contain any enabling statutes. Thus no claim for monetary damages can be maintained for: (1) Count V, *see* §761.03, Fla. Stat. (no cause of action for monetary damages for free exercise clause

of Florida Constitution); (2) Count VI, *see Tucker v. Resha*, 634 So. 2d 756, 759 (Fla. 1st DCA 1994) (no cause of action for monetary damages for privacy provision of Florida Constitution); *see also Gilbert v. Sears, Roebuck & Co.*, 899 F. Supp. 597, 600 (M.D. Fla. 1995); and (3) Count VII. *See Garcia v. Reyes*, 697 So. 2d 549, 551 (Fla. 4th DCA 1997) (no cause of action for monetary damages for due process provision of Florida Constitution); *see also Youngblood v. Fla. Dep't of Health*, 224 F. App'x 909, 912–13 & n.4 (11th Cir. 2007) (finding district court correctly dismissed plaintiff's claims under the Florida Constitution, including claims for the "free exercise of religion, equal protection, due process, [and] privacy" to the extent they sought monetary damages). Plaintiff's monetary damages claims pursuant to the Florida Constitution should be dismissed with prejudice.

### ii.    Counts VIII–X – Florida Statutory Claims

Plaintiffs' claims predicated on Florida statutory law fail because these statutes either do not create a private right of action (Counts VIII and X), or do not create a private right of action for monetary damages (Count IX). Whether a violation of a statute serves as the basis for a private cause of action is a question of legislative intent and courts look to the plain meaning of the statute for this intent. *Aramark Uniform & Career Apparel, Inc. v. Easton*, 894 So. 2d 20, 23 (Fla. 2004). The statutes Plaintiffs rely on do not create private causes of action.

19

First, as to Count VIII, chapter 1014, Florida Statutes ("the Parents' Bill of Rights"), nothing in the statutory language suggests the Legislature intended to permit parents a private cause of action under these statutes. In fact, the Parents' Bill of Rights explicitly provides that the remedy for a violation of the Parents' Bill of Rights is disciplinary action against the offending employee. If "[a]n employee of the state, any of its political subdivisions, or any other governmental entity who encourages or coerces, or attempts to encourage or coerce, a minor child to withhold information from his or her parent," then that employee "may be subject to disciplinary action." §1014.04(3), Fla. Stat. The Legislature's exclusion of a private right of action precludes any claim Plaintiffs may have under chapter 1014.[4] *See Gunn v. Robles*, 130 So. 463, 463 (Fla. 1930) ("Where a particular remedy is conferred by statute, it can be invoked only to the extent and manner prescribed.").

Second, as to Count X, section 743.07, Florida Statutes, this statute merely removes the disability of nonage to those over 18, excluding consumption of alcohol. §743.07(1), Fla. Stat. Nothing in the statute remotely suggests a private right of action generally, much less under the facts alleged here.

---

[4] This is further bolstered by chapter 1014's imposition of criminal liability for some violations of the Parents' Bill of Rights, yet declining to provide a civil remedy. *See* §1014.06(5) (imposing criminal liability for health care practitioners who violate this section); *see also Mallery v. Norman L. Bush Auto Sales & Serv., Inc.*, 301 So. 3d 361, 366 (Fla. 2d DCA 2020) (finding it "clear" that violations of a statute were addressed by criminal law, rather than civil law, "yield[ing] the conclusion that the legislature intended not to impose civil liability").

Third, as to Count IX, section 761.03, Florida Statutes, this statute also does not create a private cause of action for monetary damages. Statutes must be accorded their plain meaning to determine legislative intent. *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001). Nothing in section 761.03's language explicitly provides a private right of action for monetary damages. *See* § 761.03(2), Fla. Stat.

Moreover, because Plaintiffs' federal free exercise claim fails, so too does their Florida free exercise claim. *See Cambridge*, 942 F.3d at 1250 (noting the Florida Supreme Court has "set a much more stringent standard for what constitutes a 'substantial burden'" regarding the free exercise of religion); *see also Warner v. City of Boca Raton*, 887 So.2d 1023, 1033 (Fla. 2004) (adopting a "narrow definition of substantial burden" and "hold[ing] that a substantial burden on the free exercise of religion is one that either compels the religious adherent to engage in conduct that his religion forbids or forbids him to engage in conduct that his religion requires").

### iii.    Counts XI–XII – Intentional and Negligent Infliction of Emotional Distress

Plaintiffs' tort claims fail because they have not alleged compliance with the mandatory pre-suit conditions precedent to establish a waiver of sovereign immunity, nor have they attached any documents to their complaint showing compliance with the mandatory pre-suit conditions precedent. §768.28(6)(a), Fla. Stat.; *Redner v. Citrus Cnty.*, 710 F. Supp. 318, 321 (M.D. Fla. 1989); *Scullock v.*

21

*Gee*, 161 So. 3d 421, 423 (Fla. 2d DCA 2014). This failure requires dismissal. *See*

*Redner*, 710 F. Supp. At 321.

Counts XI–XII must also be dismissed as to Defendants in their individual

capacities, as Plaintiffs have not pleaded facts to overcome their individual sovereign

immunity. § 768.28(9)(a), Fla. Stat. (requiring bad faith, malicious purpose or

wanton and willful disregard of human rights to establish individual liability);

*Diversified Numismatics, Inc. v. City of Orlando*, 783 F. Supp. 1337, 1347 (M.D.

Fla. 1990).

As for Count XI for intentional infliction of emotional distress ("IIED"), this

requires conduct that is intentional or reckless, so extreme in degree that it goes

beyond all possible bounds of decency, regarded as atrocious, and is utterly

intolerable in a civilized society. *See Lopez v. Target Corp.*, 676 F.3d 1230, 1236

(11th Cir. 2012). This is a high standard, determined by the court as a matter of law.

*Short v. Immokalee Water & Sewer Dist.*, 165 F. Supp. 3d 1129, 1152 (M.D. Fla.

2016). Plaintiffs have failed to plead facts that clear this high bar for a claim of IIED

under Florida law. *See, e.g.*, *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277 (Fla.

1985); *Shedeke v. Gomez*, 837 So. 2d 1122 (Fla. 4th DCA 2003).  Defendants'

alleged actions do not rise to the level that has been recognized as sufficient to state

a claim for IIED. *See Thomas v. Hosp. Bd. of Dirs. of Lee Cnty.*, 41 So. 3d 246, 244–

56 (Fla. 2d DCA 2010) (hospital's false statements which led to interruption of

22

patient's funeral so her body could be returned for a second autopsy, rose to the level of "atrocious and utterly intolerable behavior which cannot be condoned in a civilized society" and therefore stated a claim for IIED); *Nims v. Harrison*, 768 So. 2d 1198, 1199 (Fla. 1st DCA 2000) (plaintiff stated IIED claim where allegations involved death threats and threats to rape plaintiff's children and other family relatives); *Johnson v. Thigpen*, 788 So. 2d 410, 412 (Fla. 1st DCA 2001) (plaintiff stated IIED claim where allegations involved repeated acts of offensive physical contact sexual in nature); *Johnson v. State Dep't of Health & Rehab. Servs.*, 695 So. 2d 927 (Fla. 2d DCA 1997) (mother's complaint alleging police officer acted outrageously by taking her children while they attended church services, by choking her until she lost consciousness, and arresting her for challenging legal authority to take children without court order stated cause for IIED).

*Wyke* again proves illustrative. Under similar circumstances, *i.e.,* school officials failed to inform a student's mother of her son's emotional issues, which unfortunately resulted in the mother being unaware of those issues until after her son committed suicide, the Eleventh Circuit found this did not amount to a substantive due process violation—which also generally requires the same type of conscience-shocking behavior as required by a claim for IIED—and instead held these actions, at best, amounted to negligence under Florida law. *See* 129 F.3d at 571.

23

Further, Plaintiffs claim for IIED relies on the same alleged conduct as their other counts, which are themselves legally insufficient. In addition to the absence of any allegation of actionable conscience shocking behavior, this count should be dismissed as duplicative of the federal due process claims, to the extent they survive. *See Boyles v. Mid-Fla. Television Corp.*, 431 So. 2d 627, 636 (Fla. 5th DCA 1983) (IIED claim must set forth an independent tort for recovery of damages, and cannot be premised on conduct that gives rise to separate tort); *see also Miller v. Gizmodo Media Grp., LLC*, No. 18-24227-CIV-ALTONAGA/Goodman, 2019 WL 1790248, at *11 (S.D. Fla. Apr. 24, 2019).

Count XII, for negligent infliction of emotional distress ("NIED"), fails because Florida's impact rule "actually requires some impact on the plaintiff," or "manifestation of severe emotional distress such as physical injuries or illness." *Fla. Dep't of Corr. v. Abril*, 969 So. 2d 201, 206 (Fla. 2007). Here, Plaintiffs' complaint alleges in conclusory fashion they suffered physical injuries resulting from their alleged emotional distress, without stating what these injuries are. *See* Compl. at ¶¶ 214–15. Plaintiffs' conclusory allegations do not satisfy the impact rule, nor does their claim fall under its enumerated exceptions. *See Id.* at 206–07 (listing exceptions).

WHEREFORE, Defendants request an order dismissing Plaintiff's Complaint with prejudice, where appropriate, and for any other such relief that is deemed appropriate.

## CERTIFICATE IN ACCORDANCE WITH LOCAL RULE 3.01(g)

I HEREBY CERTIFY that I have conferred with counsel for the Plaintiff in writing on February 22, 2022, who opposes the relief requested herein.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 25, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: **Mary E. McAlister at mmcalister@childparentrights.org, Vernadette R. Broyles at vbroyles@childparentrights.org** and **Ernest G. Trakas at etrakas@evans-dixon.com**.

/s J. David Marsey
J. DAVID MARSEY
Florida Bar No.: 0010212
E-mail: dmarsey@rumberger.com
KAYLA E. PLATT RADY
Florida Bar No.: 0117896
E-mail: krady@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
101 North Monroe Street, Suite 120
Tallahassee, Florida 32301
Tel: 850.222.6550
Fax: 850.222.8783
Attorneys for Defendants