# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### (JACKSONVILLE DIVISION)

| | | |
|---|---|---|
| Wendell Perez, individually and<br>as next friend of A.P., a minor<br>Maria Perez, individually and<br>as next friend of A.P, a minor, | ) )<br>)<br>)<br>) | |
| Plaintiffs | ) | Case No. 3:22-cv-0083-TJC-JBT |
| v. | ) | |
| David Broskie, individually,<br>and in his official capacity as<br>Superintendent of Clay County<br>District Schools,<br>John O'Brian, individually, and in<br>his official capacity as Principal of<br>Paterson Elementary School,<br>Courtney Schumacher, individually,<br>and in her official capacity as<br>Assistant Principal of Paterson<br>Elementary School,<br>Destiney Washington, individually<br>and in her official capacity as<br>counselor at Paterson Elementary<br>School,<br>Clay County School Board, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT AND DAMAGES

Plaintiffs, Wendell Perez, individually and as next friend of A.P., a minor,

Maria Perez, individually and as next friend of A.P, a minor, ("Plaintiffs") by and

through counsel, file this civil action and respectfully request this Court to issue

injunctive relief, a declaratory judgment and award damages for violations of the United States Constitution, Florida Constitution, and Florida Statutes by Defendants, David Broskie, John O'Brian, Courtney Schumacher, Destiney Washington, and the Clay County School Board.

In support thereof, Plaintiffs state:

## INTRODUCTION

1.     Plaintiffs bring this action to vindicate their fundamental rights as enumerated in the United States and Florida constitutions and rights protected under Florida Statutes. Defendants have violated Plaintiffs' fundamental rights by, *inter alia*, a) failing to notify Mr. and Mrs. Perez about their daughter A.P.'s mental health issues as required under Florida law, b) secretly meeting with A.P. over the course of several months without the parents' knowledge or consent to promote and affirm the idea that A.P. could be a boy named "M" rather than addressing A.P.'s problems with self-confidence and bullying; c) promising A.P. that her parents would not be informed about A.P. being treated at school as a boy named "M;" d) breaching A.P.'s privacy by informing peers to refer to A.P. as a boy named "M" without A.P.'s permission, leading to increased bullying of A.P.; e) continuing to breach A.P.'s privacy by promising to convince all of her teachers to refer to her as a boy named "M" without A.P. making such a request, causing A.P. increased distress; f) continuing to refuse to communicate with A.P.'s parents regarding A.P.'s mental

health issues and bullying occurring at school until after A.P. twice attempted suicide while on school property; g) blaming A.P.'s suicide attempts on Mr. and Mrs. Perez's perceived lack of agreement with their daughter's gender confusion because of their Catholic Christian faith; h) failing to comply with state laws requiring that procedures be in place for notifying parents regarding issues related to their children's well-being; and i) failing to comply with state law requiring that suicide prevention contact points be printed on student identification cards and thereby depriving A.P. of critical information prior to attempting suicide.

2.     Defendants further violated Plaintiffs' fundamental rights by intentionally and recklessly withholding information from Mr. and Mrs. Perez related to A.P.'s questions regarding gender identity issues based upon alleged "confidentiality rights" on the part of A.P. that are contrary to law.

**JURISDICTION AND VENUE**

3.     This action is filed pursuant to 42 U.S.C. § 1983 seeking redress of injuries suffered by Plaintiffs from deprivation, under color of state law, of rights secured by the First and Fourteenth amendments to the United States Constitution, by Article I of the Florida Constitution and pursuant to laws of the United States and the laws of Florida. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a).

4.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and other applicable law because the events and omissions giving rise to the claims in this action arose in Clay County, Florida, which is situated within the district and divisional boundaries of the Middle District of Florida.  Venue is also proper in this Court because the Defendants reside or have their principal place of business in this District.

5.     This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, implemented through Federal Rule of Civil Procedure 57, and to issue injunctive relief under Federal Rule of Civil Procedure 65.

6.     An actual controversy exists between the parties involving substantial constitutional issues, in that Plaintiffs allege that Defendants' policies, procedures, directives and actions taken in accordance with them, as applied, violate the United States and Florida constitutions and Florida Statutes and have infringed Plaintiffs' rights, while Defendants will allege that their policies, procedures, directives, and actions comport with the United States and Florida constitutions and Florida Statutes.

7.     This Court is authorized to grant Plaintiffs' prayer for relief regarding costs, including a reasonable attorney's fee, under 42 U.S.C. § 1988.

## PARTIES

8.    Plaintiffs Wendell and Maria Perez, and their daughter, A.P. are residents of Clay County, Florida.

9.    Plaintiffs' daughter, A.P. is a student at Paterson Elementary School, which is part of Clay County District Schools.

10.    Defendant David Broskie (hereinafter referred to as "David Broskie" or "Broskie") is the Superintendent of Clay County District Schools (hereinafter "District" or "School District"), having been elected by the citizens of Clay County pursuant to Article IX, § 5 of the Florida Constitution. He is and was at all times relevant herein, acting within the course and scope of his constitutional authority as Superintendent and his duties under Fla. Stat. §§ 1001.49, 1001.51, and other applicable Florida law and consistent with the customs, policies, and practices of Clay County District Schools.

11.    As Superintendent, Defendant Broskie is the executive officer of the School Board, tasked with implementing and enforcing School District policies set out by the School Board, as well as supervising and disciplining employees under Fla. Stat. § 1001.33. He nominates candidates for District positions to the School Board which then votes on whether to hire the individuals. He is sued in his individual and official capacities.

12.     Defendant John O'Brian is the Principal of Paterson Elementary School, which is part of Clay County District Schools. He is and was at all times relevant herein, acting within the course and scope of his employment, under color of state law and consistent with the customs, policies, and practices of Clay County District Schools, having been hired by the School Board upon nomination by the Superintendent. As principal, he is responsible for the performance of all personnel employed by the District school board and assigned to the school to which he is assigned under Fla. Stat. § 1012.28. He is sued in his individual and official capacities.

13.     Defendant Courtney Schumacher is the Assistant Principal of Paterson Elementary School, which is part of Clay County District Schools. She is and was at all times relevant herein, acting within the course and scope of her employment, under color of state law and consistent with the customs, policies, and practices of Clay County District Schools. She is sued in her individual and official capacities.

14.     Defendant Destiney Washington is a School Counselor at Paterson Elementary School, which is part of Clay County District Schools. She is and was at all times relevant herein, acting within the course and scope of her employment, under color of state law and consistent with the customs, policies, and practices of Clay County District Schools. She is sued in her individual and official capacities.

15.    Defendant Clay County School Board is the governing body for public schools in Clay County, Florida, with the authority to sue and be sued, and was at all times material acting within the course and scope of its authority pursuant to Article IX, § 4 of the Florida Constitution, Fla. Stat. §§ 1001.41-1001.42 and further under color of law.

## STATEMENT OF FACTS

### *The Perezes' Experiences at Paterson Elementary*

16.    Plaintiffs' daughter, A.P. is a sixth grader at Paterson Elementary School.

17.    Plaintiffs and A.P. are practicing Roman Catholics whose sincerely held religious beliefs, including a Judeo-Christian worldview based on Biblical Scripture, teachings of the Church, natural law and objective truth, permeate all aspects of their lives.

18.    Plaintiffs are informed and believe and based thereon allege that District staff was aware of their sincerely held religious beliefs and that those beliefs required adherence to the teachings of Scripture and the Church, honesty, and objectively verifiable scientific facts.

19.    On January 5, 2022, Mr. and Mrs. Perez received a call from Defendant Washington, who identified herself as a school counselor at Paterson Elementary School. Although Mrs. Washington was the counselor assigned to

sixth graders, including A.P., Mr. and Mrs. Perez had not had prior contact with Mrs. Washington.

20.    Mrs. Washington told Mr. and Mrs. Perez that they needed to come to the school right away, "It's about A." Mrs. Washington would not reveal any further information.

21.    Mr. and Mrs. Perez arrived at the school and waited in the lobby for 20 minutes, still having no information about their daughter.

22.    Finally, Mr. and Mrs. Perez were escorted into a room with Mrs. Washington, Principal O'Brian, Vice Principal Schumacher, and a Clay County Schools Police officer. Mr. and Mrs. Perez were instructed to sit down.

23.    Mrs. Washington told Mr. and Mrs. Perez that the reason that they were called to the school was because A.P., their 12-year-old daughter, had tried to commit suicide by hanging herself in the school restroom.

24.    Mr. and Mrs. Perez were shocked by this revelation and Mrs. Perez asked why it happened.

25.    Mrs. Washington responded, "Because of her gender identity issue." Mrs. Washington said that A.P. wanted to be referred to as a male named "M." and "he" and that her parents would not be in agreement with these changes because of their Catholic Christian religious beliefs.

8

26.    Mrs. Washington thereby clearly indicated her understanding that the Perez family adhered to sincerely held religious beliefs that did not agree with a girl being falsely identified as a male with a male name and use of male pronouns.

27.    Mrs. Washington revealed that the suicide attempt on January 5, 2022 was actually the second attempt, stating that A.P. had similarly tried to hang herself on January 4, 2022. Without disclosing when or how school staff learned of the first attempt, Mrs. Washington claimed that school staff was not aware of the first attempt prior to the attempt on January 5, 2022.

28.    Mr. Perez stated that A.P. had never expressed or indicated any gender confusion, and that this was the first he had heard about A.P. having any issue with her sex.

29.    Prior to the incident on January 5, 2022, A.P. had not exhibited any signs of gender confusion or questioning of her biological sex. In fact, just before the incident she had told her mother that she believed that people who say they are transgender have a problem with their minds because "if you're a boy, you're a boy, if you're a girl, you're a girl."

30.    Prior to the meeting on January 5, 2022, Mr. and Mrs. Perez had not received any communication or information from the school that A.P. was experiencing distress about her sex or exhibiting signs of gender confusion, or that she desired to treated as something other than her sex. Nor did they receive any

communication or information from the school that A.P. was being bullied at school and feeling insecure about being a girl, which they learned later had been happening prior to and at the time of A.P.'s suicide attempts.

31.     At the meeting on January 5, 2022, Mrs. Washington told Mr. and Mrs. Perez that she had been meeting with A.P. on a weekly basis for a period of three to four months during which time Defendant Washington discussed gender confusion and bullying with A.P. These meetings addressing mental health issues occurred without Mr. and Mrs. Perez's knowledge or consent.

32.     During the course of these weekly meetings with Mrs. Washington A.P.'s distress escalated to the point of attempting suicide at school. None of this critical information regarding A.P.'s mental health was provided to A.P.'s parents until after A.P. had attempted suicide and was being involuntarily committed to a mental hospital under the Baker Act.

33.     Mr. and Mrs. Perez were not informed of the full extent of the matters discussed at the weekly meetings, or of who else might have been meeting with their daughter or who in District or school administration was aware of and approved of the surreptitious meetings. Mr. and Mrs. Perez are informed and believe and based thereon allege that at least Mrs. Schumacher was aware of the meetings based upon her statements and comments during the January 5, 2022 meeting.

34.     At no time prior to the crisis on January 5, 2022 were Mr. and Mrs. Perez informed that their 12-year-old daughter had questions about or distress concerning her sex, that she asked to and was being called by a male name while at school or had become distressed to the point of attempting suicide twice on school property.

35.     At the January 5, 2022 meeting, Mrs. Schumacher told Mr. and Mrs. Perez that school officials were "not required" to tell the parents about the meetings with their 12-year-old daughter related to her distress about her sex and being affirmed with a male name. Mrs. Schumacher advised Mr. and Mrs. Perez that there was in place District policy, protocol, procedure or guideline that permitted District staff to conceal information related to children's well-being, *i.e.,* distress about sex or gender identity, from parents. In particular, Mrs. Schumacher said "confidentiality issues" prevented District personnel from notifying parents regarding their children's distress about their sex and wanting to be affirmed as something other than their sex. Neither she nor anyone affiliated with the school provided legal authority for these assertions.

36.     To the contrary, Clay County Schools' Webpage addressing "student mental health and well-being" includes a document entitled "Understanding Confidentiality" addressed to parents of children receiving counseling at school. A true and correct copy of the "Understanding Confidentiality" document is attached

to this Complaint, marked as Exhibit A and incorporated herein by reference as if set forth in full.

37.     The "Understanding Confidentiality" document specifically states:

Children seen in individual sessions (except under certain conditions) **are not legally entitled to confidentiality** (also called privilege); **their parents have this right**. However, unless children feel they have some privacy in speaking with a counselor, the benefits of therapy may be lost. Therefore, it is necessary to work out an arrangement in which children feel that their privacy is generally being respected, at the same time that parents have access to critical information. This agreement **must have the understanding and approval of the parents** or other responsible adults and of the child in therapy.

Exhibit A, p. 1 (emphases added).

38.     Mr. and Mrs. Perez were not provided with this document prior to their daughter engaging in weekly sessions with Mrs. Washington and perhaps others. They were not provided access to critical information regarding their child. Since they were never informed that A.P. was being seen and treated by the school counselor, they did not reach an understanding nor approve of any arrangement regarding their daughter's counseling sessions.

39.     Mr. and Mrs. Perez also were neither provided with, nor signed the "Consent for Treatment" forms necessary for their daughter to be seen and treated by school counseling staff.

40.     Nevertheless, Mrs. Washington, and perhaps others, met weekly with A.P. secretly for at least three months. During those meetings, Mrs. Washington

went beyond discussing classwork and discipline issues to discussing and addressing A.P.'s mental health, promoting the idea that A.P. could socially transition to be treated as a boy, be called "M" and "he" thereby addressing and treating mental health issues arising from bullying and lack of self-confidence in being a girl.

41.    At some point during those secret mental health counseling sessions, A.P.'s mental and emotional distress escalated to the point that she became suicidal. Still, Mr. and Mrs. Perez were not informed until their daughter had actually attempted suicide at school twice.

42.    Mr. and Mrs. Perez did not receive so much as a phone call until their 12-year-old daughter had already tried to kill herself twice and was being transported for admission to a mental health facility under the Baker Act. Had A.P.'s suicide attempts been successful, Mr. and Mrs. Perez would have known nothing about their daughter's mental health issues until they received word that their child was dead.

43.    At the January 5, 2022 meeting, Mr. and Mrs. Perez were informed by a Clay County Schools Resource (Police) officer that A.P. had been placed in the back of a police car and was going to be transported to a mental health facility under the Baker Act.

44.    The School Resource (Police) officer for school district advised Mr. and Mrs. Perez that A.P. was going to be transported regardless of whether the

13

parents agreed. Mr. and Mrs. Perez agreed that A.P. could be transported to the mental health facility.

45.    Mr. and Mrs. Perez were not given the option of transporting their traumatized daughter to the facility or even traveling with her to provide comfort.

46.    Instead, their suicidal 12-year-old daughter was taken in a police vehicle to an emergency room, where she stayed until 4:00 a.m. when she was transferred alone, without the comfort and/or support of her parents, to another emergency room and then admitted to the behavioral health unit at Wolfson Children's Hospital.

47.    At the meeting on January 5, 2022, Mr. Perez informed those present that he and Mrs. Perez did not agree with the actions secretly undertaken by school staff in affirming their daughter in a false male identity with a male name. Mr. Perez made it clear that as practicing Roman Catholics the parents did not and do not consent to their daughter being treated as a male, changing A.P.'s name, identity, and pronouns, and that such actions would be directly contrary to biological reality and the family's religious beliefs which permeate all of their lives.

48.    Principal O'Brian said that no one could impose changes on the family that are against their values. In the presence of Mr. O'Brian, Mrs. Washington claimed she would never do that, even though she had been doing exactly that clandestinely for months.

49.     Although Mrs. Washington claimed that A.P. attempted suicide because she was distressed because her parents would not affirm her desire to be referred to as a boy named "M," when A.P. was admitted to the hospital and staff referred to her as "M," she corrected them and said, "I'm not M, I'm A."

50.     A.P. remained as an inpatient at Wolfson Children's Hospital behavioral health unit with restricted access to her parents until January 13, 2022 when she was discharged into her parents' care.

51.     Only after A.P. returned home did Mr. and Mrs. Perez learn about the extent of Defendants' interference with their fundamental parental rights and of Defendant School Board's failure to comply with the law to the detriment of Mr. and Mrs. Perez and A.P.

52.     After returning home. A.P. explained that during fall semester 2021 she was being bullied at school and felt weak, that as a girl she could not do anything to stop it.

53.     A.P. likes video games and sports and was told by her peers that those were "boy things." A friend confided in A.P. that she thought she was "transgender," and A.P. began to think she could be transgender too because she wanted to be strong and free "like a boy."

54.     Unbeknownst to Mr. and Mrs. Perez, beginning in November 2021, Mrs. Washington sent an email to A.P.'s teacher instructing the teacher to send A.P. to weekly counseling sessions with Mrs. Washington.

55.     On or about November 3, 2021 at one of those scheduled sessions, A.P. noticed that Mrs. Washington had a lot of posters, literature, and other promotional materials related to LGBTQ "pride" in her office. A.P. thought those materials were "cool."

56.     A.P. asked Mrs. Washington if she supported transgender people and Mrs. Washington said that she did. A.P. said to Mrs. Washington, "in that case call me "M" and 'he'."

57.     Plaintiffs are informed and believed and based thereon allege that Mrs. Washington continued to see A.P. at least weekly until January 5, 2022.

58.     During the meetings, A.P. related to Mrs. Washington that she had been the subject of bullying and was experiencing a lack of self-confidence. However, Mrs. Washington did not address these issues, nor follow District protocol regarding bullying. Instead, Mrs. Washington focused on affirming A.P. as a "boy" named "M." and promoting the belief that A.P. could become a boy.

59.     Mrs. Washington — who had never met Mr. and Mrs. Perez let alone informed them of her scheduled weekly meetings with A.P. or the bullying and mental health concerns A.P. had shared—asked A.P. whether her parents "accepted"

her as a "boy" named "M." A.P. replied that her parents did not know about A.P. wanting to be referred to as a boy and that she did not want her parents to know because of their Christian beliefs as practicing Catholics.

60.    In reckless disregard of Florida's Parents' Bill of Rights, Mr. and Mrs. Perez's and A.P.'s constitutional rights, and District policy that children do not have the right to keep information confidential from their parents, Mrs. Washington assured A.P. that she would not tell A.P.'s parents.

61.    However, Mrs. Washington did not extend her promise of confidentiality to A.P.'s peers and others at school. A.P. had not told others outside of Mrs. Washington's office about being called "M" and did not consent to others being told. Without consulting with or obtaining consent from A.P., Mrs. Washington took it upon herself to publicize her endorsement of a male identity by calling A.P. "M" outside of her office and in front of A.P.'s friends. In one instance, Mrs. Washington called out to A.P. using the name "M" while A.P. and her friends, who were unaware of the conversations between Mrs. Washington and A.P., were waiting for the bus.

62.    A.P. was humiliated and her peers escalated the bullying, hurling insults at her related to the discordant identity Mrs. Washington had published without consulting A.P. and while impermissibly promising not to tell A.P.'s parents.

63.     A.P. became more confused and depressed as the bullying she had been led to believe would be helped if she was "affirmed" as a boy had only gotten worse because of Mrs. Washington's willfully reckless actions.

64.     A.P. also did not consent to or ask Mrs. Washington for any help notifying teachers about being called "M." Nevertheless, Mrs. Washington promised A.P: "I will get ALL of your teachers to call you "M." "I don't know when it will happen but it WILL happen."

65.      Still, neither Mrs. Washington nor anyone else from the school or the District contacted Mr. and Mrs. Perez about A.P. being "affirmed" as a boy named "M" or the mental health concerns which were escalating as a result of the increased bullying prompted by Mrs. Washington's unauthorized disclosure and publication of an alternate male name and identity for A.P. Nor did anyone inform Mr. and Mrs. Perez about the bullying or do anything to address the bullying before A.P. became suicidal.

66.     School officials had previously informed Mr. and Mrs. Perez about some concerns regarding A.P. falling behind academically and being unruly in class. Mr. and Mrs. Perez immediately addressed those issues and A.P.'s academic performance improved and unruly behavior stopped.

67.     However, those same protocols and respect for Mr. and Mrs. Perez's parental rights were wholly disregarded when A.P. was experiencing mental health issues that included distress about her sex and a desire to be affirmed as a boy.

68.     Rather than immediately contacting Mr. and Mrs. Perez as they had regarding academic and discipline issues, Defendants deliberately withheld critical information related to their child's mental health based on a belief that the information was "confidential" because it related to gender identity.

69.     Defendants' actions in affirming A.P.'s desire to be called by an alternate gender discordant name and pronouns and actively promoting the idea that she can socially transition to another gender involves significant mental decisions affecting her well-being with potentially life-long consequences.

70.     In engaging in conduct aimed at affirming a desire to socially transition to a different gender identity without the knowledge or consent of Mr. and Mrs. Perez, Defendants recklessly disregarded the rights of Mr. and Mrs. Perez as the parents of A.P. and substituted their judgment for that of the parents in providing mental health counseling and intervention without their consent.

### The Parents' Bill of Rights and School Board's Inaction

71.     The Parents' Bill of Rights, HB 241, was signed by Governor DeSantis and became law on July 1, 2021. The Parents' Bill of Rights was in full force and effect at all times relevant to the allegations of this Complaint.

72.     The Parents' Bill of Rights reserves all parental rights, including the rights to direct education, upbringing, moral or religious training and to make health care decisions for their minor children to parents "without obstruction or interference from the state, any of its political subdivisions, any other governmental entity, or any other institution. Florida Statutes § 1014.04.

73.     The Parents Bill of Rights prescribes that "important information relating to a minor child should not be withheld, either inadvertently or purposefully, from his or her parent, including information relating to the minor child's health, well-being, and education, while the minor child is in the custody of the school district." Florida Statutes § 1014.02.

74.     Florida Statutes § 1014.02 further provides that "it is necessary to establish a consistent mechanism for parents to be notified of information relating to the health and well-being of their minor children."

75.     Florida Statutes § 1014.03 provides:

The state, any of its political subdivisions, any other governmental entity, or any other institution may not infringe on the fundamental rights of a parent to direct the upbringing, education, health care, and mental health of his or her minor child without demonstrating that such action is reasonable and necessary to achieve a compelling state interest and that such action is narrowly tailored and is not otherwise served by a less restrictive means.

76.     Defendant School Board is a political subdivision of the state and a governmental agency subject to the Parents' Bill of Rights.

77.     Plaintiffs are informed and believe and based thereon allege that Defendant School Board has failed to enact a policy, protocol, guidance or other "consistent mechanism" to provide that parents are notified of information relating to the health and well-being of their minor children, in particular their children's assertion of a discordant gender identity and desire to socially transition to that identity at school through, *inter alia,* the use of alternate names and pronouns.

78.     Defendant School Board's failure to enact a policy, protocol, guidance or other "consistent mechanism" to provide that parents are notified of information relating to the health and well-being of their minor children exhibits deliberate indifference to the rights of Plaintiffs enumerated in the Parental Bill of Rights and established by the United States and Florida constitutions in that parents will be, and in Plaintiffs' case have been, denied their right to direct the upbringing of their child and direct decisions concerning her mental health and well-being.

79.     Plaintiffs are informed and believe and based thereon allege that Defendant School Board and Defendant Broskie have failed to properly supervise and train District staff of the requirements for parental notification under the Parents' Bill of Rights and other laws in that District staff, including Mrs. Schumacher, believe that "confidentiality" prevents them from informing parents that their children are asserting a discordant gender identity and seeking to socially transition to  that identity at school through the use of alternate names and pronouns.

80.    Defendants' failure to properly train and supervise District staff in requirements of parental notification under the Parents Bill of Rights and other laws exhibits deliberate indifference to the rights of Plaintiffs enumerated in the Parental Bill of Rights and established by the United States and Florida constitutions, in that parents will be, and in Plaintiffs' case have been, denied their right to direct the upbringing of their child and direct decisions concerning her mental health and well-being.

81.    Defendants' clandestine, intentional and unauthorized actions regarding A.P. deprived Mr. and Mrs. Perez of their right to be informed of what was taking place with their child concerning a serious mental health issue and of their ability to determine and provide their child the mental health care and assistance she needed before she became suicidal.

82.    Florida Statutes §1008.363(3) provides:

> Beginning with the 2021-2022 school year, any student identification card issued by a public school to students in grades 6 through 12 must include the telephone numbers for national or statewide crisis and suicide hotlines and text lines.

83.    Defendants School Board and Broskie failed to enact procedures or directives to implement the requirements of Section 1008.363(3) and/or failed to train and supervise District staff to ensure compliance with Section 1008.363(3), and Defendants O'Brian and Schumacher failed to comply with Section 1008.363(3) in that A.P.'s student identification card issued for the 2021-2022 school year, her 6th

grade year, does not contain the required notifications regarding crisis and suicide prevention hotlines and text lines.

84.     Because of Defendants' failure to comply with Section 1008.363(3), A.P was deprived of critical information regarding resources to address crises and suicidal ideations, information which, if available to her, she could have utilized to seek help instead of attempting suicide after Defendants failed to comply with District anti-bullying policies and protocols, otherwise address the bullying issue A.P. brought to their attention and failed to notify Mr. and Mrs. Perez about A.P.'s mental health issues and assertion of a discordant gender identity.

85.     Defendants' reckless disregard for the rights of Mr. and Mrs. Perez and for the well-being of A.P. led to A.P. attempting suicide twice on school property, causing permanent injury to A.P. and damage to the familial relationship between A.P. and her parents.

86.     A.P. has suffered and continues to suffer emotional distress, psychological and physical injuries as the direct result of Defendants' reckless disregard for her right to receive care, comfort, and guidance from her parents, her right to free exercise of her sincerely held religious beliefs, her right to familial privacy, and other individual rights.

87.     Mr. and Mrs. Perez have suffered and continue to suffer emotional distress, psychological and physical injuries as the direct result of Defendants'

reckless disregard for their fundamental parental rights to direct the upbringing, education and mental and physical health care for their daughter, their right to familial privacy, right to free exercise of religion, and their rights under the Parents' Bill of Rights and other Florida statutes.

**FIRST CAUSE OF ACTION**
**VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983**
**(Violation of Plaintiffs' Substantive Due Process Fundamental Parental Right**
**to Direct the Education and Upbringing of Their Child under the U.S.**
**Constitution)**
**(By Mr. and Mrs. Perez individually Against all Defendants)**

88.     Plaintiffs incorporate the preceding allegations by reference as if set forth in full.

89.     The Due Process Clause in the 14th Amendment to the United States Constitution protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children as part of directing the education and upbringing of their children. *Pierce v. Society of Sisters*, 268 U.S. 510 (1925); *Troxel v. Granville*, 530 U.S. 57, 68 (2000)

90.     Defendant School Board violated Plaintiffs' fundamental constitutional right to make and direct decisions concerning the care, custody, and control of their child in direct violation of Florida's Parents' Bill of Rights in failing to enact a policy to provide that parents are to be notified of information relating to the health and well-being of their minor children and in failing to train or supervise District staff in the requirements for parental notification under Florida law. As a direct result of said

24

failures, District staff acted under a false belief that children such as A.P. are protected by confidentiality laws so that their assertion of a discordant gender identity and request for social transition[1] is to be concealed from their parents.

91.     Defendant Broskie violated Plaintiffs' fundamental constitutional right to make and direct decisions concerning the care, custody, and control of their child in direct violation of Florida's Parents' Bill of Rights in failing to recommend that the Board enact a policy to provide that parents are to be notified of information relating to the health and well-being of their minor children and in failing to train or supervise District staff in the requirements for parental notification under the Constitution and Florida law. As a direct result of said failures, District staff acted under a false belief that children such as A.P. are protected by confidentiality laws so that their assertion of a discordant gender identity and request for social transition is to be concealed from their parents.

92.     Defendants O'Brian and Schumacher violated Plaintiffs' fundamental constitutional right to make decisions concerning the care, custody, and control of their child and in direct violation of Florida's Parents' Bill of Rights by failing to train or supervise staff at Paterson Elementary School in the requirements for

---

[1]     Plaintiffs use the term "social transition" to describe measures aimed at affirming a child's assertion of a discordant gender identity such as use of an opposite sex name and pronouns, adoption of opposite-sex clothing and grooming, or in some cases, use of opposite-sex privacy facilities, which is part of the process of "transitioning" to an opposite-sex identity.

parental notification under the Constitution and Florida law. As a direct result of said failures, school staff continue to believe that children such as A.P. are protected by confidentiality laws so that their assertion of a discordant gender identity and request for social transition is to be concealed from their parents. Said belief is also contrary to the District's "Understanding Confidentiality" guideline which states that the law does not grant children a right of confidentiality from their parents.

93.    Defendants violated Plaintiffs' fundamental right to make decisions regarding the custody, care, and control of their daughter when Mrs. Washington initiated surreptitious weekly meetings with A.P. during which Mrs. Washington treated and addressed mental health issues,  promoted and affirmed a discordant gender identity and social transition for A.P., and continued to meet with and counsel A.P. without the knowledge and consent of her parents until A.P. attempted suicide twice on school property.

94.    Defendants acted with deliberate indifference to Plaintiffs' fundamental parental rights by meeting with Plaintiffs' daughter and engaging in mental health treatment and counseling over a period of several months without notifying parents, despite enactment of the Parents' Bill of Rights and published District guidelines which state, consistent with the law, that children do not possess rights of confidentiality vis-a-vis their parents.

95.    Defendants further acted with deliberate indifference to Plaintiffs' fundamental rights by failing to notify Plaintiffs that their daughter's mental health was deteriorating, including to the point that she became suicidal.

96.    Defendants further acted with deliberate indifference to Plaintiffs' fundamental rights by affirmingly conveying the message that, because of the family's sincerely held religious beliefs, A.P.'s parents would not act in A.P.'s best interest in response to A.P.'s request that she be falsely referred to as a boy named "M" with male pronouns, so that they would not be informed. Said actions by Defendants interfered with the parent-child relationship, creating discord and division between A.P. and her parents without even communicating with Mr. and Mrs. Perez.

97.    Defendants' deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights.

98.    Plaintiffs' constitutionally protected right to direct the education and upbringing of their child was violated as the plainly obvious consequence of Defendants' actions in a) failing to implement parental notification procedures as required under Florida law; b) failing to train and supervise district staff regarding parental notification requirements; c) directing District staff that students are entitled to confidentiality when they raise issues related to gender identity; d) meeting surreptitiously with A.P.; e) withholding mental health information regarding A.P.

from Mr. and Mrs. Perez; f) promoting and facilitating social transition of a discordant gender identity for A.P. without her parents' knowledge or consent; g) affirming disparaging messages regarding the family's sincerely held religious beliefs; h) failing to provide A.P. and other students critical information regarding crisis and suicide prevention resources,  and taking or failing to take other actions of which Plaintiffs are presently unaware.

99.    Defendants cannot assert a compelling interest for disregarding Plaintiffs' long-established fundamental constitutional right, confirmed by Florida law, to direct the upbringing, care, and education of their children, and Defendants' prohibition against parental notification is not narrowly tailored.

100.   Defendants' violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

101.   Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their fundamental rights.

### SECOND CAUSE OF ACTION
### VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983
**(Violation of Plaintiffs' Fundamental Parental Right under Substantive Due Process in the Fourteenth Amendment to Direct the Medical and Mental Health Decision-making for Their Child)**
**(By Mr. and Mrs. Perez individually Against all Defendants)**

102.   Plaintiffs incorporate the allegations in Paragraphs 1-87 by reference as if set forth in full.

103.   The Due Process Clause in the 14th Amendment to the United States Constitution protects the fundamental substantive due process right of parents to direct the medical and mental health decision-making for their children. *Parham v. J. R.*, 442 U.S. 584 (1979).

104.   Defendant School Board violated Plaintiffs' fundamental constitutional right to direct medical and mental health decision-making for their child, also acting in direct violation of Florida's Parents' Bill of Rights, in failing to enact a policy, procedure, guideline or other mechanism to provide that parents are to be notified of information relating to the health and well-being of their minor children and in failing to train or supervise District staff in the requirements for parental notification under Florida law. As a direct result of said failures, District staff acted under a false belief that children such as A.P. are protected by confidentiality laws so that their assertion of a discordant gender identity and request for social transition is to be concealed from their parents.

105.   Defendant Broskie violated Plaintiffs' fundamental constitutional right to direct medical and mental health decision-making for their child, also acting in direct violation of Florida's Parents' Bill of Rights, in failing to recommend that the Board enact a policy to provide that parents be notified of information relating to the health and well-being of their minor children and in failing to train or supervise District staff in the requirements for parental notification under the Constitution and

Florida law. As a direct result of said failures, District staff acted under a false belief that children such as A.P. are protected by confidentiality laws so that their assertion of a discordant gender identity and request for social transition is to be concealed from their parents.

106.   Defendants O'Brian and Schumacher violated Plaintiffs' fundamental constitutional right to direct medical and mental health decision-making for their child, and in direct violation of Florida's Parents' Bill of Rights, by failing to train or supervise staff at Paterson Elementary School in the requirements for parental notification under the Constitution and Florida law, so that school staff believe that children such as A.P. are protected by confidentiality laws and that their assertion of a discordant gender identity and request for social transition is to be concealed from their parents. Said belief is also contrary to the District's "Understanding Confidentiality" guideline which states that the law does not grant children a right of confidentiality from their parents.

107.   Defendants violated Plaintiffs' fundamental right to make decisions regarding medical and mental health care for their daughter when Mrs. Washington initiated surreptitious weekly meetings with A.P. during which Mrs. Washington addressed and treated mental health issues, and promoted and affirmed a discordant gender identity and social transition for A.P. and continued to meet with A.P.

without the knowledge and consent of her parents until A.P. attempted suicide twice on school property.

108.   Defendants acted with deliberate indifference to Plaintiffs' fundamental parental rights by withholding information regarding their daughter's mental health based on an unsubstantiated assertion that children have rights of confidentiality that prohibit disclosing information regarding gender identity to parents, thereby explicitly and intentionally excluding Plaintiffs from making the mental health decisions for their daughter that are exclusively their right to make.

109.   Defendants further acted with deliberate indifference to Plaintiffs' fundamental rights by failing to inform Plaintiffs about their daughter's mental health issues so that they could determine the provision of treatment and care before she became suicidal and had to be involuntarily committed under the Baker Act.

110.   Defendants' deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights.

111.   Defendants cannot assert a compelling interest for disregarding Plaintiffs' long-established fundamental constitutional right to direct the medical and mental health care for their child, confirmed in the Parents' Bill of Rights, and Defendants' prohibition against parental notification is not narrowly tailored.

112.   By excluding Mr. and Mrs. Perez from discussions regarding their child's mental health issues, including questions regarding gender identity and

adopting protocols aimed at withholding information from parents and socially transitioning their child at school, Defendants are making decisions that affect the mental health of their child in contravention of Plaintiffs' fundamental rights.

113.   Defendants have usurped Plaintiffs' responsibility for the health and well-being of their child and sought to supplant their authority for Plaintiffs' authority as fit parents to be the ultimate decision makers regarding the physical and mental health of their child, including decisions related to their child's confusion or distress about her sex or gender identity (and related bullying). Substituting their judgment for the judgment of A.P.'s parents led to A.P. attempting suicide at school and being subject to police intervention and involuntary commitment and confinement under the Baker Act.

114.   Defendants' deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights to direct the medical and mental health decision-making for their child.

115.   Plaintiffs' constitutionally protected right to direct the medical and mental health decision-making for their child was violated as the plainly obvious consequence of Defendants' actions in a) failing to implement parental notification procedures as required under Florida law; b) failing to train and supervise District staff regarding parental notification requirements; c) directing District staff that students are entitled to confidentiality when they raise issues related to gender

identity; d) meeting surreptitiously with A.P.; e) withholding mental health information regarding A.P. from Mr. and Mrs. Perez; f) promoting and facilitating social transition of a discordant gender identity for A.P. without her parents' knowledge; g) affirming disparaging messages regarding the family's sincerely held religious beliefs; h) failing to provide A.P. and other students critical information regarding crisis and suicide prevention resources,  and taking or failing to take other actions of which Plaintiffs are presently unaware.

116.   Defendants cannot assert a compelling state interest for recklessly disregarding Plaintiffs' long-established fundamental constitutional right to direct the medical and mental health care decisions for their child, and Defendants' explicit prohibition against parental notification is not narrowly tailored.

117.   Defendants' violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

118.   Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their fundamental rights.

### THIRD CAUSE OF ACTION
### VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983
### (Violation of Plaintiffs' Substantive Due Process Right to Familial Privacy Under the U.S. Constitution)
### (By Plaintiffs individually and on behalf of A.P. Against All Defendants)

119.   Plaintiffs incorporate the allegations in paragraphs 1-87 by reference as if set forth in full.

120.   The Due Process Clause in the 14th Amendment to the United States Constitution protects the sanctity of the family as an institution deeply rooted in this Nation's history and tradition, through which moral and cultural values are passed down to children. *Moore v. East Cleveland*, 431 U.S. 494, 503-04 (1977). The Constitution protects the private realm of the family from interference by the state. *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944).

121.   Defendant School Board violated Plaintiffs' fundamental constitutional right to familial privacy, and acted in direct violation of Florida's Parents' Bill of Rights, in failing to enact a policy, procedure, guideline or other mechanism to provide that parents be notified of information relating to the health and well-being of their minor children and/or in failing to train or supervise District staff in the requirements for parental notification under Florida law. As a direct result of said failures, District staff acted under a false belief that children such as A.P. are protected by confidentiality laws so that their assertion of a discordant gender identity and request for social transition, matters that are within the private realm of the family, are to be concealed from parents.

122.   Defendant Broskie violated Plaintiffs' fundamental constitutional right to familial privacy, and acted in direct violation of Florida's Parents' Bill of Rights, in failing to recommend that the Board enact a policy to provide that parents be notified of information relating to the health and well-being of their minor children

and in failing to train or supervise District staff in the requirements for parental notification under the Constitution and Florida law. As a direct result of said failures, District staff acted under a false belief that children such as A.P. are protected by confidentiality laws so that their assertion of a discordant gender identity and request for social transition, matters within the purview of the private realm of the family are to be concealed from parents.

123.   Defendants O'Brian and Schumacher violated Plaintiffs' fundamental constitutional right to familial privacy, and acted in direct violation of Florida's Parents' Bill of Rights, by failing to train or supervise staff at Paterson Elementary School in the requirements for parental notification under the Constitution and Florida law. As a direct result of said failure, school staff believe that children such as A.P. are protected by confidentiality laws so that their assertion of a discordant gender identity and request for social transition, matters within the purview of the private realm of the family, are to be concealed from parents. Said belief is also contrary to the District's "Understanding Confidentiality" guideline which states that the law does not grant children a right of confidentiality from their parents.

124.   By failing to inform Mr. and Mrs. Perez of critical information regarding their daughter's mental health and the bullying she was enduring, meeting with their minor daughter without their consent, affirming their daughter in a discordant gender identity, concealing that transition from them, and confronting

them regarding their religious beliefs, Defendant Washington substituted her judgment regarding the mental health of A.P. for the judgment of the parents and impermissibly injected herself into the private realm of Plaintiffs' family by usurping Plaintiffs' rights to make decisions regarding their child's mental health and well-being.

125.   In substituting her judgment regarding the mental health of A.P. for the judgment of the parents Defendant Washington has impermissibly injected herself into the private realm of Plaintiffs' family by depriving A.P. of her right to have decisions regarding her mental health and well-being made by her parents—the people who love and know her best.

126.   By relying upon a belief that a child's assertion of a discordant gender identity is confidential information to be concealed from parents and thereby failing to inform Mr. and Mrs. Perez of critical information regarding their daughter's mental health, Defendants substituted their judgment regarding the mental health of A.P. for the judgment of the parents and impermissibly injected themselves into the private realm of Plaintiffs' family by usurping Plaintiffs' rights to make decisions regarding their child's mental health and well-being.

127.   In substituting their judgment regarding the mental health of A.P. for the judgment of the parents, Defendants have impermissibly injected themselves into

the private realm of Plaintiffs' family by depriving A.P. of her right to have decisions regarding her mental health and well-being made by her parents.

128.  Through their acts and failures to act, Defendants have infringed Plaintiffs' right to family privacy by affirmingly asserting that A.P.'s parents will act unreasonably in response to  her assumption of a fictitious male identity because of their religious beliefs and therefore cannot be trusted to be informed of or involved in decision-making related to her mental health and identity. Defendants have nurtured seeds of doubt within A.P.'s mind about whether her parents are acting in her best interest, thereby creating discord and division in the parent-child relationship that infringes Plaintiffs' right to family privacy.

129.  Defendants acted with deliberate indifference to and reckless disregard for Plaintiffs' rights to family privacy by their actions in intentionally casting doubt on the parents' support and ability to respond appropriately to their child's expression of a discordant gender identity and excluding parents from decision-making related to their child's health and welfare, including questions regarding her sex and gender identity.

130.  Defendants' deliberate indifference to Plaintiffs' rights resulted in deprivation of their constitutional right to familial privacy.

131.  Plaintiffs' constitutionally protected right to familial privacy was violated as the plainly obvious consequence of Defendants' actions in a) failing to

implement parental notification procedures as required under Florida law; b) failing to train and supervise District staff regarding parental notification requirements; c) directing District staff that students are entitled to confidentiality when they raise issues related to gender identity; d) meeting surreptitiously with A.P.; e) withholding mental health information regarding A.P. from Mr. and Mrs. Perez; f) promoting and facilitating social transition of a discordant gender identity for A.P. without her parents' knowledge; g) affirming disparaging messages regarding the family's sincerely held religious beliefs; h) failing to provide A.P. and other students critical information regarding crisis and suicide prevention resources,  and taking or failing to take other actions of which Plaintiffs are presently unaware.

132.   Defendants cannot assert a compelling state interest for disregarding requirements for establishing procedures for parental notification, failing to provide students with information regarding crisis intervention and suicide prevention, and Plaintiffs' constitutional right to familial privacy. Defendants' prohibitions against parental notification and involvement in children's mental health decisions related to gender identity are not narrowly tailored.

133.   Defendants' violation of Plaintiffs' constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm in that, *inter alia*, A.P. became depressed, attempted suicide twice and was committed to a mental

health center without being permitted to have the care, companionship, and guidance of her parents.

134.   Defendants' violation of Plaintiffs' constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm in that Mr. and Mrs. Perez were denied their right to make mental health decisions for their daughter without interference from the state, to make decisions in keeping with their family values and sincerely held religious beliefs, and to provide comfort, care, and direction to their daughter as she was undergoing a mental health crisis.

135.   Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their fundamental rights.

**FOURTH CAUSE OF ACTION**
**Violation of Civil Rights, 42 U.S.C.  § 1983**
**(Violation of Plaintiffs' Right to Free Exercise of Religion**
**Under the U.S. Constitution)**
**(By Plaintiffs individually and on behalf of A.P. Against Defendants**
**Washington, O'Brian, and Schumacher)**

136.   Plaintiffs incorporate the allegations of paragraphs 1-87 by reference as if set forth in full.

137.   The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits Defendants from abridging Plaintiffs' right to free exercise of religion.

138.   Plaintiffs have sincerely held religious beliefs that human beings are created male or female and that the natural created order regarding human sexuality

cannot be changed regardless of individual feelings, beliefs, or discomfort with one's identity, and biological reality, as either male or female.

139.   Plaintiffs have sincerely held religious beliefs that parents have the non-delegable duty to direct the upbringing and beliefs, religious training, and medical and mental health care of their children and any intrusion of the government into that realm infringes upon the free exercise of their religion.

140.   Plaintiffs have sincerely held religious beliefs that all people are to be treated with respect and compassion, and that respect and compassion  includes refraining from misrepresenting an individual's natural biological and created identity as either a male or a female.

141.   Plaintiffs have sincerely held religious beliefs that individuals are to speak the truth, including speaking the truth regarding matters of sexual identity as a male or female.

142.   Defendants' actions in excluding Mr. and Mrs. Perez from decision making regarding their daughter because of their Catholic Christian faith, target the Plaintiffs' religious beliefs regarding the created order, human nature, sexuality, gender, ethics, and morality which constitute central components of their sincerely held religious beliefs.

143.   Defendants were aware of the family's sincerely held religious beliefs and that such beliefs would conflict with socially transitioning A.P. and untruthfully

calling their daughter a male named "M" and using male pronouns. Defendants deliberately and recklessly used that knowledge to disparage the family's sincerely held religious beliefs to the detriment of A.P.'s mental health and in derogation of Plaintiffs' fundamental rights.

144.   Defendants' actions have caused a direct and immediate conflict with Plaintiffs' religious beliefs by, through failure to require notification, train District staff on the law requiring notification, and implement appropriate safeguards for parental rights, preventing Mr. and Mrs. Perez from being informed of the mental health issues A.P. was experiencing and seeking counseling and guidance for A.P. in a manner that is consistent with the beliefs held by Mr. and Mrs. Perez and A.P. herself before A.P. became suicidal.

145.   Defendants' actions have impermissibly burdened Plaintiffs' sincerely held religious beliefs by nurturing seeds of doubt and distrust in A.P.'s mind regarding the family's beliefs and whether adherence to them is beneficial and healthy.

146.   Defendants' actions are neither neutral nor generally applicable, but rather specifically and discriminatorily target the religious speech, beliefs, and viewpoint of Plaintiffs and thus expressly constitute a substantial burden on sincerely held religious beliefs that are contrary to Defendants' viewpoint regarding gender identity and transition of a discordant gender identity.

41

147.   No compelling state interest justifies the burdens Defendants imposed on Plaintiffs' rights to the free exercise of religion.

148.   Defendants' actions are not the least restrictive means to accomplish any permissible government purpose Defendants seek to serve.

149.   Defendants' violation of Plaintiffs' rights to free exercise of religion has caused, is causing, and will continue to cause Plaintiffs to suffer undue and actual hardships. Said hardships include exacerbation of A.P.'s mental health concerns to the point of her attempting suicide and now having to seek therapeutic intervention to address the long-term effects of Defendants' actions, diminution of the parent-child relationship, invasion of familial privacy, and physical and emotional injuries to all Plaintiffs.

150.   Defendants' violation of Plaintiffs' rights to free exercise of religion has caused, is causing, and will continue to cause Plaintiffs to suffer irreparable injury. Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

**FIFTH CAUSE OF ACTION**
**(Violation of Plaintiffs' Right to Free Exercise And Enjoyment Of Religion Under Article I, §3 Of The Florida Constitution)**
**(By Plaintiffs individually and on behalf of A.P., Against Defendants Washington, O'Brian and Schumacher)**

151.   Plaintiffs incorporate the allegations in paragraphs 1-87 by reference as if set forth in full.

42

152.   Article I, § 3 of the Florida Constitution states, "There shall be no law respecting the establishment of religion or prohibiting or penalizing the free exercise thereof."

153.   Plaintiffs have sincerely held religious beliefs that human beings are created male or female and that the natural created order regarding human sexuality cannot be changed regardless of individual feelings, beliefs, or discomfort with one's identity, and biological reality, as either male or female.

154.   Plaintiffs have sincerely held religious beliefs that parents have the non-delegable duty to direct the upbringing and beliefs, religious training, and medical and mental health care of their children and any intrusion of the government into those duties and responsibilities infringes upon the free exercise of their religion.

155.   Plaintiffs have sincerely held religious beliefs that all people are to be treated with respect and compassion, and that respect and compassion includes refraining from misrepresenting an individual's natural biological and created identity as either a male or a female.

156.   Plaintiffs have sincerely held religious beliefs that individuals are to speak the truth, including speaking the truth regarding matters of sexual identity as a male and female.

157.   Defendants' actions in excluding Mr. and Mrs. Perez from decision making regarding their daughter's mental health because of their Christian faith,

target the Plaintiffs' religious beliefs regarding human nature, the created order, gender, sexuality, ethics, and morality which constitute central components of their sincerely held religious beliefs.

158.   Defendants were aware of the family's sincerely held religious beliefs and that such beliefs would conflict with socially transitioning A.P. and untruthfully calling their daughter a male named "M" and using male pronouns. Defendants deliberately and recklessly used that knowledge to nurture doubts about the wisdom and benefit of those beliefs to the detriment of A.P.'s mental health and in derogation of Plaintiffs' fundamental rights.

159.   Defendants' actions have caused a direct and immediate conflict with Plaintiffs' religious beliefs by prohibiting them from being informed of the mental health issues A.P. was experiencing and seeking counseling and guidance for A.P. in a manner that is consistent with the beliefs held by Mr. and Mrs. Perez and A.P.

160.   Defendants' actions have impermissibly burdened Plaintiffs' sincerely held religious beliefs by nurturing seeds of doubt and distrust in A.P.'s mind regarding the family's beliefs and whether adherence to them is beneficial and healthy.

161.   Defendants' actions are neither neutral nor generally applicable, but rather specifically and discriminatorily target the religious speech, beliefs, and viewpoint of Plaintiffs and thus expressly constitute a substantial burden on

44

sincerely held religious beliefs that are contrary to Defendants' viewpoint regarding gender identity and transition to a discordant gender identity.

162. No compelling state interest justifies the burdens Defendants imposed upon Plaintiffs' rights to the free exercise of religion.

163. Defendants' actions are not the least restrictive means to accomplish any permissible government purpose Defendants seek to serve.

164. Defendants' violation of Plaintiffs' rights to free exercise of religion has caused, is causing, and will continue to cause Plaintiffs to suffer undue and actual hardships. Said hardships include exacerbation of A.P.'s mental health concerns to the point of her attempting suicide and now having to seek therapeutic intervention to address the long-term effects of Defendants' actions, diminution of the parent-child relationship, invasion of familial privacy, and physical and emotional injuries to all Plaintiffs.

165. Defendants' violation of Plaintiffs' rights to free exercise of religion has caused, is causing, and will continue to cause Plaintiffs to suffer irreparable injury. Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

## SIXTH CAUSE OF ACTION

### (Violation of Plaintiffs' Right to Privacy Under
### Article 1, § 23 of the Florida Constitution)
### (By Plaintiffs individually and on behalf of A.G. Against all Defendants)

166. Plaintiffs incorporate the allegations of paragraphs 1-87 by reference as if set forth in full.

167. Plaintiffs, as Floridians, enjoy an explicit right of privacy under Article 1, § 23 of the Florida Constitution, which provides in pertinent part that "[e]very natural person has the right to be let alone and free from governmental intrusion into his private life."

168. Under Article 1, § 23 of the Florida Constitution, "the State may not intrude upon the parents' fundamental right to raise their children except in cases where the child is threatened with harm." *Von Eiff v. Azicri*, 720 So.2d 510 (FL 1998).

169. In substituting their judgment regarding the mental health of A.P. for the judgment of the parents by meeting secretly to treat and address gender identity issues without notifying the parents, Defendants have impermissibly injected themselves into the private realm of Plaintiffs' family by usurping Mr. and Mrs. Perez's fundamental right to direct the decisions regarding their child's care and well-being.

170.   In substituting their judgment regarding the mental health of A.P. for the judgment of the parents by meeting secretly to treat and address gender identity issues without notifying the parents, Defendants have impermissibly injected themselves into the private realm of Plaintiffs' family by depriving A.P. of her right to have decisions regarding her mental health and well-being made by her parents.

171.   Defendants have infringed Plaintiffs' right to family privacy by prompting Plaintiffs' daughter to affirm a discordant gender identity without the approval of her parents and to implicitly endorse a belief that A.P.'s parents do not "accept" her sufficiently to participate in decision-making related to questions regarding her identity.  Defendants have nurtured seeds of doubt within Plaintiffs' daughter's mind about whether her parents are acting in her best interest, thereby creating discord and division in the parent-child relationship that infringes Plaintiffs' right to family privacy.

172.   Defendants acted with deliberate indifference to Plaintiffs' rights to family privacy by their actions in intentionally excluding Mr. and Mrs. Perez from decision-making related to their child's distress and questions regarding her sex and gender identity and reinforcing in A.P.'s mind that her parents should not be trusted with that decision making by promising to not inform them.

173.   Defendants' deliberate indifference to Plaintiffs' rights resulted in deprivation of their constitutional right to family privacy.

174.   Plaintiffs' constitutionally protected right to familial privacy was violated as the plainly obvious consequence of Defendants' actions in a) failing to implement parental notification procedures as required under Florida law; b) failing to train and supervise District staff regarding parental notification requirements; c) directing District staff that students are entitled to confidentiality when they raise issues related to gender identity; d) meeting surreptitiously with A.P.; e) withholding mental health information regarding A.P. from Mr. and Mrs. Perez; f) promoting and facilitating social transition of a discordant gender identity for A.P. without her parents' knowledge; g) affirming disparaging messages regarding the family's sincerely held religious beliefs; h) failing to provide A.P. and other students critical information regarding crisis and suicide prevention resources,  and taking or failing to take other actions of which Plaintiffs are presently unaware.

175.   Defendants cannot assert a compelling state interest for disregarding Plaintiffs' constitutional right to familial privacy, and Defendants' prohibition against parental notification and involvement in children's mental and emotional health decisions are not narrowly tailored.

176.   Defendants' violation of Plaintiffs' constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

177.   Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their fundamental rights.

## SEVENTH CAUSE OF ACTION
### (Violation of Plaintiffs' Right to Substantive Due Process under Art. I § 9 of the Florida Constitution)
### (By Plaintiffs individually and on behalf of A.P. Against all Defendants)

178.   Plaintiffs incorporate the allegations of paragraphs 1-87 by reference as if set forth in full.

179.   Art. I, § 9, Fla. Const., like the 14th Amendment to the U.S. Constitution, provides that "[n]o person shall be deprived of life, liberty or property without due process of law."

180.   Substantive due process under Art. I, § 9 of the Florida Constitution protects the "full panoply of individual rights" and in particular, the long-established fundamental right of parents to direct the upbringing of their children, from unwarranted encroachment by the government. *J.B. v. Fla. Dep't of Child. & Fam. Servs.*, 768 So. 2d 1060, 1063 (Fla. 2000).

181.   Defendant School Board violated Plaintiffs' fundamental constitutional right to make decisions concerning the care, custody, and control of their child in direct violation of Florida's Parents' Bill of Rights in failing to enact a policy to provide that parents are notified of information relating to the health and well-being of their minor children and in failing to train or supervise District staff in the requirements for parental notification under Florida law. As a direct result District staff act under a false belief that children such as A.P. are protected by

49

confidentiality laws so that their assertion of a discordant gender identity and request for social transition are to be concealed from their parents.

182.   Defendant Broskie violated Plaintiffs' fundamental constitutional right to make decisions concerning the care, custody, and control of their child, and in direct violation of Florida's Parents' Bill of Rights in failing to recommend that the Board enact a policy to provide that parents are notified of information relating to the health and well-being of their minor children and in failing to train or supervise District staff in the requirements for parental notification under the Constitution and Florida law. As a direct result of Broskie's failure to act, District staff act under a false belief that children such as A.P. are protected by confidentiality laws so that their assertion of a discordant gender identity and request for social transition are to be concealed from their parents.

183.   Defendants O'Brian and Schumacher violated Plaintiffs' fundamental constitutional right to make decisions concerning the care, custody, and control of their child and in direct violation of Florida's Parents' Bill of Rights by failing to train or supervise staff at Paterson Elementary School in the requirements for parental notification under the Constitution and Florida law. As a direct result, school staff believe that children such as A.P. are protected by confidentiality laws so that their assertion of a discordant gender identity and request for social transition are to be concealed from their parents. Said belief is also contrary to the District's

"Understanding Confidentiality" guideline which states that the law does not grant children a right of confidentiality from their parents.

184.   Defendants violated Plaintiffs' fundamental right to make decisions regarding the custody, care, and control of their daughter when Mrs. Washington initiated surreptitious weekly meetings with A.P., during which Mrs. Washington treated and addressed mental health issues, promoted and affirmed a discordant gender identity and social transition for A.P., and continued to meet with A.P. without the knowledge and consent of her parents until A.P. attempted suicide twice on school property.

185.   Defendants acted with deliberate indifference to Plaintiffs' fundamental parental rights by meeting with Plaintiffs' daughter and engaging in mental health interventions and counseling over a period of several months without notifying parents despite enactment of the Parents' Bill of Rights and published District guidelines which state, consistent with the law, that children do not possess rights of confidentiality vis-a-vis their parents.

186.   Defendants further acted with deliberate indifference to Plaintiffs' fundamental rights by failing to notify Plaintiffs that their daughter's mental health was deteriorating, including to the point that she became suicidal.

187.   Defendants further acted with deliberate indifference to Plaintiffs' fundamental rights by affirming the message that because of the family's sincerely

held religious beliefs A.P.'s parents would not act in her best interest in response to A.P.'s request that she be falsely referred to as a boy named "M" with male pronouns, so that they would not be informed, thereby creating discord and division between A.P. and her parents without even communicating with Mr. and Mrs. Perez.

188.   Defendants' deliberate indifference to Plaintiffs' rights resulted in deprivation of their fundamental constitutional rights.

189.   Plaintiffs' constitutionally protected right to direct the upbringing, education, religious training, and medical and mental health decision-making for their child was violated as the plainly obvious consequence of Defendants' actions in a) failing to implement parental notification procedures as required under Florida law; b) failing to train and supervise District staff regarding parental notification requirements; c) directing District staff that students are entitled to confidentiality when they raise issues related to gender identity; d)  meeting surreptitiously with A.P.; e) withholding mental health information regarding A.P. from Mr. and Mrs. Perez; f) promoting and facilitating social transition of a discordant gender identity for A.P. without her parents' knowledge; g) affirming disparaging messages regarding the family's sincerely held religious beliefs; h) failing to provide A.P. and other students critical information regarding crisis and suicide prevention resources, and taking or failing to take other actions of which Plaintiffs are presently unaware.

190.   Defendants cannot assert a compelling interest for disregarding Plaintiffs' long-established fundamental constitutional right to direct the upbringing, education, religious training, and medical and mental health care for their child, and Defendants' prohibition against parental notification is not narrowly tailored.

191.   By excluding Mr. and Mrs. Perez from discussions regarding their child's mental health issues, including questions regarding gender identity and the bullying she endured, failing to adopt policies and protocols regarding parental notification as required by law and thereby withholding critical information from parents, Defendants are making decisions that affect the mental health of their child in contravention of Plaintiffs' fundamental rights.

192.   Defendants have usurped Plaintiffs' responsibility for the health and well-being of their child and supplanted their authority for Plaintiffs' authority as fit parents to be the ultimate decision makers regarding the physical and mental health of their child, including decisions related to their child's confusion or distress about her sex or gender identity. Substituting their judgment for the judgment of A.P.'s parents and withholding from A.P. critical information regarding crisis intervention and suicide prevention led to A.P. attempting suicide and being subject to police intervention and involuntary commitment and confinement under the Baker Act.

193.   Defendants' deliberate indifference to Plaintiffs' rights resulted in deprivation of Mr. and Mrs. Perez's fundamental constitutional rights to direct the

medical and mental health decision-making for their child and A.P.'s fundamental right to have her medical and mental health care determined by her parents.

194.   Defendants cannot assert a compelling state interest for disregarding Plaintiffs' long-established fundamental constitutional right to make medical and mental health care decisions for their child and have such decisions made by parents, and Defendants' failure to implement parental notification and explicit prohibition against parental notification are not narrowly tailored.

195.   Defendants' violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

196.   Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their fundamental rights.

## EIGHTH CAUSE OF ACTION
### (Violation of the Parents' Bill of Rights, Florida Statutes, Chapter 1014)
### (By Plaintiffs individually Against All Defendants)

197.   Plaintiffs incorporate the allegations of paragraphs 1-87 by reference as if set forth in full.

198.   Effective July 1, 2021, The Parents' Bill of Rights reserves all parental rights, including the rights to direct the education, upbringing, moral or religious

training and to make health care decisions for their minor children to parents "without obstruction or interference from the state, any of its political subdivisions, any other governmental entity, or any other institution."+ Florida Statutes § 1014.04.

199.   Clay County School Board is a political subdivision of the state. Defendant Superintendent Broskie is the executive officer of the School Board, tasked with implementing and enforcing School District policies set out by the School Board, including policies implementing the provisions of the Parents' Bill of Rights.

200.   Defendants have obstructed and interfered with Plaintiffs' fundamental parental rights and infringed on the fundamental rights of Plaintiffs to direct the education, upbringing, and moral or religious training and to make health care decisions for their minor child by engaging in  mental health interventions with A.P. without the knowledge or consent of Mr. and Mrs. Perez, by withholding information regarding A.P.'s questions about her sex and gender identity, the resulting increase in bullying she was subjected to, and the deterioration of her mental health to the point of becoming suicidal. Defendants have furthermore interfered with said rights by communicating to A.P. the message that her family's sincerely held religious beliefs mean that A.P.'s parents will not act in her best interest and by otherwise interfering in the private realm of the Perez family.

201.   Defendant School Board failed to comply with the requirements of the Parents' Bill of Rights by failing to enact policies and procedures for parental notice and for notifying students of crisis and suicide prevention resources, which resulted in harm to Plaintiffs.

202.   Defendant Broskie failed to comply with the requirements of the Parents' Bill of Rights in failing to train and supervise District staff in student confidentiality and parental notification requirements under law.

203.   Defendants O'Brian, Schumacher and Washington were acting within the scope and course of their employment with knowledge of the requirements of the Parents' Bill of Rights when they withheld information from Mr. and Mrs. Perez that is required to be provided under the law, obstruct Mr. and Mrs. Perez's exercise of the right to direct the education and upbringing of their daughter, interfered with medical and mental health decision making and obstructed the free exercise of the family's religion.

204.   Defendants cannot assert a compelling interest for violating Florida law, disregarding Plaintiffs' fundamental right to direct the upbringing, care, and education of their child, and Defendant's prohibitions against parental notification are not narrowly tailored.

205.   Defendants' violation of the Parents' Bill of Rights has caused and is continuing to cause harm to Plaintiffs.

## NINTH CAUSE OF ACTION
### (Violation of Florida's Religious Freedom Restoration Act, Florida Stat. §761.03)
### (By Plaintiffs individually and on behalf of A.P. Against Defendants Washington, O'Brian and Schumacher)

206.   Plaintiffs incorporate the allegations of paragraphs 1-87 by reference as if set forth in full.

207.   Florida's Religious Freedom Restoration Act ("RFRA"), Fla. Stat. § 761.03 (1), provides:

> The government shall not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, except that government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person:
> (a) Is in furtherance of a compelling governmental interest; and
> (b) Is the least restrictive means of furthering that compelling governmental interest.

208.   Plaintiffs have sincerely held religious beliefs that human beings are created male or female and that the natural created order regarding human sexuality cannot be changed regardless of individual feelings, beliefs, or discomfort with one's identity, and biological reality, as either male or female.

209.   Plaintiffs have sincerely held religious beliefs that all people are to be treated with respect and compassion, and that respect and compassion includes refraining from misrepresenting an individual's natural created identity, and biological reality, as either a male or a female.

210.   Plaintiffs have sincerely held religious beliefs that individuals are to speak the truth, including speaking the truth regarding matters of sexual identity as a male and female.

211.   Defendants' actions in excluding Mr. and Mrs. Perez from decision-making regarding their daughter because of their Catholic Christian faith, target the Plaintiffs' religious beliefs regarding human nature, the created order, gender, sexuality, ethics, and morality which constitute central components of their sincerely held religious beliefs.

212.   Defendants were aware of the family's sincerely held religious beliefs and that such beliefs would conflict with untruthfully calling A.P. a male named "M" and using male pronouns. Defendants deliberately and recklessly used that knowledge to disparage the family's sincerely held religious beliefs to the detriment of A.P.'s mental health and in derogation of Plaintiffs' fundamental rights.

213.   Defendants' actions have caused a direct and immediate conflict with Plaintiffs' religious beliefs by prohibiting them from being informed of the mental health issues A.P. has been experiencing and seeking counseling and guidance for A.P. in a manner that is consistent with the beliefs held by Mr. and Mrs. Perez and A.P.

214.   Defendants' actions have impermissibly burdened Plaintiffs' sincerely held religious beliefs by nurturing seeds of doubt and distrust in A.P.'s mind

regarding the family's beliefs and whether adherence to them is beneficial and healthy. A.P. was being compelled to choose between her religious beliefs and the idea that she was a boy named "M," a conflict so significant that it led to her attempting suicide twice while under the supervision of School District personnel.

215.   Defendants' actions expressly constitute a substantial burden on sincerely held religious beliefs that are contrary to Defendants' viewpoint regarding gender identity and transition to a discordant gender identity.

216.   No compelling state interest justifies the burdens Defendants imposed upon Plaintiffs' rights to the free exercise of religion.

217.   Defendants' actions are not the least restrictive means to accomplish any permissible government purpose Defendants seek to serve.

218.   Defendants' violation of Plaintiffs' rights under Florida's RFRA has caused, is causing, and will continue to cause Plaintiffs to suffer undue and actual hardships. Said hardships include exacerbation of A.P.'s mental health concerns to the point of her attempting suicide and now having to seek therapeutic intervention to address the long-term effects of Defendants' actions, diminution of the parent-child relationship, invasion of familial privacy, and physical and emotional injuries to all Plaintiffs.

## TENTH CAUSE OF ACTION
**(Violation of Plaintiffs' Right to Choose Medical Treatment for their Children Under Florida Statutes § 743.07)**
**(By Plaintiffs Individually Against all Defendants)**

219.   Plaintiffs incorporate the allegations of paragraphs 1-87 by reference as if set forth in full.

220.   Under Fla. Stat. § 743.07 parents are responsible for selecting the manner of medical/mental health treatment received by their children until the children reach age 18. That fundamental right cannot be diminished or eliminated by state, city, or, in this case, school board actors without a compelling state interest. *Vazzo v. City of Tampa*, 415 F.Supp.3d 1087, 1098 (M.D. Fla. 2019).

221.   By excluding Mr. and Mrs. Perez from discussions regarding their daughter's mental health concerns, including assertion of a discordant gender identity and other issues that rose to the level of attempting suicide, Defendants are making, and have made, decisions that affect the mental health of their child in contravention of Plaintiffs' fundamental rights.

222.   Defendants have usurped Plaintiffs' responsibility for the health and well-being of their child and supplanted their authority for Plaintiffs'  authority as fit parents to be the ultimate decision makers regarding the physical and mental health of their child, including decisions related to their child's confusion or distress about her sex or gender identity.

223.   Affirming a child's discordant gender identity involves significant mental health and medical decisions affecting the well-being of children with potentially life-long consequences. Therefore, by excluding parents from

discussions regarding their child's assertion of a discordant gender identity, Defendants are making decisions that affect the mental health of their child in contravention of Plaintiffs' rights under Fla. Stat. § 743.07.

224. Plaintiffs' right to direct the medical and mental health decision-making for their children was violated as the plainly obvious consequence of Defendants' actions by a) failing to implement parental notification procedures as required under Florida law; b) failing to train and supervise District staff regarding parental notification requirements; c) directing District staff that students are entitled to confidentiality when they raise issues related to gender identity; d) meeting surreptitiously with A.P.; e) withholding mental health information regarding A.P. from Mr. and Mrs. Perez; f) promoting and facilitating social transition of a discordant gender identity for A.P. without her parents' knowledge; g) affirming disparaging messages regarding the family's sincerely held religious beliefs; h) failing to provide A.P. and other students critical information regarding crisis and suicide prevention resources, and taking or failing to take other actions of which Plaintiffs are presently unaware.

225. Defendants cannot assert a compelling interest for disregarding Plaintiffs' long-established right to make medical and mental health decisions for their child, and Defendants' explicit prohibition against parental notification is not narrowly tailored.

226.   Defendants' violation of Plaintiffs' fundamental rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

227.   Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their fundamental rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

1. A declaration that Defendants have violated Plaintiffs' fundamental rights as parents, under the United States and Florida constitutions, the Florida Parents' Bill of Rights and other statutes to the extent that they *inter alia*: a) failed to adopt and implement parental notification policies and procedures as required under Florida law; b) failed to train and supervise District staff regarding parental notification requirements; c) directed District staff that students are entitled to confidentiality when they raise issues related to gender identity; d) met and provided mental health interventions surreptitiously with A.P.; e) withheld mental health information regarding A.P. from Mr. and Mrs. Perez; f) promoted and facilitated social transition of a discordant gender identity for A.P. without her parents' knowledge and consent; g) affirmed disparaging messages regarding the family's sincerely held religious beliefs; h) failed to provide A.P. and other students critical information regarding crisis and suicide prevention resources.

2.     A permanent injunction prohibiting Defendants, their employees, agents and third parties acting at their direction from: training staff to exclude parents from discussions, meetings, and other interventions with the parents' children related to the children's assertion of a discordant gender identity; failing to notify parents when their children express the belief that they have a discordant gender identity and want to take actions to affirm that identify.

3.     A permanent injunction prohibiting Defendants, their employees, agents and third parties acting at their direction from instructing, directing, or encouraging staff to participate in programs, initiatives, activities, discussions, counseling or mental health treatment in which staff promise children that their parents will not be told about children's disclosures related to a belief that they have a discordant gender identity.

4.     For nominal damages;

5.     For compensatory damages according to proof for the injuries caused by Defendants' acts and omissions, including a) emotional distress, b) ongoing emotional and psychological damage to A.P. requiring therapeutic interventions to rebuild the trust between her and her parents which was damaged by the actions of Defendants, c) ongoing emotional and psychological damage to the family dynamic, requiring therapeutic interventions to rebuild trust between parents and child which was damaged by the actions of Defendants, d) ongoing damage for loss of

educational opportunities due to the inability for A.P. to continue in person learning within Clay County public schools, and other injuries as proven at trial;

6.    For attorneys' fees and costs under 42 U.S.C. § 1988;

7.    For such other relief as the Court deems proper.

Dated: March 11, 2022.

/s/Mary E. McAlister
Mary E. McAlister (FL Bar No. 0010168)
CHILD & PARENTAL RIGHTS CAMPAIGN, INC.
P.O. Box 637
Monroe, VA 24574
770.448.4525
mmcalister@childparentrights.org
Vernadette R. Broyles (GA Bar No. 593026)*
CHILD & PARENTAL RIGHTS CAMPAIGN, INC.
5805 State Bridge Rd., Suite G310
Johns Creek, GA 30097
770.448.4525
vbroyles@childparentrights.org
*pro hac vice application pending
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I certify that on this 11th day of March 2022, a true and correct copy of the foregoing was electronically filed in the U.S. District Court, Middle District of Florida, using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ *Mary E. McAlister*
MARY E. MCALISTER