IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WENDELL PEREZ, individually
and as next friend of A.P., a minor
MARIA PEREZ, individually, and
as next friend of A.P., a minor,

        Plaintiffs

v.                                  Case No.: 3:22-CV-83-TJC-JBT

DAVID BROSKIE, individually,
and in his official capacity, as
Superintendent of Clay County
District Schools, *et al*.,

        Defendants.

_____/

## DEFENDANTS' DISPOSITIVE
## MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Defendants, David Broskie, John O'Brian, Courtney Schumacher, Destiney Washington, in their individual and official capacities, and the Clay County School Board ("Board") (collectively, "Defendants"), hereby file their Motion to Dismiss the First Amended Complaint ("Complaint") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted, and in support thereof state:

## I.    INTRODUCTION AND BACKGROUND

Plaintiffs have brought a ten-count complaint on behalf of themselves and

their minor daughter, A.P.,[1] against the individually named Defendants for their official conduct committed within the course and scope of their employment with the Board, and the Board itself. The Complaint centers on purported actions taken by these Defendants regarding A.P.'s gender identity, and the alleged lack of notification Plaintiffs received from Defendants regarding it.

## II.   STATEMENT OF THE ALLEGED FACTS[2]

In the Fall of 2021, minor Plaintiff A.P. approached school counselor Washington and asked to be called "M" and be referred to as a "he." [DE 16, ¶¶9, 14, 56]. Plaintiffs allege Washington met with A.P. repeatedly, referred to her as a boy, provided her "counseling," and publicly disclosed the apparent gender identity issue which resulted in bullying.  [DE 16, ¶¶57, 61-62]. A.P. attempted suicide on January 4 and 5, 2021, which resulted in a parent conference where Plaintiffs learned their child suffered from a gender identity issue that purportedly caused her suicide attempt. [DE 16, ¶¶41, 43, 47, 49].  Schumacher informed Plaintiffs at this meeting that confidentiality issues precluded notifying Plaintiffs that their child asked to be

---

[1] Defendants refer to A.P. using female pronouns and as a female, in conformity with the Complaint.

[2] Many of Plaintiffs' allegations are materially false, including, but not limited to, the alleged failure to inform Plaintiffs about A.P.'s suicidal ideation, claims about weekly mental health counseling sessions, public disclosure of A.P.'s desire to be called a male name, and transgender advocacy.  However, as they must, Defendants presume the allegations contained in the Complaint are true for the purposes of this motion only.

referred to as a boy's name.  [DE 16, ¶¶35].  Plaintiffs informed Defendants that they held religious beliefs and did not agree to have A.P. referred to as a boy. [DE 16, ¶¶47]. Plaintiffs allege they and A.P. suffered damages.  [DE 16, ¶¶86-87].

Plaintiff's nearly non-existent allegations against Broskie are essentially limited to his position and authority at the time of the events complained of, that he failed to supervise and train staff under Florida and other laws, and that he failed to enact procedures or directives to implement Florida Statutes and other laws.  [DE 16, ¶¶10, 11, 19, 83]. Beyond these, Plaintiffs' allegations against him are purely legal conclusions. *See* Counts 1 through 10. Plaintiff's bare allegations against O'Brian are essentially limited to his position and authority at the time of the events complained of, that he met with A.P.'s parents, and that he failed to comply with Florida Statutes and other laws.  [DE 16, ¶¶12, 22, 48, 83]. Beyond these, Plaintiffs' allegations against him are purely legal conclusions. *See* Counts 1 through 10. Plaintiff's bare allegations against Schumacher are essentially limited to her position and authority at the time of the events complained of, that she met with A.P.'s parents, that she had knowledge of the child's alleged meetings with Washington, that she had a mistaken belief as to confidentiality requirements, and that she failed to comply with Florida Statutes and other laws.  [DE 16, ¶¶13, 22, 33, 79, 83]. Beyond these, Plaintiffs' allegations against her are purely legal conclusions. *See* Counts 1 through 10.

### III.   MEMORANDUM OF LAW

#### A.    Standard of Review

The Court is well-versed on the motion to dismiss standard. It is sufficient to state that in order to overcome a motion to dismiss, a plaintiff must allege sufficient facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Granting a motion to dismiss is appropriate if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. *Hishon v. King & Spalding*, 467 U.S. 69 (1984). The allegations of the complaint must be deemed true and construed in a light most favorable to the plaintiff. *Shands Teaching Hosp. and Clinics, Inc. v. Beech Street Corp.*, 208 F. 3d 1308, 1310 (11th Cir. 2000). Where a plaintiff is unable to state a cause of action and further leave to amend the complaint is futile, claims should be dismissed with prejudice. *See Muhammad v. JPMorgan Chase Bank, NA*, 567 Fed. App'x 851, 853–54 (11th Cir. 2014).

#### B.    The Complaint Is an Impermissible Shotgun Pleading

The Complaint should be dismissed because it remains a quintessential "shotgun pleading," in violation of Rules 8 and 10(b) of the Federal Rules. "Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as "shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d. 1313, 1320 (11th Cir. 2015). The Eleventh Circuit has

4

identified four rough categories of shotgun pleadings: (1) a complaint containing multiple counts adopting the allegations of all preceding counts; (2) a complaint replete with conclusory, vague, and immaterial facts not connected to any particular cause of action; (3) a complaint that does not separate into a different count each cause of action or claim for relief; and (4) a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions. *Id.* at 1321–23. Although Plaintiff rectified the previous deficiency of incorporating the allegations of all preceding counts, the Complaint remains deficient, and should be dismissed.

Each count contains individual and official capacity claims against individually named defendants, and some contain claims against a newly added defendant, the Clay County School Board ("Board"). Each Count contains *nine separate claims* or more, and in three counts by all three plaintiffs against all five defendants contains *nineteen separate claims*. *See* Counts 3, 6, and 7. In all counts, regardless of the defendants against whom the claim is made, Plaintiff incorporates 87 paragraphs of alleged facts. "[I]t is exceedingly difficult, if not impossible to know which allegations pertain to that count (according to its label), to separate the wheat from the chaff." *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1045 n.39 (11th Cir. 2014). This is particularly prejudicial because the individual capacity defendants are entitled to assert qualified immunity on the federal claims. Plaintiffs' Prayer for

Relief seeks uniform damages without regard to each claim, and therefore fails to comply with Rule 8 because the damages available across Plaintiffs' ten claims, if any, differ significantly.

### C.    The Official Capacity Claims Are Improper and Duplicative

The official capacity claims against Superintendent Broskie are claims against the entity of which he is an agent. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). As a duly elected constitutional officer, Plaintiffs have thus sued the "Office of the Superintendent." In Florida, the School Board, not the Office of the Superintendent, is the government entity with the power to contract, to sue, and be sued. §§1001.41(4); 1012.22(1), Fla. Stat. The Board, not the superintendent is the employer of school employees. *See, e.g.*, *Forehand v. Sch. Bd. of Gulf Cnty.*, 600 So. 2d 1187, 1188 (Fla. 1st DCA 1992). Accordingly, the Clay County School Board, and not the Superintendent in his official capacity, is the proper legal party. Because the Board has now been added as a party defendant, the official capacity claims against the other individual capacity defendants are unnecessarily duplicative, as they all constitute claims against their employer, the Board. *C.P. v. Collier Cnty.*, 145 F. Supp. 3d 1085, 1090 (M.D. Fla. 2015) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (Section 1983 claims); *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (Florida claims)). Each official capacity claim should be dismissed with prejudice because the Board itself is now a party.

### D.  Plaintiff Failed to State a Federal Law Claim

In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that he was deprived of a right secured by the Constitution or federal law; and (2) that the deprivation occurred under color of state law. *Am. Mfrs. Mut. Ins. v. Sullivan*, 526 U.S. 40, 49 (1999). Plaintiffs have not alleged a violation of a cognizable federal right under the alleged facts.  Plaintiffs cannot use §1983 to bring an action pursuant to an alleged violation of the Florida Constitution. *Ela v. Orange Cty. Sheriff's Office*, No. 6:13-cv-491-ORL-28, 2014 WL 325697, at 6 (M.D. Fla. 2014) (*citing Capogrosso v. Supreme Court of New Jersey*, 588 F.3d 180, 186 (3rd Cir. 2009); *Baker v. MCollan*, 443 U.S. 137, 144 n.3 (1979).  Similarly, even a clearly established violation of state law cannot put an official on notice that his conduct would also violate the constitution because "section 1983 protects only against violations of federally protected rights." *Echols v. Lawton*, 913 F.3d 1313, 1324 (11th Cir. 2019).  Accordingly, each of Plaintiffs' allegations of a violation of state law in support of their federal claims are inconsequential.  For the reasons more fully set forth below, the federal claims should be dismissed with prejudice.

### i.  Counts I–III – Substantive Due Process

#### a.  Plaintiffs Have Not Identified a Violation of a Cognizable Right

Counts I–III fail to state a claim for a violation of the substantive Due Process

Clause of the Fourteenth Amendment. They allege violations of Plaintiffs' fundamental rights to: (1) direct the upbringing of their child; (2) make medical decisions for their child; and (3) familial privacy. *See* Counts I-III. Assuming these are fundamental rights, Plaintiffs have not cleared the high bar necessary to state a due process violation, as "conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Maddox v. Stephens*, 727 F.3d 1109, 1119 (11th Cir. 2013) (quoting *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003)). Plaintiffs' already high burden faces an additional hurdle, as "in §1983 cases asserting violations of parental liberty interests, 'we are venturing into the murky area of unenumerated constitutional rights.'" *Id.* at 1120 (quoting *Robertson v. Hecksel*, 420 F.3d 1254, 1256 (11th Cir. 2005)).

Against this overlay, Counts I–III should be dismissed because Plaintiffs have not alleged a cognizable right under the alleged facts. Plaintiffs' core contention is they had the right to be informed of alleged discussions between Washington and A.P. regarding her gender identity, and that by failing to notify them and having the conversation without parental consent, Defendants violated their fundamental rights. However, there is no protected constitutional right to receive such notification that these discussions were occurring, or for Defendants to obtain consent from Plaintiffs to engage in them, presuming they even occurred, which is disputed.

Cases recognizing a viable allegation of interference with parental liberty interest required the state to either require or prohibit some activity. The cases cited by Plaintiffs to support their allegations, in fact, support Defendants' argument. *See Troxel v. Granville*, 530 U.S. 57, 67 (2000); *Parham v. J.R.*, 442 U.S. 584, 600 (1979); *Prince v. Massachusetts*, 321 U.S. 158, 169–70 (1944). The common thread among these cases is they all involved actions by the state that either required or prohibited some activity. *See Meyer v. City of East Cleveland*, 431 U.S. 494, 498–99 (1977). This is not present here.

Plaintiffs do not allege A.P. was forced to meet with Washington or others to discuss gender identity issues. Instead, they allege the opposite: A.P. initiated discussion on the issue and "asked Mrs. Washington if she supported transgender people" and A.P. asked her to call her "M" and "he." [D.E. 16 at ¶¶ 55–56]. Plaintiffs allege Washington merely responded to A.P.'s inquiries and there are no allegations A.P. was forced or coerced to continue these meetings or to conceal them from her parents, nor are there any allegations that any employee required or prohibited A.P.'s parents to perform or abstain from performing any act.  Similarly flawed is the claim regarding the alleged failure to notify about A.P.'s attempted suicide(s).

In *Wyke v. Polk Cnty. Sch. Bd.*, 129 F.3d 560 (11th Cir. 1997), the Eleventh Circuit found a school board had no affirmative constitutional duty to protect a student from committing suicide. *Id.* at 569–70. The court noted an affirmative duty

to act only "arises from limitations the state places upon an individual's ability to act on his own behalf, 'not from the [s]tate's knowledge of the individual's predicament.'" *Id.* at 570 (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)). Despite the school's assurances they would "take care of" the student, upon which a third party relied, the court declined to find a constitutional violation. *Id.* The allegations here of the school's after-the-fact knowledge of an alleged attempted suicide do not even approach that level of potential culpability. There is no constitutional duty to inform a parent of a child's suicide attempt. *Id.* Nothing compels a different result here. The parents cannot recast A.P.'s decisions to speak with a counselor, request to be called by a male name and pronouns, and not tell her parents as the school's compulsion or prohibition. Moreover, there is clearly no constitutional obligation to inform the parents of the child's request to be called by another name.

Contrast *Wyke* with *Arnold v. Bd. of Educ. of Escambia Cnty.*, 880 F.2d 305 (11th Cir. 1989), *overruled on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163 (1993). In *Arnold*, school officials coerced a student into having an abortion. *Id.* at 310. The Eleventh Circuit found "a parent's constitutional right to direct the upbringing of a minor is violated when the minor is coerced to refrain from discussing with the parent an intimate decision such as whether to obtain an abortion; a decision which touches

fundamental values and religious beliefs parents wish to instill in their children." *Id.* at 312. The issue is the existence, *vel non*, of coercion, however none is alleged or existed here.  Plaintiff's Due Process Clause claims fail.

Absent coercion, Plaintiffs cannot identify any authority establishing Defendants were under a constitutional duty to notify them of the "counseling"[3] or that required parental consent to acquiesce to A.P.'s request to be addressed by a male name, thus no constitutional infringement. "[A]bsent any authority, [the court should] heed the Supreme Court's caution against expanding the concept of substantive due process," *Wyke*, 129 F.3d at 570; *see also Doe v. Irwin*, 615 F.2d 1162, (6th Cir. 1980) (finding no due process violation when school failed to inform parents that student was participating in voluntary condom-distribution program). At most, Plaintiffs allege Washington advocated for transgenderism and Broskie, O'Brian, and Schumacher failed to stop it.  Moreover, other than the conclusory boilerplate, the factual allegations against Broskie, O'Brian, and Schumacher are completely devoid of any conduct that implicated them in a purported constitutional violation.

---

[3] Plaintiffs knew or should have known through the exercise of due diligence that no mental health counseling, therapy, or treatment was provided, and the use of the word "counseling" in that context is either knowingly untrue, or reckless.

## b. The Alleged Conduct Is Insufficient to Establish Substantive Due Process Violations

Even assuming Plaintiffs have a fundamental right to be informed as they claim, Counts I–III (Due Process) should also be dismissed because the Eleventh Circuit has been "explicit in stating that 'deliberate indifference' is insufficient to constitute a due-process violation in a non-custodial setting." *Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1377 (11th Cir. 2002). A school is not a custodial setting. *Wyck*, 129 F.3d at 569; *K.W. v. Lee Cnty. Sch. Bd.*, 67 F. Supp. 3d 1330, 1337 (M.D. Fla. 2014). Plaintiffs' claims of deliberate indifference do not rise to the level of a due process violation, even if the enumerated rights existed, therefore their claims also fail because they have alleged an incorrect legal standard.

By alleging deliberate indifference, Plaintiffs seek to avoid their weighty burden: "[c]onduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience-shocking in a constitutional sense." *Davis v. Carter*, 555 F.3d 979, 982 (11th Cir. 2009). Even conduct that would amount to an intentional tort under state law does not, without more, meet this bar. *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1048 (11th Cir. 2002). "There are very few cases [in the school setting] in the Eleventh Circuit in which the circumstances actually give rise to a constitutional violation," and in the rare instances where this has been found, "the Eleventh Circuit [has] made clear that...claims of excessive corporal punishment shaped the outcome." *K.W.*, 67 F.

Supp. 3d at 1337; *Kirkland v. Greene Cnty. Bd. of Educ.*, 347 F.3d 903, 904–05 (11th Cir. 2003) (student struck with metal cane as punishment); *Neal ex rel. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069, 1076 (11th Cir. 2000) (student struck with metal lock as punishment). On the other hand, the Eleventh Circuit has declined to find conscious-shocking behavior, even in circumstances resulting in the death of a student. *See Davis*, 555 F.3d at 984 (coach allegedly subjected student to intense workout, failed to provide enough water and ignored student's collapse); *Nix*, 311 F.3d at 1378 (student died after touching live wire due to teacher's alleged arbitrary and deliberate indifference).

In *Wyke,* a student attempted to commit suicide multiple times at school before finally succeeding at home. 129 F.3d at 564–65. The Eleventh Circuit found no viable claims under the substantive due process clause, because the student: (1) had no custodial relationship with his school; (2) school officials did not assume an affirmative due process duty to prevent the student from committing suicide after he attempted to do so at school; and (3) school officials had no independent constitutional duty to inform the student's mother of her son's suicide attempts. *Id.* at 569–70. This Court too has declined to find conscience-shocking behavior, even when school officials allegedly intentionally failed to provide immediate medical assistance to an eight-year-old student suffering from a serious medical injury. *See K.W.*, 67 F. Supp. 3d at 1338–39.

### c. Plaintiffs Have Not Alleged a Sufficient Custom, Policy, or Practice to Established Governmental Liability

Counts I–III (Due Process) official capacity claims fail because Plaintiff has not alleged their purported deprivation occurred pursuant to a qualifying governmental custom or policy. *Monell*, 436 U.S. at 693–94.[4] It is well settled that a plaintiff cannot rely on *respondeat superior* theory to hold a governmental entity or officials named in their official capacity liable for individual employee's actions. *Monell*, 436 U.S. at 776. In the absence of an official policy or custom, official policy or custom may only be made by officials "whose acts or edicts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694. None of the individually named employees, are responsible for establishing Board policies and procedures.  Even if accurately alleged, Assistant Principal Schumacher's comment about confidentiality and the application to this single student is insufficient as a matter of law to establish an actionable custom, policy, or practice.  This is particularly true where the official Board policy provides no confidentiality for adolescents in therapy.  [DE 16-1].

Plaintiffs point to no policy promulgated by the School Board, nor do they allege any statement, edict, pattern, or practice of the School Board. Instead, they appear to rely solely on alleged statements by Schumacher, which they contend

---

[4] Moreover, Plaintiff generally alleges a failure to train, but has made no factual allegations of the requisite facts sufficient to establish the requisite deliberate indifference. *E.g. Connick v. Thompson,* 563 U.S. 51, 61 (2011). "A municipality's culpability is at its most tenuous where a claim turns on failure to train."  *Id.* at 59.

constitutes a misperception of confidentiality requirements. Neither she nor any of the other named defendants are final policy decision makers sufficient for *Monell* purposes. *Johnson v. Dade Cty. Pub. Sch.*, No. 91-2952-CIV-DAVIS, 1992 WL 466902 at 4 (S.D. Fla. 1992) ("the school board, not the superintendent, clearly has final decision making authority. Therefore, the Plaintiffs' efforts to prove 'custom or policy' [through him is] unavailing"). The School Board, not the Office of the Superintendent, is the entity statutorily tasked with the establishment, organization, and operation of schools, and the standards of ethical conduct for administrative personnel and school officers and adoption of policies. *See* §1001.42, Fla. Stat. Plaintiffs' failure to point to any actions taken *by the School Board* to establish the requisite custom, policy or practice of unconditional  withholding information about students' gender identity issues is fatal to their claims, and their efforts to do so through an Assistant Principal are unpersuasive.

### d. The Individual Capacity Defendants Are Entitled to Qualified Immunity

Assuming without conceding a constitutional deprivation, the individual capacity defendants are entitled to qualified immunity because there was no violation of a clearly established right. *Pearson v. Callahan*, 555 U.S. 223, 237 (2009) (because qualified immunity is "an immunity from suit rather than a mere defense to liability," it is particularly appropriate to raise in a motion to dismiss). Courts have found a school employee's conduct to be constitutional under

circumstances much more egregious than alleged here. There is no authority placing Defendants on notice that their alleged conduct, even if true, violated the Constitution. They are, therefore, immune from suit.

Qualified immunity is appropriate unless their "supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice what the defendant official was doing would be clearly unlawful given the circumstances." *Pace v. Capobianco*, 283 F.3d 1275, 1282 (11th Cir. 2002). It protects all but "obviously wrong" actions that, "in the light of pre-existing law... only a plainly incompetent [employee] or one who was knowingly violating the law would have done such a thing;" otherwise, "the government actor has immunity from suit." *Id.* Qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Government officials acting in their discretionary authority when the alleged wrong occurred are entitled to qualified immunity. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). Defendants were indisputably acting within their discretionary authority. *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004) (finding official acts within discretionary authority when they "perform a legitimate job-related function"); *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991).

They were each acting within the course and scope of their employment.  [DE 16, pp. 10, 12-14].

Once Defendant's discretionary authority is established, the *burden shifts to Plaintiffs* to show that they: (1) have alleged a violation of a constitutional right; and (2) that the right was clearly established. *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). Plaintiffs have not alleged violations of cognizable constructional rights under these facts, and clearly cannot show any asserted right was clearly established. Indeed, *Wyke* alone forecloses any argument that the right to parental notification is so clearly established as to strip Defendants of their immunity. Finally, Defendants' actions are not so egregious, such that the unlawfulness of the conduct was readily apparent to show that a constitutional right was clearly violated. *See Loftus v. Clark-Moore*, 690 F.3d 1200, 1205 (11th Cir. 2012).  Plaintiffs' individual liability claims are particularly deficient against Broskie, O'Brian, and Schumacher because they allege no personal involvement in the purported transgender advocacy.  Their alleged after-the-fact involvement is clearly insufficient.  The individual capacity defendants should each be dismissed with prejudice.

### ii.   Count IV – Free Exercise of Religion

#### a. The Alleged Conduct Is Insufficient to Establish a Free Exercise Clause Claim

Defendants have not infringed on any of Plaintiffs' free exercise rights,

because no alleged conduct adversely impacted Plaintiffs' ability to freely exercise their religion.  "The Free Exercise Clauses require a plaintiff to allege a religious belief and a burden that has been placed by the government on the exercise of that belief. To plead a claim for relief under the Free Exercise Clauses of the U.S. and Florida Constitutions, a plaintiff must allege that the government has impermissibly burdened one of its sincerely held religious beliefs. This belief must be rooted in religion, since personal preferences and secular beliefs do not warrant the protection of the Free Exercise Clause. . . . [T]his pleading requirement [has] two components: (1) the plaintiff holds a belief, not a preference, that is sincerely held and religious in nature, not merely secular; and (2) the law at issue in some way impacts the plaintiff's ability to either hold that belief or act pursuant to that belief." *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n*, 942 F.3d 1215, 1246 (11th Cir. 2019) (internal citations and quotations omitted). Defendants presume without conceding Plaintiffs have sincerely held religious beliefs regarding gender identity.

However, Plaintiffs have not, and indeed cannot, allege that Defendants' alleged conduct infringed on their ability to hold or express their beliefs regarding gender identity and/or act pursuant to those beliefs. The Complaint claims Defendants excluded them from information regarding A.P. which "nurture[ed] seeds of doubt and distrust" regarding the family's beliefs. [D.E. 16 at ¶ 145], but there are no allegations Defendants prohibited A.P. or Plaintiffs from expressing,

exercising, practicing, or speaking about their beliefs. Even assuming Defendants withheld information from Plaintiffs, which is disputed, this did not infringe on Plaintiffs' right to freely exercise their religion. Further, A.P. initiated the conversation about being referred to as a male, and as such, Washington's acquiescence cannot be characterized as governmental infringement, particularly so as applied to A.P. *See* [DE 16, ¶56]; *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1259 (11th Cir. 2012) ("[C]onclusory allegations that [government action] interferes with Plaintiffs' free exercise of religion are not sufficient to survive a motion to dismiss."). Nothing in Plaintiffs' Complaint can be fairly read as an unconstitutional burden on their ability to freely exercise their faith.

> **b. Plaintiffs Have Not Alleged a Sufficient Custom, Policy, or Practice to Established Governmental Liability and the Individual Defendants Are Entitled to Qualified Immunity**

Defendants incorporate herein the legal standards set forth in Sections III(D)(i)(c) and III(D)(i)(d) as if fully set forth herein. For the same reasons Plaintiffs' Due Process Claims fail, so too does their First Amendment Claim.

**E.     ARGUMENT – Florida Claims**

**i.     Counts V–VII – Florida Constitution**

Plaintiffs' claims for damages under the Florida Constitution (Counts V–VII) fail for the same reason the identical federal claims fail and also because monetary damages are unavailable as a matter of law. *Holcy v. Flagler Cnty. Sheriff*, 3:05-cv-

1324-J-32HTS, 2007 WL 2669219, at *6 (M.D. Fla. Sept. 6, 2007) ("Florida constitutional claims do not support claims for damages absent a separate enabling statute . . . ."); *see also Smith v. Bell*, No. 06–60750 CIV, 2008 WL 868253, at *9 (S.D. Fla. Mar. 31, 2008) ("The Florida courts have generally declined to recognize damage actions for violations of the Florida Constitution itself."). These claims are also duplicative of the federal claims and serve no purpose other than to unnecessarily multiply this litigation.

The constitutional provisions in question do not contain any enabling statutes. Thus no claim for monetary damages can be maintained for: (1) Count V, *see* §761.03, Fla. Stat. (no cause of action for monetary damages for free exercise clause of Florida Constitution); (2) Count VI, *see Tucker v. Resha*, 634 So. 2d 756, 759 (Fla. 1st DCA 1994) (no cause of action for monetary damages for privacy provision of Florida Constitution); *see also Gilbert v. Sears, Roebuck & Co.*, 899 F. Supp. 597, 600 (M.D. Fla. 1995); and (3) Count VII. *See Garcia v. Reyes*, 697 So. 2d 549, 551 (Fla. 4th DCA 1997) (no cause of action for monetary damages for due process provision of Florida Constitution); *see also Youngblood v. Fla. Dep't of Health*, 224 F. App'x 909, 912–13 & n.4 (11th Cir. 2007) (finding district court correctly dismissed plaintiff's claims under the Florida Constitution, including claims for the "free exercise of religion, equal protection, due process, [and] privacy" to the extent they sought monetary damages). Plaintiff's monetary damages claims pursuant to

the Florida Constitution should be dismissed with prejudice. The non-monetary damages claims pursuant to the Florida Constitution are unnecessarily duplicative of the federal claims.

### ii.      Counts VIII–X – Florida Statutory Claims

Plaintiffs' claims predicated on Florida statutory law fail because these statutes either do not create a private right of action (Counts VIII and X), or do not create a private right of action for monetary damages (Count IX). Whether a violation of a statute serves as the basis for a private cause of action is a question of legislative intent and courts look to the plain meaning of the statute for this intent. *Aramark Uniform & Career Apparel, Inc. v. Easton*, 894 So. 2d 20, 23 (Fla. 2004); *Murthy v. N. Sinha Corp.*, 644 So.2d 983 (Fla. 1994) (holding Ch. 489 did not create private cause of action because "there is no evidence in the language or the legislative history of chapter 489 of a legislative intent to create a private remedy") (citing *Parker v. State,* 406 So.2d 1089, 1092 (Fla.1981) ("[L]egislative intent is the pole star by which we must be guided in interpreting the provisions of a law")). The statutes Plaintiffs rely on do not create private causes of action.

First, as to Count VIII, chapter 1014, Florida Statutes ("the Parents' Bill of Rights"), nothing in the statutory language suggests the Legislature intended to permit parents a private cause of action under these statutes. In fact, the Parents' Bill of Rights explicitly provides that "[a]n employee of the state, any of its political

subdivisions, or any other governmental entity who encourages or coerces, or attempts to encourage or coerce, a minor child to withhold information from his or her parent," then that employee "may be subject to disciplinary action." §1014.04(3), Fla. Stat. However, nothing prohibits a Board employee from acting within the reasonable prudent scope of his or her authority. §1014.04(c), Fla. Stat. No private right of action is included.[5] *See Gunn v. Robles*, 130 So. 463, 463 (Fla. 1930) ("Where a particular remedy is conferred by statute, it can be invoked only to the extent and manner prescribed.").  It's been well settled for nearly 80 years that where a statute enumerates factors which it is to operate, it is to be construed as excluding from its operation those that are not mentioned.  *Ideal Farms Drainage Dist. V. Certain Lands*, 19 So. 2d 234, 239 (Fla. 1944).  Here, the Legislature could have, but did not, include a private right of action.  Instead, it limited relief to disciplinary action against an employee and criminal sanctions against health care providers who violate the Parents Bill of Rights.  Count VIII should be dismissed with prejudice.

Second, as to Count X, section 743.07, Florida Statutes, this statute merely removes the disability of nonage to those over 18, excluding consumption of alcohol.

---

[5] This is further bolstered by chapter 1014's imposition of criminal liability for some violations of the Parents' Bill of Rights, yet declining to provide a civil remedy. *See* §1014.06(5) (imposing criminal liability for health care practitioners who violate this section); *see also Mallery v. Norman L. Bush Auto Sales & Serv., Inc.*, 301 So. 3d 361, 366 (Fla. 2d DCA 2020) (finding it "clear" that violations of a statute were addressed by criminal law, rather than civil law, "yield[ing] the conclusion that the legislature intended not to impose civil liability").

§743.07(1), Fla. Stat. Nothing in the statute remotely suggests a private right of action or the recovery of damages they seek under the facts alleged here. This Count too should be dismissed with prejudice.

Third, as to Count IX, section 761.03, Florida Statutes, this claim fails for the same reason Plaintiffs' federal free exercise claim fails. *See Cambridge*, 942 F.3d at 1250 (noting the Florida Supreme Court has "set a much more stringent standard for what constitutes a 'substantial burden'" regarding the free exercise of religion); *see also Warner v. City of Boca Raton*, 887 So.2d 1023, 1033 (Fla. 2004) (adopting a "narrow definition of substantial burden" and "hold[ing] that a substantial burden on the free exercise of religion is one that either compels the religious adherent to engage in conduct that his religion forbids or forbids him to engage in conduct that his religion requires"). Certainly, "nurture[ing] seeds of doubt and distrust" [D.E. 16 at ¶ 145], even if true, do not rise to the level of "substantial burden" under Florida law. Beyond this, nothing in this statue creates a private cause of action for monetary damages. Statutes must be accorded their plain meaning to determine legislative intent. *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001). Nothing in section 761.03's language explicitly provides a private right of action for monetary damages. *See* §761.03(2), Fla. Stat. Because the statute fails to delineate a rule by means of which the right to money damages (over and beyond recoupment) can be determined, enjoyed, or protected, the Florida Legislature had

not waived sovereign immunity and thus, money damages are not permitted. *See Tucker v. Resha*, 634 So.2d 756, 759 (Fla. 1st DCA 1994), *approved*, 670 So.2d 56 (Fla. 1996); *Kaisner v. Kolb,* 543 So.2d 732, 734 (Fla. 1989); *Am. Home Assurance Co. v. Nat'l R.R. Passenger Corp.,* 908 So.2d 459, 471-72 (Fla. 2005) ("the Legislature can abrogate the state's sovereign immunity," provided that "any waiver of sovereign immunity must be clear and unequivocal;" "waiver will not be found as a product of inference or implication"); *Pan–Am Tobacco Corp. v. Dep't of Corrs*., 471 So.2d 4, 5 (Fla. 1984); *S. Roadbuilders, Inc. v. Lee Cty.,* 495 So. 2d 189, 191, n. 1 (Fla. 2d DCA 1986) ("Sovereign immunity is a doctrine designed to protect the public treasury from what would otherwise be countless claims filed by the vast number of citizens affected by the actions of a government. Though it germinated in the monarchical maxim, 'The King Can Do No Wrong,' …-an odious concept by modern standards-sovereign immunity, at least to the extent retained by the legislature and courts, is a positively necessary and rational safeguard of taxpayers' money"). Count IX's claim for monetary damages should be dismissed with prejudice.

WHEREFORE, Defendants request an order dismissing Plaintiff's Amended Complaint with prejudice, where appropriate, and for any other such relief that is deemed appropriate.

## **CERTIFICATE IN ACCORDANCE WITH LOCAL RULE 3.01(g)**

I HEREBY CERTIFY that I have conferred with counsel for the Plaintiff in writing on March 15, 2022, who oppose the relief requested herein.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 21, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: **Mary E. McAlister at mmcalister@childparentrights.org, Vernadette R. Broyles at vbroyles@childparentrights.org** and **Ernest G. Trakas at etrakas@evans-dixon.com**.

/s J. David Marsey

J. DAVID MARSEY
Florida Bar No.: 0010212
E-mail: dmarsey@rumberger.com
KAYLA E. PLATT RADY
Florida Bar No.: 0117896
E-mail: krady@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
101 North Monroe Street, Suite 120
Tallahassee, Florida 32301
Tel: 850.222.6550
Fax: 850.222.8783
Attorneys for Defendants