IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WENDELL PEREZ, et al.,

        Plaintiffs

v.                                Case No.: 3:22-CV-83-TJC-JBT

CLAY COUNTY SCHOOL BOARD, et al.,

        Defendants.

_____/

## DEFENDANTS' DISPOSITIVE
## MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Defendants, David Broskie, in his official and individual capacities, Destiney Washington, in her individual capacity, and the Clay County School Board ("Board") (collectively, "Defendants"), hereby file their Motion to Dismiss the Second Amended Complaint ("Complaint") pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted, and in support thereof state:

### I.     INTRODUCTION AND BACKGROUND

Plaintiffs have brought a seven-count Second Amended Complaint, their third, on behalf of themselves and their minor daughter, A.P., against the individually named Defendants and the School Board. The Complaint centers on purported actions taken by these Defendants regarding A.P.'s gender identity, and the alleged lack of notification Plaintiffs received from Defendants regarding it.

Plaintiffs have again asserted duplicative claims, claims that are unsupported by law, or new and novel claims that assert rights that are not clearly-established.

## II.   STATEMENT OF THE ALLEGED FACTS[1]

Plaintiff A.P. was a student at Paterson Elementary School which is part of the Clay County School District, at all times relevant to the Complaint. [DE 43, ¶10]. She was bullied at school beginning early in the fall of 2021 at the beginning of the 2021-2022 school year. [DE 43, ¶17]. A.P. began feeling conflicted about her sex, and wanted to be like a boy. [DE 43, ¶20]. She heard the word "transgender" from friends, and read about it on the internet. [DE 43, ¶21].

A.P. began meeting with Washington. [DE 43, ¶25]. A.P. was still conflicted about her sex when she saw Washington. [DE 43, ¶27]. She saw rainbow posters with the word "safe space" in Washington's office, and asked if Washington supported transgendered people. [DE 43, ¶28]. Washington replied "All these rainbows aren't here for no reason." *Id*. A.P. asked Washington "if she could 'be a boy.'" [DE 43, ¶29]. Washington asked A.P. for a boy's name, which A.P. responded with the name "M." [DE 43, ¶31]. During subsequent meetings, Washington referred to A.P. as "M." [DE 43, ¶32]. A.P. did not request to be called

---

[1] Many of Plaintiffs' allegations are disputed, but as they must, Defendants presume the allegations contained in the Complaint are true for the purposes of this Motion only.

"M," but did not correct Washington. [DE 43, ¶32].[2] Washington asked A.P. if her parents knew about the male name and the minor replied in the negative and disclosed the family was Roman Catholic. [DE 43, ¶33]. A.P. did not ask Washington to not tell her parents, but Washington promised she would not tell them. [DE 43, ¶34].[3]

Washington shared her engagement with A.P. [DE 43, ¶35]. After A.P. indicated she went to church the preceding weekend, Washington disclosed that the last time Washington went to church she was kicked out because her skirt was too short. [DE 43, ¶36].

A.P. did not tell anyone else at school about the name "M" or about her conflict regarding her sex.[4] [DE 43, ¶39]. Washington told A.P. she would have teachers call her by "M," and referred to her in public as such, but apparently, A.P. did not voice her concerns or ask Washington to avoid doing so. [DE 43, ¶¶42-43].

On January 4, 2022, the first day back to school, A.P. attempted to hang herself, and did so again the following day. [DE 43, ¶54]. Notably, prior to ever meeting with Washington, A.P. was searching the internet about self-harm, but

---

[2] In an apparent attempt to avoid another dismissal, Plaintiffs expressly contradict their prior allegations which *specifically quoted* **A.P.'s request to be called by the masculine name**. *Compare* [DE 16, ¶56 ("in that case, call me 'M' and 'he'")] and [DE 43, ¶¶31, 63]. Such gamesmanship is troubling.

[3] Plaintiffs' efforts to call this a conflict is unsupported. [DE 43, ¶34]. A.P. was never coached, counseled, or prohibited from disclosing her male identity to her parents.

[4] This is materially false, as Plaintiffs are well aware A.P.'s peer referred to her as "M" when disclosing A.P.'s suicide attempt to staff.

school staff intervened. [DE 43, ¶23]. Plaintiff Wendell Perez informed a school counselor he would address the issue with A.P. and seek private advice and counseling. [DE 43, ¶24]. After the January 2022 incidents, A.P. was taken into custody under the Baker Act. [DE 43, ¶61].

At the January 5, 2022 meeting, Assistant Principal Schumacher told the Pérezes that school officials were not required to notify them about the meetings with A.P. or the alleged discussions about her gender confusion. [DE 43, ¶69]. Schumacher claimed that confidentiality issues prohibited District personnel from notifying parents regarding children's questions about their sex. *Id.* Schumacher's statements contradict publicly available information published promulgated by the Board that provides for no confidentiality regarding communications with a child. [DE 43, ¶¶71-72].

A.P. "felt coerced into continuing with the secret male identity." [DE 43, ¶47]. Notably absent, however, are any allegations that Washington or anyone employed by the Board required or prohibited any conduct by her. Without any factual support, and directly contrary to the Board's published confidentiality notice, Plaintiffs "believe" that the assistant principal's statements "were part of a District legislative policy action sanctioned by the School Board and implemented by Mr. Broskie that directs District staff that parents are not to be told when their child asserts a discordant gender identity." and thus claim it is a "De Facto Policy."

### III.    MEMORANDUM OF LAW

#### A.    Standard of Review

The Court is well-versed on the motion to dismiss standard. It is sufficient to state that in order to overcome a motion to dismiss, a plaintiff must allege sufficient facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Granting a motion to dismiss is appropriate if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. *Hishon v. King & Spalding*, 467 U.S. 69 (1984). The allegations of the complaint must be deemed true and construed in a light most favorable to the plaintiff. *Shands Teaching Hosp. & Clinics, Inc. v. Beech Street Corp.*, 208 F. 3d 1308, 1310 (11th Cir. 2000). However, the Court need not accept as true legal conclusions "supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where further leave to amend the complaint is futile, claims should be dismissed with prejudice. *See Muhammad v. JPMorgan Chase Bank, NA*, 567 Fed. App'x 851, 853–54 (11th Cir. 2014).

#### B.    The Official Capacity Claim Against Superintendent Broskie Is Improper and Duplicative

Plaintiffs have again unnecessarily sued Superintendent Broskie in is official capacity. The official capacity claim against him is a claim against the entity of which he is an agent, *i.e.* the Office of the Superintendent. *E.g.*, *Monell v. Dep't of*

*Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978). The School Board, not the Office of the Superintendent, is the government entity with the power to contract, to sue, and be sued. §§1001.41(4); 1012.22(1), Fla. Stat. The Board, not the superintendent is the employer of school employees. *See, e.g., Forehand v. Sch. Bd. of Gulf Cnty.*, 600 So. 2d 1187, 1188 (Fla. 1st DCA 1992). "[A]ll public schools conducted within the district shall be under the direction and control of the district school board with the district school superintendent as executive officer." §1001.33, Fla. Stat. The Board, not the Superintendent in his official capacity, is the proper party.

Additionally, because the Board is also a party defendant, the official capacity claim against the Superintendent in his official capacity as its executive officer is, even if arguably proper, unnecessarily duplicative of the claim against the Board. *E.g. C.P. v. Collier Cnty.*, 145 F. Supp. 3d 1085, 1090 (M.D. Fla. 2015) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The official capacity claim against Broskie should be dismissed with prejudice.

### C.    Plaintiffs Failed to State a Federal Law Claim

In order to state a claim pursuant to 42 U.S.C. §1983, a plaintiff must allege: (1) that he was deprived of a right secured by the Constitution or federal law; and (2) that the deprivation occurred under color of state law. *Am. Mfrs. Mut. Ins. v. Sullivan*, 526 U.S. 40, 49 (1999). Plaintiffs have not identified a violation of a cognizable federal right under the alleged facts.

### i.   COUNTS I-III Alleged Violations of State Law Are Not Actionable Under Constitutional Theories

In Counts I-III against the Board and Broskie, Plaintiffs reassert identical claims that they "knowingly and intentionally" failed to train and supervise staff on the requirements of the Constitution and Florida law regarding parental notification and the alleged concealment of information from parents. *E.g.*, [D.E. 28, ¶¶109, 112, 128, 130, 144, 146, (Board); ¶¶114, 116, 132, 134, 148, 150, (Broskie)]. Plaintiffs also allege the Board failed to enact a policy regarding parental notification. [DE 37, ¶¶108, 127, 143]. In Count I, Plaintiffs allege against all Defendants that they: (a) failed to implement a parental notification policy as required by Florida law; (b) failed to train and supervise staff regarding parental notification requirements; (c) directed staff that students are entitled to confidentiality toward parents regarding gender identity; (d) meeting with A.P. to discuss mental health issues; (e) withholding mental health information regarding A.P; and (f) taking other unspecified actions.[5] [DE 37, ¶¶ 121 (Count I). Characterizing this alleged conduct as "deliberate indifference," does not make it so, when the actual alleged conduct does not even remotely qualify. *E.g.*, [DE 37, ¶139].

---

[5] As with the Amended Complaint, Plaintiff again aggregates all conduct to all defendants.  It is axiomatic that Washington, as a guidance counselor, does not implement policy, and Broskie, as Superintendent, did not personally meet with A.P. Plaintiffs continued efforts to bootstrap allegations into a one-size-fits-all Complaint is unpersuasive and fails to comport with Rule 8's pleading requirements.

The fatal flaw Plaintiffs cannot overcome is rooted in the well-settled law that violations of state law, even if proven, cannot put an official on notice that his conduct would also violate the constitution. This is particularly true regarding Plaintiffs' attempts to make a constitutional claim over an alleged failure to enforce the Board's anti-bullying policy.[6] "[S]ection 1983 protects only against violations of federally protected rights." *Echols v. Lawton*, 913 F.3d 1313, 1324 (11th Cir. 2019). There is no constitutional obligation to enact policies required by state law – or to provide training or supervision on them if enacted. Accordingly, each of Plaintiffs' allegations of a violation of state law in support of their federal claims are inconsequential and fail to state a constitutional claim upon which relief may be granted.

## ii.   Counts I–III – Substantive Due Process

### a.   Plaintiffs Have Not Identified a Violation of a Cognizable Right

Counts I–III fail to state a claim for a violation of the substantive Due Process Clause of the Fourteenth Amendment. They allege violations of Plaintiffs' fundamental rights to: (1) direct the upbringing of their child (Count I); and (2)

---

[6] Although the allegation is denied, such a claim is not even actionable in tort, because enforcement of an agency policy is a discretionary governmental function for which the Board is entitled to sovereign immunity. *See Carter v. City of Stuart*, 468 So. 2d 955, 957 (Fla. 1985); *White v. City of Waldo*, 659 So. 2d 707, 712 (Fla. 1st DCA 1995).

familial privacy (Count II, the Perezes and Count III, A.P.). More specifically, they allege that in failing to implement, train and supervise, or to follow state law, the Board and Broskie sanctioned and/or enacted "the "De Facto" policy[7] regarding the concealment of health and well-being information from parents, and that Washington met with A.P., promoted a male identity, and promised to conceal the meetings and information from Plaintiffs. *E.g.*, [DE 43, ¶118].

Assuming without conceding these are fundamental rights, Plaintiffs have not cleared the high bar necessary to state a substantive due process violation, as "conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Maddox v. Stephens*, 727 F.3d 1109, 1119 (11th Cir. 2013) (quoting *Waddell v. Hendry Cnty. Sheriff's Off.*, 329 F.3d 1300, 1305 (11th Cir. 2003)); *see also Littlejohn v. Sch. Bd. of Leon Cnty., Fla.*, Case No. 4:21cv415-MW/MJF, 2022 WL 18670372 (N.D. Fla. Dec. 22, 2022) (applying "shocks the conscience" to substantially similar claims). Plaintiffs' already high burden faces an additional hurdle, as "in §1983 cases asserting violations of parental liberty interests, 'we are

---

[7] Plaintiffs' strained attempts to characterize statements by an Assistant Principal – and no one else – as Board Policy is an unsupportable conclusion, that is not required to be given deference at the Motion to Dismiss stage *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003) (courts must only accept well-pleaded facts but unsupported conclusions of fact have long been recognized as insufficient to prevent dismissal). This is particularly true where the Board's confidentiality disclosure clearly reflects the right to confidentiality does not exist with children, but extends to the parent. [DE 43-1, p.1].

venturing into the murky area of unenumerated constitutional rights.'" *Id.* at 1120 (quoting *Robertson v. Hecksel*, 420 F.3d 1254, 1256 (11th Cir. 2005)).

Against this overlay, Counts I–III should again be dismissed because Plaintiffs fail to allege a cognizable right under these facts. Plaintiffs' core contention is they had the right to be informed of alleged discussions between Washington and A.P. regarding her gender identity, and that by failing to notify them and having the conversation without parental consent, Defendants violated their fundamental rights. Setting aside for a moment the clearly unsupported claim that an alleged violation of Florida statute is actionable under any constitutional theory, Defendants are not under any constitutional obligation to notify Plaintiffs of the issues complained of, nor do they possess protected constitutional right to receive such notification that these discussions took place, if they even occurred, which is disputed. The *Littlejohn* court found no constitutional deprivation under facts more egregious than here where parents expressly advised the school that they did not consent to the child changing their name or to the use of "they/them" pronouns. The best Plaintiffs here can muster is the failure to affirmatively notify them of discussions with A.P. Cases recognizing a viable allegation of interference with parental liberty interest required the state to either require or prohibit some activity, which is not present here. Plaintiffs' efforts to manufacture coercion in the absence of any alleged act

or omission by relying on their "feelings" and "beliefs" are unpersuasive and legally insufficient. [DE 43, pp. 9, 11, 17, 20, 23, 51,

Plaintiffs do not allege A.P. was forced to discuss gender identity issues with Washington. Instead, they allege the opposite: A.P. initiated discussion on the issue and provided Washington with her preferred masculine name, "M." [DE 43, ¶31]. Plaintiffs allege Washington merely responded to A.P.'s inquiries and engaged her in the discussion *the child initiated*. There are no allegations A.P. was forced or coerced to discuss identity issues or that she voiced her objections to the alleged, but disputed, comments by Washington. Equally absent are any allegations that any employee required or prohibited A.P.'s parents to perform or abstain from performing any act. Plaintiffs' attempts at connecting Washington's anecdote about church to an unconstitutional form of coercion strains credulity.

In *Wyke v. Polk Cnty. Sch. Bd.*, 129 F.3d 560 (11th Cir. 1997), the Eleventh Circuit found a school board had no affirmative constitutional duty to protect a student from committing suicide. *Id.* at 569–70. The court noted an affirmative duty to act only "arises from limitations the state places upon an individual's ability to act on his own behalf, 'not from the [s]tate's knowledge of the individual's predicament.'" *Id.* at 570 (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)). Despite the school's assurances they would "take care of" the student, upon which a third party relied, the court declined to

find a constitutional violation. *Id.* The allegations here of the school's after-the-fact knowledge of an alleged attempted suicide do not even approach that level of potential culpability. There is no constitutional duty to inform a parent of a child's suicide attempt. *Id.*   Moreover, there is clearly no constitutional obligation to inform the parents that their child is questioning their gender identity or of the child's request to be called by another name or by masculine pronouns.  Nothing compels a result different from *Wyke*. Here, the parents cannot recast A.P.'s decisions to speak with a counselor, provide a male name, failure to object, failure to speak to her parents, or any other act or omission by a Board employee as the school's compulsion or prohibition on any alleged fundamental right of A.P. or her parents.  This Court should not create a never-before recognized right in the murky world of substantive due process.

Contrast *Wyke* with *Arnold v. Bd. of Educ. of Escambia Cnty.*, 880 F.2d 305 (11th Cir. 1989), *overruled on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163 (1993), acknowledging a parental right where school officials coerced a child into withholding information about having an abortion. Plaintiff's use of the word "coercion" is disingenuous here, because after three Complaints, no actual conduct even approaching coercion has bene alleged. Plaintiffs' labels and unsupported conclusions do not warrant deference, and the Court is not required to accept them as true. *Celestine v. Capital One*, 741 F. App'x

712, 715 (11th Cir. 2018) (second amended complaint was properly dismissed when it "only presented conclusory allegations and statements of the law, and was unsupported by any plausible facts"). Plaintiffs' Due Process Clause claims fail.

Plaintiffs cannot identify *any authority* establishing that under these facts, Defendants were under a constitutional duty to notify them of the meetings with A.P. or that required parental consent to call A.P. by the masculine name *she provided.* "[A]bsent any authority, [the court should] heed the Supreme Court's caution against expanding the concept of substantive due process." *Wyke*, 129 F.3d at 570; *see also Doe v. Irwin*, 615 F.2d 1162, 1169 (6th Cir. 1980) (finding no due process violation when school failed to inform parents that student was participating in voluntary condom-distribution program). At most, Plaintiffs allege Washington advocated for transgenderism and Broskie failed to stop it. Moreover, other than the conclusory boilerplate alleging violations of non-existent duties and constitutional obligations, the factual allegations against Broskie are completely devoid of any conduct that implicated him in a purported constitutional violation, which provides an independent basis for dismissal.

### b. The Alleged Conduct Is Insufficient to Establish Substantive Due Process Violations

Even assuming Plaintiffs have the fundamental rights they assert, Counts I–III (Due Process) should be dismissed because the Eleventh Circuit has been

"explicit in stating that 'deliberate indifference' is insufficient to constitute a due-process violation in a non-custodial setting." *Nix v. Franklin Cnty. Sch. Dist.*, 311 F.3d 1373, 1377 (11th Cir. 2002). A school is not a custodial setting. *Wyck*, 129 F.3d at 569; *K.W. v. Lee Cnty. Sch. Bd.*, 67 F. Supp. 3d 1330, 1337 (M.D. Fla. 2014). Plaintiffs' claims of deliberate indifference do not rise to the level of a substantive due process violation, even if the enumerated rights existed, because they have again alleged an incorrect legal standard.

Plaintiffs understandably seek to avoid their weighty burden: "[c]onduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience-shocking in a constitutional sense." *Davis v. Carter*, 555 F.3d 979, 982 (11th Cir. 2009). Even conduct that would amount to an intentional tort under state law does not, without more, meet this bar. *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1048 (11th Cir. 2002). "There are very few cases [in the school setting] in the Eleventh Circuit in which the circumstances actually give rise to a constitutional violation," and in the rare instances where this has been found, "the Eleventh Circuit [has] made clear that...claims of excessive corporal punishment shaped the outcome." *E.g. K.W.*, 67 F. Supp. 3d at 1337; *Kirkland v. Greene Cnty. Bd. of Educ.*, 347 F.3d 903, 904–05 (11th Cir. 2003). On the other hand, the Eleventh Circuit has declined to find conscious-shocking behavior, even in circumstances resulting in the death of a student. *See*

*Davis*, 555 F.3d at 984 (coach allegedly subjected student to intense workout, failed to provide enough water and ignored student's collapse); *Nix*, 311 F.3d at 1378 (student died after touching live wire due to teacher's alleged arbitrary and deliberate indifference).

In *Wyke,* a student attempted to commit suicide multiple times at school before finally succeeding at home. 129 F.3d at 564–65. The Eleventh Circuit found substantive due process clause, violation because the student: (1) had no custodial relationship with his school; (2) school officials did not assume an affirmative due process duty to prevent the student from committing suicide after he attempted to do so at school; and (3) school officials had no independent constitutional duty to inform the student's mother of her son's suicide attempts. *Id.* at 569–70. This Court too has declined to find conscience-shocking behavior, even when school officials allegedly intentionally failed to provide immediate medical assistance to an eight-year-old student suffering from a serious medical injury. *See K.W.*, 67 F. Supp. 3d at 1338–39. Even if Plaintiffs' disputed allegations are fully credited, the alleged conduct does not even approach the type of conscience shocking behavior required to state a claim for a violation of Plaintiffs' substantive due process rights.

### c.  Plaintiffs Have Not Alleged a Sufficient Custom, Policy, or Practice to Established Governmental Liability

Counts I–III (Due Process) agency claims fail because Plaintiff has not alleged their purported deprivation occurred pursuant to a qualifying

governmental custom or policy. *Monell*, 436 U.S. at 693–94.[8] To state a claim, Plaintiffs can "identify either (1) an officially promulgated [Board] policy or (2) an official custom or practice of the [Board] shown through the **repeated acts of a final policy maker."** *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003) (emphasis added). They have done neither.

It is well settled that a plaintiff cannot rely on *respondeat superior* theory to hold a governmental entity or officials named in their official capacity liable for individual employee's actions. *Monell*, 436 U.S. at 776. Plaintiffs concede the Board's written confidentiality policy accurately reflects the absence of confidentiality between a student and school counselor. [DE 43-1]. In the absence of an unconstitutional written Board policy,[9] Plaintiffs fail to allege a policy, custom, or practice made by officials "whose acts or edicts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694. Plaintiffs attempt to pin this on comments by Schumacher, an assistant principal, but she is not even the final decision-maker *at her school.* §1001.32(4), Fla. Stat. Similarly, it is well-settled that the Board, not the superintendent, has final decision-making authority. *Johnson v.*

---

[8] Moreover, Plaintiffs generally allege a failure to train, but have made no factual allegations of facts sufficient to establish a duty to do so, the standard that should be trained, or the requisite deliberate indifference to known risk of constitutional harm. *E.g.*, *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "A municipality's culpability is at its most tenuous where a claim turns on failure to train." *Id.* at 59.

[9] The School Board is the entity statutorily tasked with the adoption of policies regarding employee standards of conduct. *See* §1001.42(6), Fla. Stat.

*Dade Cty. Pub. Sch.*, No. 91-2952-CIV-DAVIS, 1992 WL 466902 at *4 (S.D. Fla. 1992). An official policy "includes the decisions of a government's lawmakers [and] the acts of its policymaking officials." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Therefore, the vague allegations and the stacking of inferences to suggest the creation of what Plaintiffs erroneously call a "De Facto" unconstitutional policy are insufficient as a matter of law.

Even if Schumacher's statements are accurately alleged, her thoughts on student confidentiality as applied to A.P. are constitutionally irrelevant and fail to establish the requisite *pattern* necessary to establish governmental liability. This is particularly true where the published Board policy provides no confidentiality for students. [DE 43-1]. In order to state a *Monell* claim for unofficial policies, "a plaintiff must establish a *widespread practice* that, although not authorized by written law or express [Board] policy, is so permanent and well-settled as to constitute a custom or usage with the force of law." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (emphasis added). Plaintiffs' allegation that the "De Facto" policy applied to A.P. is insufficient, because "[t]hree violations do not a custom make." *Whittier v. City of Sunrise*, 395 F. App'x 648, 650 (11th Cir. 2010); *see also Wakefield v. City of Pembroke Pines*, 269 F. App'x 936, 940 (11th Cir. 2009). There are no allegations of a colorable official pattern or practice of unconstitutional Board conduct, and therefore, Plaintiffs' *Monell* claims fail.

### d. The Individual Capacity Defendants Are Entitled to Qualified Immunity

Assuming without conceding a constitutional deprivation, the individual capacity defendants are entitled to qualified immunity because there was no violation of a clearly established right. *Pearson v. Callahan*, 555 U.S. 223, 237 (2009). In reasserting the individual capacity claims, Plaintiffs have ignored this Court's guidance that these claims, if not ones of first impression, are "something pretty close to that." [DE 45, 48:7-8]; *see also Littlejohn v. School Board of Leon County*, 2022 WL 18670372, at *3 (N.D. Fla. Dec. 22, 2022)("the law regarding the substantive due process rights afforded to parents is an unsettled area of constitutional law, such that a reasonable person would not be able to know when their conduct is in violation of the law.") Broskie and Washington are, therefore, immune from suit.

Qualified immunity is appropriate unless the "supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice what the defendant official was doing would be clearly unlawful given the circumstances." *Pace v. Capobianco*, 283 F.3d 1275, 1282 (11th Cir. 2002). It protects all but "obviously wrong" actions that, "in the light of pre-existing law . . . only a plainly incompetent [employee] or one who was knowingly violating the law would have done such a thing;" otherwise, "the government actor has immunity from suit." *Id.* Qualified immunity applies regardless of whether the government official's error is "a

mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Immunity is the rule, not the exception.  *Rowe v. Schreiber*, 139 F.3d 1381, 1385 (11th Cir. 1998).

Because it cannot be disputed that the individually named defendants were acting within their discretionary authority and within the course and scope of their employment by providing services to students and operating the Board's schools, the *burden shifts to Plaintiffs* to show that they: (1) have alleged a violation of a constitutional right; and (2) that the right was clearly established. . *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002); *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004); *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010). They have failed to offer any authority to establish the purported rights were clearly established. *Wyke, Littlejohn,* and others foreclose any such argument. The individual capacity defendants should be dismissed with prejudice.

### iii.    Counts IV-V – Free Exercise of Religion

#### a.  The Alleged Conduct Is Insufficient to Establish a Free Exercise Clause Claim

Defendants have not infringed on any of Plaintiffs' free exercise rights, because no alleged conduct adversely impacted Plaintiffs' ability to freely exercise their religion.  "The Free Exercise Clauses require a plaintiff to allege a religious belief and a burden that has been placed by the government on the exercise of that belief. To plead a claim for relief under the Free Exercise Clause of the U.S., a

plaintiff must allege that: (1) the plaintiff holds a belief, not a preference, that is sincerely held and religious in nature, not merely secular; and (2) the law at issue in some way impacts the plaintiff's ability to either hold that belief or act pursuant to that belief." *Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n*, 942 F.3d 1215, 1246 (11th Cir. 2019) (internal citations and quotations omitted). Defendants presume without conceding Plaintiffs have sincerely held religious beliefs regarding gender identity.

Plaintiffs have not, and cannot, allege that Defendants' alleged conduct infringed on their ability to hold or express their beliefs regarding gender identity and/or act pursuant to those beliefs. The Complaint claims Defendants excluded them from information regarding A.P., and that Washington told a personal anecdote about wearing a short skirt to church, but there are no allegations Defendants prohibited A.P. or Plaintiffs from expressing, exercising, practicing, or speaking about their beliefs. Even assuming Defendants withheld information from Plaintiffs, which is disputed, this did not infringe on Plaintiffs' right to freely exercise their religion. Further, A.P. initiated the conversation about her gender confusion, and provided a male name; Washington's acquiescence cannot be characterized as governmental infringement, particularly so as applied to A.P. (Count V). *See* [DE 43, p.50]; *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1259 (11th Cir. 2012) ("[C]onclusory allegations that [government action] interferes with

Plaintiffs' free exercise of religion are not sufficient to survive a motion to dismiss."). Nothing in Plaintiffs' Complaint can be fairly read as an unconstitutional burden on their ability to freely exercise their faith.

> **b. Plaintiffs Have Not Alleged a Sufficient Custom, Policy, or Practice to Established Governmental Liability and the Individual Defendants Are Entitled to Qualified Immunity**

For the same reasons Plaintiffs' Due Process claims fail to establish *Monell* liability, so too does their First Amendment Claims.

### iv.    Count VI – Procedural Due Process

Plaintiff alleges that the so-called "De Facto Policy" regarding student confidentiality, and the Board's 2022 Policy regarding parental notification violates their right to procedural due process. As more fully set forth above, there is no constitutional right to parental notification, therefore no right to procedural due process.  Moreover, there is no cognizable interest in the passage of an implicit or explicit policy sufficient to trigger the right to procedural due process.

"The essence of procedural due process is notice and an opportunity to be heard." *Zisser v. The Fla. Bar*, 747 F. Supp. 2d 1303, 1316 (M.D. Fla. 2010) (citing *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976)). Procedural due process is simply "a guarantee of fair procedure." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). "A § 1983 action alleging a procedural due process clause violation requires proof of three elements: a deprivation of a constitutionally-protected liberty or property

interest; state action; and constitutionally inadequate process." *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994). Failure to establish any of these elements is fatal to a procedural due process claim. *Bank of Jackson Cnty. v. Cherry*, 980 F.2d 1362, 1366 (11th Cir. 1993).

Plaintiffs have not stated a claim for procedural due process,[10] because they have not shown that any procedural due process right exists here. "Due process is not a technical conception with a fixed content unrelated to time, place and circumstances, but rather is flexible and requires analysis of the governmental and private interests that are affected." *Schultz v. Alabama*, 42 F.4th 1298, 1332 (11th Cir. 2022) (cleaned up). The court must "first ask whether there exists a liberty or property interest of which a person has been deprived, and if so [then] ask[s] whether the procedures followed by the State were constitutionally sufficient." *Id.* Here, Plaintiffs fail at the first step.

Despite Plaintiffs' claim, [DE 43 at ¶ 184], there is no fundamental parental right to notice regarding their student. *Wyke*, 129 F.3d at 570. Beyond this, Plaintiffs have not, and cannot, allege that they have been deprived of a protected liberty interest by not receiving notice of the Board's alleged "De Facto" Policy or because the Board's 2022 Policy allegedly does not require parental notification in cases of

---

[10] While Plaintiffs do not state whether their claim is a property-interest or liberty-interest procedural due process claim, the Eleventh Circuit does not "distinguish[] between the two kinds of procedural due process claims." *Cotton v. Jackson*, 216 F.3d 1328, 1331 n.1 (11th Cir. 2000).  The Board presumes that Plaintiffs are asserting a liberty interest.

gender identity questioning by a child. *See Zisser*, 747 F. Supp. 2d at 1321 ("[L]iberty interests are only implicated when the government impairs one's ability to take advantage of a legal right . . . ." (cleaned up)). The absence of an enumerated right to notice of a child's gender questioning precludes a right to notice and the opportunity to be heard on the Board's related policies, explicit or implicit.  Even presuming a liberty interest in the raising of their children existed, this does not extend to a right requiring the Board individually notify Plaintiffs (and indeed all parents) of its procedures and to provide them the opportunity to be heard prior to implementation. As to the promulgated 2020 policy, the Board's policies are advertised, promulgated, and adopted in public meetings in accordance with Florida's Sunshine law. Thus, to the extent Plaintiffs are even owed any due process here, they received it.

### D.    Count VII – Parents Bill of Rights, Chapter 1014, Fla. Stat.

Plaintiffs' Florida statutory claim fails because chapter 1014 does not create a private right of action. The existence of a private cause of action is a question of legislative intent and courts look to the plain meaning of the statute. *Aramark Uniform & Career Apparel, Inc. v. Easton*, 894 So. 2d 20, 23 (Fla. 2004); *Murthy v. N. Sinha Corp.*, 644 So.2d 983 (Fla. 1994) (holding Ch. 489 did not create private cause of action because "there is no evidence in the language or the legislative history of chapter 489 of a legislative intent to create a private remedy") (citing *Parker v. State,*

406 So.2d 1089, 1092 (Fla.1981) ("[L]egislative intent is the pole star by which we must be guided in interpreting the provisions of a law")). Chapter 1014 does not create private causes of action.

Nothing in the statutory language suggests the Legislature intended to permit parents a private cause of action. To the contrary, the Parents' Bill of Rights provides only for: (1) disciplinary action §1014.04(3), Fla. Stat.; and in some limited circumstances (2) criminal liability.  §1014.06(5), Fla. Stat. No private right of action is included.[11] *See Gunn v. Robles*, 130 So. 463, 463 (Fla. 1930) ("Where a particular remedy is conferred by statute, it can be invoked only to the extent and manner prescribed."). It has been well settled for nearly 80 years that where a statute enumerates factors which it is to operate, it is to be construed as excluding from its operation those that are not mentioned.  *Ideal Farms Drainage Dist. v. Certain Lands*, 19 So. 2d 234, 239 (Fla. 1944).  Here, the Legislature could have, but did not, include a private right of action, but instead, expressly limited the sanctions for a violation of Chapter 1014's terms. Plaintiffs' private cause of action is not one of them.

---

[11] This is further bolstered by *Mallery v. Norman L. Bush Auto Sales & Serv., Inc.*, 301 So. 3d 361, 366 (Fla. 2d DCA 2020) (finding it "clear" that violations of a statute were addressed by criminal law, rather than civil law, "yield[ing] the conclusion that the legislature intended not to impose civil liability").

WHEREFORE, Defendants request an order dismissing Plaintiff's Second Amended Complaint with prejudice, and for any other such relief that is deemed appropriate.

## LOCAL RULE 3.01(g) CERTIFICATION

I HEREBY CERTIFY that I have conferred with counsel for the Plaintiff in writing, who oppose the relief requested herein.

Respectfully submitted,

/s J. David Marsey
J. DAVID MARSEY
Florida Bar No.:  0010212
E-mail:  dmarsey@rumberger.com
JEFFREY J. GROSHOLZ
Florida Bar No.:  1018568
E-mail:  jgrosholz@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
101 North Monroe Street
Suite 1050
Tallahassee, Florida 32301
Tel:  850.222.6550
Fax:  850.222.8783
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 30, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: **Mary E. McAlister at mmcalister@childparentrights.org, Vernadette R. Broyles at**

**vbroyles@childparentrights.org** and **Ernest G. Trakas at etrakas@evans-dixon.com**.

/s J. David Marsey
_____
J. DAVID MARSEY
Florida Bar No.:  0010212
E-mail:  dmarsey@rumberger.com
JEFFREY J. GROSHOLZ
Florida Bar No.:  1018568
E-mail:  jgrosholz@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
101 North Monroe Street
Suite 1050
Tallahassee, Florida 32301
Tel:  850.222.6550
Fax:  850.222.8783
Attorneys for Defendants