**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**(JACKSONVILLE DIVISION)**

| | | |
|---|---|---|
| Wendell Perez, *et. al* | ) | Case No:  3:22-cv-0083-TJC-JBT |
| Plaintiffs, | ) | |
| v. | ) | **Plaintiffs' Memorandum of Law** |
| Clay County School Board, *et al.* | ) | **in Opposition to Defendants'** |
| | ) | **Motion to Dismiss Second** |
| Defendants.) | | **Amended Complaint** |

Plaintiffs, by and through their attorneys, file this Memorandum of Law In Opposition to Defendants' Motion to Dismiss ("MTD") the Second Amended Complaint ("SAC").

**FACTUAL SUMMARY**

A.P., age 12, was being bullied by her peers for being too "boyish," during the first few weeks of the 2021-22 school year. (SAC¶18). A.P. reported the bullying to District staff, but, contrary to District Policy 1.11, staff did not follow up and did not notify Mr. and Mrs. Perez. (SAC¶¶19,83-85). As the bullying continued, A.P. began feeling conflicted about her sex. (SAC¶20). She knew she was a girl, but wanted to be like a boy, believing she would not be bullied if she were perceived as "strong" like a boy. (SAC¶20). A.P. had heard the word "transgender" and wondered if she could be transgender so that she could be seen as a boy and not get bullied. (SAC¶21). As the bullying intensified and staff still did not respond, A.P. began doing internet searches about self-harm, which triggered an alert to school staff. (SAC¶23). Staff spoke to her and

1

notified Mr. Perez who said that he and his wife would address the issue. (SAC¶24). Nevertheless, A.P. began weekly counseling sessions with Mrs. Washington shortly thereafter, without notifying or obtaining consent from Mr. and Mrs. Perez. (SAC¶23).

A.P. saw rainbow posters saying "safe space" in Mrs. Washington's office and asked Mrs. Washington if she supported transgender people. (SAC¶28). Mrs. Washington replied, "All these rainbows aren't here for no reason." (SAC ¶28). A.P. asked Mrs. Washington if she could "be a boy." She knew that she could not become a boy, but wondered if she could be seen as a boy or like a boy so that the bullying would stop. (SAC¶¶29-30). Mrs. Washington answered "yes" and asked A.P. for a boy name. A.P. gave Mrs. Washington the name "M," but did not ask Mrs. Washington to use that name with her. (SAC¶31).[1] Nevertheless, from that time forward, Mrs. Washington consistently called A.P. "M." instead of "A." and treated her as if she were a boy. (SAC¶32). A.P. did not correct Mrs. Washington because A.P. believed that she is supposed to respect adult authority figures and correction would be disrespectful. (SAC¶32). Mrs. Washington promised A.P. that she would not tell her parents,

---

[1]    Defendants say that Plaintiffs are contradicting themselves to avoid dismissal and call it "troubling gamesmanship." (MTDp.3n.2). Plaintiffs will not reciprocate with unprofessional hyperbole, but will merely state that, in keeping with the Court's direction at oral argument they have included additional facts learned since the FAC was filed.

which created a conflict for A.P. because it meant keeping secrets from her parents in violation of her sincerely held religious beliefs. (SAC ¶34).[2]

Mrs. Washington's promise of confidentiality did not extend beyond A.P.'s parents as she, without permission, called A.P. "M" in front of her peers. A.P. had not told anyone else at school about the male name that Mrs. Washington was using.[3] (SAC¶¶39-40,43). That exacerbated the bullying, which A.P. again reported to Mrs. Washington, telling her that it had increased after Mrs. Washington used the male name in front of A.P.'s peers. However, again, Mrs. Washington did not report it to the administration or the Perezes. (SAC¶¶44-45). A.P. became increasingly distressed about being coerced into living a secret double life. A.P. felt that Mrs. Washington had total control over A.P.'s life at school and that she had no recourse. (SAC¶48). The distress continued to escalate until A.P. tried to commit suicide twice at school. (SAC¶54). Only after A.P.'s second attempt at suicide were the Perezes notified. They arrived as A.P. was being placed into a police car alone to be involuntarily committed to psychiatric care. (SAC¶¶58,61-62). When

---

[2]    Defendants claim there was no conflict because "A.P. was never coached, counseled, or prohibited from disclosing her male identity to her parents." (MTD p.3,n3). Those facts are not alleged in the SAC and must be disregarded.

[3]    Defendants claim that allegation is "materially false" because "Plaintiffs know" that one of A.P.'s peers used "M" to refer to A.P. when reporting the suicide attempt. There are so such facts alleged in the SAC and no evidence that Plaintiffs knew anything about the reporting of the suicide attempt. These extraneous, unsupported facts must be disregarded by the Court.

questioned as to why the parents were never notified, Mrs. Washington said it was because of the family's Catholic faith. Assistant Principal Schumacher said "confidentiality issues" prohibited District personnel from notifying parents. (SAC¶¶63,69). Conversations with school staff confirmed for the Perezes that the District had implemented a *De Facto* Policy which required that parents not be told about their child's gender identity issues unless the child agreed. (SAC¶¶74,76-78). That *De Facto* Policy was incorporated into Policy 1.15, adopted on August 4, 2022, which continues to provide that parents will not be notified about their child's gender identity if the child objects to disclosure. (SAC¶¶98-100).

## LEGAL ARGUMENT
### I.  The SAC Alleges Violations of Substantive Due Process Rights.
#### A. The SAC Alleges Violations of Fundamental Rights.

When a child raises issues related to their gender identity, as with any issue that deals with their upbringing, health and well-being, it is the parents' fundamental constitutional right to make the decisions related to such issues. *Troxel v. Granville*, 530 U.S. 57, 68 (2000), *Parham v. J. R.*, 442 U.S. 584, 604 (1979). It is the parents, not public schools, that "retain a substantial, if not the dominant, role in medical and mental health care decisions for their children, absent a finding of neglect or abuse." *Parham,* 442 U.S. at 604. If the parent is fit and there are no allegations of neglect or abuse, then courts should apply the traditional presumption that parents act in the best interests of their

children. *Id*. The Supreme Court has called parental rights "perhaps the oldest of the fundamental liberty interests." *Troxel*, 530 U.S. at 65.

It is axiomatic that parents cannot make decisions related to the upbringing and mental health of their child if they do not have the information necessary to know that there is an issue that needs the parents' attention. Concealing that information from parents, as Defendants did here, vitiates the parents' ability to make the decisions it is their right to make. *See Arnold v. Bd. of Educ. of Escambia County*, 880 F.2d 305, 313-314 (11th Cir.1989) (citing *Parham*, 442 U.S. at 602). Depriving parents of information regarding their children's physical, mental, and emotional health *ipso facto* deprives them of the ability to make decisions and "of the opportunity to counter influences on the child the parents find inimical to their religious beliefs or the values they wish instilled in their children." *Id.* at 313.

Nevertheless, Defendants insist that the allegations of violation of fundamental parental rights are "conclusory boilerplate alleging violations of **non-existent** duties and constitutional obligations." (MTD p.13) (emphasis added). Defendants' pejorative rhetoric cannot and does not substitute for sound legal argument showing that Plaintiffs have failed to state plausible claims for substantive due process violations. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Defendants fail to make such an argument.

Accepting as true the allegations of the SAC and construing them in favor of Plaintiffs reveals that Defendants intentionally concealed from Plaintiffs information related to A.P.'s distress regarding her sex and incidents of bullying. (SAC¶¶26,34,44,45). By depriving Mr. and Mrs. Perez of that information, Defendants interfered with the Perezes' ability to exercise their fundamental right to direct A.P.'s upbringing, including making important decisions regarding her mental health and emotional wellbeing. *Arnold,* 880 F.2d at 313-14, *Parham*, 442 U.S. at 602. As the Kansas district court said regarding a similar concealment policy, "it is illegitimate to conceal information from parents for the purpose of frustrating their ability to exercise a fundamental right." *Ricard v. USD 475 Geary Cnty., Kan. Sch. Bd.*, 2022 WL 1471372, at *8, n.12 (D. Kan. May 9, 2022). The *Ricard* court further said:

> [I]t is difficult to envision why a school would even claim-much less how a school could establish-a generalized interest in withholding or concealing from the parents of minor children information fundamental to their identity, personhood, and mental and emotional wellbeing such as their preferred name and pronouns.

*Id.* That is especially true in this case, where Mrs. Washington's unsolicited promise not to tell Mr. and Mrs. Perez about A.P.'s distress about her sex, even in the face of increased peer harassment, violated the District's adopted guidance stating that children "are not legally entitled to confidentiality…their parents have this right." (SAC¶¶ 71-72). In light of that guidance, Mrs. Washington's promise not to tell Mr. and Mrs. Perez (SAC¶34) and Mrs.

Schumacher's statement that "confidentiality issues" prohibited District personnel from notifying parents (SAC¶69) raise a more than plausible claim that Defendants were concealing information from Mr. and Mrs. Perez "for the purpose of frustrating their ability to exercise a fundamental right." *Ricard,* 2022 WL 1471372, at \*8. This is not merely a "cognizable" right, but "perhaps the oldest of the fundamental liberty interests." *Troxel*, 530 U.S. at 65.

### B. *"Shocks the Conscience" Does Not Apply.*
#### 1. *Claims Involving Violation of Fundamental Rights do not Require "Conscience-shocking" Conduct.*

Supreme Court and Eleventh Circuit precedents provide that the "shocks the conscience" standard is used only "when a fundamental liberty interest does not exist." *Chavez v. Martinez,* 538 U.S. 760, 775-76 (2003); *Waldman v. Comm'r,* 871 F.3d 1283, 1292 (11th Cir. 2017). Since Plaintiffs are alleging violations of "perhaps the oldest of the fundamental liberty interests," *Troxel*, 530 U.S. at 65, the "shocks the conscience" standard does not apply.

In *Chavez,* the Supreme Court affirmed that substantive due process protects fundamental rights from deprivation by the government unless the government can satisfy strict scrutiny and provides relief from "egregious official conduct," *i.e.,* conduct that "shocks the conscience," that infringes a non-fundamental liberty interest. 538 U.S. at 775-76. After finding that the questioning of the plaintiff was not conscience-shocking, the *Chavez* Court said:

> [T]he Due Process Clause also protects certain 'fundamental liberty interest[s]' from deprivation by the government, regardless of the procedures provided, unless the infringement is narrowly tailored to serve a compelling state interest. *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997). Only fundamental rights and liberties which are "`deeply rooted in this Nation's history and tradition'" and "`implicit in the concept of ordered liberty'" qualify for such protection.

*Id.* at 774-775. *Chavez* is significant because it was decided **after** *County of Sacramento v. Lewis*, 523 U.S. 833, 845–46 (1998). Defendants and some district courts, including the court in *Littlejohn v. School Board of Leon County* Case No. 4:21cv 415, 2022WL 18670372, *13-14 (N.D. Fla. Dec. 22, 2022), mistakenly claim that *County of Sacramento* concluded that the "shock the conscience" standard must be applied to **all** substantive due process claims.

*Waldman* was also decided after *County of Sacramento* and did not adopt Defendants' concept that **all** substantive due process claims must satisfy the "shocks the conscience" standard. Instead, the *Waldman* Court continued to follow the standard set forth in *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (*en banc*), that "shock the conscience" is "(a)n **alternate substantive due process test**" used in the absence of "rights that are 'implicit in the concept of ordered liberty.'" *Waldman,* 871 F.3d at 1292 (citing *McKinney*) "Where a fundamental liberty interest **does not exist**, substantive due process nonetheless protects against the arbitrary and oppressive exercise of government power," which is measured by whether conduct shocks the conscience. *Waldman,* 871 F.3d at 1292 (emphasis added).

8

Consequently, when, as is true here, Plaintiffs allege fundamental rights have been infringed they do not have to allege "conscience-shocking" conduct to state a claim for substantive due process violations. *See Waldman*, 871 F.3d at 1292. Instead, the burden is on the Defendants to demonstrate that their actions were narrowly tailored to serve a compelling state interest. *Id.*

### 2. Student vs. Teacher Tort Claims Do Not Require Shocks the Conscience Analysis for Plaintiffs' Claims.

Defendants' citation to cases brought by and on behalf of students arising out of tortious conduct by school staff does not change the conclusion that Plaintiffs are not required to allege conscience-shocking conduct to state a claim for violation of fundamental parental rights. *Neal v. Fulton County. Bd. of Educ.* 229 F.3d 1069 (11th Cir. 2000); *Kirkland v. Greene County Bd. of Educ.*, 347 F.3d 903 (11th Cir. 2003); *Dacosta v. Nwachukwa*, 304 F.3d 1045 (11th Cir. 2002); *Nix v. Franklin County School Dist.* 311 F.3d 1373 (11th Cir. 2002); *Davis v. Carter*, 555 F.3d 979 (11th Cir. 2009); *K.W. v. Lee Cnty. Sch. Bd.*, 67 F. Supp. 3d 1330 (M.D. Fla. 2014). Because those cases did not allege violation of fundamental rights, the plaintiffs had to satisfy "shock the conscience." *McKinney*, 20 F.3d at 1556 n.7; *Waldman*, 871 F.3d at 1292. That is not the case here.

In *Neal* and *Kirkland,* the Eleventh Circuit found the "shocks the conscience" standard was satisfied by allegations that a coach deliberately hit

9

a student with a metal lock and a teacher struck a student with a metal cane as corporal punishment, respectively. *Neal,* 229 F.3d at 1075, *Kirkland,* 347 F.3d at 904–05. By contrast, allegations that coaches' intense workouts and a teacher's use of a live wire in a classroom demonstration led to the death of plaintiffs' sons did not "shock the conscience" sufficient to state a substantive due process claims in *Davis,* 555 F.3d at 984, and *Nix,* 11 F.3d at 1378-79, respectively. Similarly, allegations that school staff were deliberately indifferent to a disabled student's injury did not satisfy the "shocks the conscience" standard to state a claim on behalf of the student. *K.W.,* 67 F. Supp. 3d at 1338–39.

In *Dacosta*, the Court held that a college student did not allege violation of a fundamental right and therefore had to, and failed to, allege conscience-shocking conduct in a suit arising from an assault by a professor. 304 F.3d at 1048. "Conduct by a government actor that would amount to an intentional tort under state law would only rise to the level of a substantive due process violation if it 'shocks the conscience' **or interferes with rights 'implicit in the concept of ordered liberty'**— in other words, if it affects individual rights guaranteed, explicitly or implicitly, by the Constitution itself." *Id.* (emphasis added) (citations omitted).

By contrast, in *Arnold,* which, as is the case here, alleged that school officials violated **fundamental parental rights** by, *inter alia*, deliberately

10

concealing information from parents regarding critical issues related to their children's well-being, the Eleventh Circuit did not apply the "shocks the conscience" test. 880 F.2d at 313-14. Instead, in keeping with *McKinney* and *Waldman,* the Eleventh Circuit determined that school counselors' actions of concealing information from parents infringed their fundamental rights by unduly interfering with "parental authority in the household and with the parental responsibility to direct the rearing of their child." *Id.* at 313-14. The same is true here.[4]

The non-school parental rights case cited by the Defendants, *Maddox v. Stephens*, 727 F.3d 1109 (11th Cir. 2013), also does not support Defendants' proposition, since it was a qualified immunity case. The Eleventh Circuit alluded to the standard for substantive due process claims, including the "shock the conscience" standard from *County of Sacramento,* 523 U.S. at 845–46. *Id.* at 1119. However, the Court did not determine whether defendants had violated plaintiff's substantive due process rights. *Id.* at 1120. "Even **if we were to find that Stephens violated Maddox's constitutional rights**, Stephens is not liable if she is protected by qualified immunity." *Id.* (emphasis added). Since the *Maddox* Court did not analyze whether the plaintiff had

---

[4]     The court in *Littlejohn* refused to consider *Arnold* based on its mistaken conclusion that *County of Sacramento* established that ***all*** substantive due process cases must satisfy "shocks the conscience" 2022 WL 18670372, *13-14. Since that is not true, this Court should not rely upon *Littlejohn,* now pending before the 11th Circuit Court of Appeals, in its analysis.

stated a viable claim for violation of substantive due process, it cannot be used to support the proposition that Plaintiffs here failed to state a claim.[5]

## II. Individual Defendants Are Not Entitled To Qualified Immunity.
### A. *Defendants do not show they were engaged in discretionary functions.*

Defendants cannot receive the benefit of qualified immunity unless they first show, not just assert, that they were engaged in a "discretionary function" when they performed the acts of which the Plaintiffs complain. *Holloman v. Harland*, 370 F.3d 1252, 1263-64 (11th Cir. 2004). They must show "whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Id.* at 1266. Defendants must show "objective circumstances which would compel the conclusion that [their] actions were undertaken pursuant to the performance of [their] duties and within the scope of [their] authority." *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991). Defendants do not offer a single objective circumstance showing their actions were within their scope of authority. Instead, they merely opine that there is no dispute. (MTD, p. 19). That does not satisfy their threshold burden.

---

[5]    The Eleventh Circuit has also followed Supreme Court precedent in differentiating between "executive" and "legislative" actions, only the former of which are subject to the "shocks the conscience" test. *County of Sacramento* 523 U.S. at 845–46; *McKinney,* 20 F.3d at 1557, *Lewis v. Brown,* 409 F.3d 1271, 1273 (11th Cir. 2005). Legislative acts generally apply to a larger segment of — if not all of — society, such as school district policies. *Id.* (citing *Harrah Ind. School Dist. v. Martin*, 440 U.S. 194, 198-99 (1979)).

The objective circumstances presented in Plaintiffs' allegations place the question of whether Mr. Broskie and Mrs. Washington were acting within the scope of their authority in dispute. As Superintendent, Mr. Broskie has the duty to oversee the implementation and enforcement of ALL state statutes related to schools, including the Parents' Bill of Rights of 2021 ("Parents' BOR"). (SAC¶14). However, Mr. Broskie did not take the necessary measures including a parental notification policy, to enforce that law,. (SAC¶¶94, 97, 98).

District Policy 1.11 requires that "all District faculty and staff to report any allegations of bullying or violations of the policy to the appropriate District administrators," that the reports be investigated, and parents notified within 24 hours. (SAC¶¶83-84). A.P. made reports of bullying to Mrs. Washington, but she did not report to administrators or notify Mr. and Mrs. Perez. (SAC¶¶ 85-88). District policy also provides that parents, not children have a right of confidentiality. (SAC¶¶71-72). Mrs. Washington promised confidentiality to A.P. and Mrs. Schumacher stated that A.P. by law had a right to confidentiality. (SAC¶¶34,69). Making statements and taking actions contrary to District policy places in dispute whether Mrs. Washington was acting within the scope of her authority and whether Mr. Broskie was acting in accordance with his duties. Absent objective proof that the Defendants were acting within their discretionary authority, they are ineligible for qualified immunity. *Lee v. Ferraro,* 284 F.3d 1188, 1194 (11th Cir. 2002).

13

### B. *Defendants Violated Clearly Established Rights.*

Even if the individual Defendants met their burden of proving discretionary function, they would not be entitled to qualified immunity since Plaintiffs' right to direct the upbringing and protect the mental and emotional wellbeing of their children, including receiving the information necessary to exercise the right, was clearly established in 2021. *Maddox*, 727 F.3d at 1120. Defendants' contentions that statutory provisions are wholly irrelevant to Plaintiffs' claims (MTD, pp. 7-8) notwithstanding, a right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Id.* Plaintiffs' right to direct the upbringing and protect the wellbeing of their children, including receiving the information necessary to make decisions necessary to exercise the right is clearly established in case law and in statements of principle in the Constitution, case law, and Florida statutes, satisfying parts 1 and 2 of the *Maddox* definition. The relevant, dispositive inquiry is whether it would be clear to a reasonable state official that his or her conduct was unlawful in the subject situation, not as a broad general proposition. *Id.* at 1121. In the context of this case, long-standing Supreme

14

Court and Eleventh Circuit opinions and the Parents' BOR, which incorporated the constitutional principles in those opinions, leave no doubt that it is unlawful for a school official to conceal from parents that their child is being socially transitioned. At the time that Defendants interacted with Plaintiffs' daughter in 2021, it had been clearly established in the Eleventh Circuit for more than 30 years that school officials violate parents' fundamental rights to direct their children's upbringing when they direct that parents not be informed about medical and mental health issues regarding their children. *Arnold*, 880 F.2d at 313-14. That clearly established right is in turn based on constitutional rights that have been clearly established by the Supreme Court for nearly 100 years, *Pierce v. Society of Sisters*, 268 U.S. 510 (1925).

Furthermore, as of July 1, 2021, Florida law specifically incorporates the constitutional rights described in *Pierce, Troxel, Parham* and *Arnold* and defines them as fundamental. Fla. Stat. §§ 1014.02-1014.04. Government entities "may not infringe on the fundamental rights of a parent to direct the upbringing, education, health care, and mental health of his or her minor child" without satisfying strict scrutiny. Fla. Stat. §1014.03. Fla. Stat. §1014.02 makes it abundantly clear that:

> [I]mportant information relating to a minor child should not be withheld, either inadvertently or purposefully, from his or her parent, including information relating to the minor child's health, well-being, and education, while the minor child is in the custody of the school district.

Every objectively reasonable official standing in Defendants' place viewing long-standing federal precedent incorporated into state law would be on notice that what they were doing "would be clearly unlawful given the circumstances," thereby vitiating qualified immunity. *Pace v. Capobianco*, 283 F.3d 1275, 1282 (11th Cir. 2002).

### III.    The SAC Sufficiently Alleges Free Exercise Violations

Plaintiffs have alleged that Mrs. Washington's conduct significantly impacted their rights to act concerning their child according to their sincerely held religious beliefs. (SAC¶¶ 64-166, 172-176). Therefore, they have satisfied the requirements for pleading a claim for relief under the Free Exercise Clause of the U.S. Constitution. *Cambridge Christian Sch. v. Fla. High Sch. Athletic Ass'n* 942 F.3d 1215, 1246 (11th Cir. 2019). The pleading requirement has two components: "(1) the plaintiff holds a belief, not a preference, that is sincerely held and religious in nature, not merely secular; and (2) the law at issue in some way impacts the plaintiff's ability to either hold that belief **or act pursuant to that belief.**" *Id.* (emphasis added).

Defendants wrongly conclude that "Nothing in Plaintiffs' Complaint can be fairly read as an unconstitutional burden on their ability to freely exercise their faith." (MTD p. 20). Defendants claim "freely exercise" is limited to "expressing, exercising, practicing, or speaking about their beliefs." (MTD p.

16

20). However, as the Eleventh Circuit said in *Cambridge Christian,* free exercise has not been so limited by the Supreme Court. 942 F.3d at 1248. "[T]he 'exercise of religion' involves 'not only belief and profession but the performance of (or abstention from) physical acts' that are 'engaged in for religious reasons.'" *Id.* Therefore, the state infringes free exercise rights not only when it interferes with religious speech or practice, but also when it impacts the plaintiffs' ability to act according to their beliefs. *Id.* at 1246. That is what Plaintiffs have alleged.

Plaintiffs allege that Mrs. Washington's conduct "prevented Mr. and Mrs. Perez from acting pursuant to their sincerely held religious beliefs by denying them the information they needed to counsel A.P. regarding conflicts about her sex and responding to the bullying in a manner consistent with their faith." (SAC¶162). Plaintiffs also allege that Mrs. Washington's actions prevented A.P. from acting according to her sincerely held beliefs:

> Mrs. Washington's actions in promising, without a prompting from A.P., that she would not tell A.P.'s parents about the private meetings and her treatment of A.P. as a boy with a male name substantially burdened A.P.'s free exercise of her sincerely held religious beliefs. Mrs. Washington's actions communicated to A.P. that she need not respect her parents' authority or seek their permission to make consequential decisions, which violates A.P.'s beliefs that children are to respect their parents' decisions regarding the child's health and well-being.

17

(SAC ¶174; *see also,* SAC¶¶173, 175, 176). Accepting those allegations as true yields the inescapable conclusion that Plaintiffs have sufficiently alleged violations of their Free Exercise rights. *Cambridge Christian,* 942 F.3d at 1246.

## IV.  The SAC Sufficiently Alleges A Procedural Due Process Claim.

Plaintiffs have satisfied the two-part test for a procedural due process claim, "whether there exists a liberty or property interest of which a person has been deprived, and if so … whether the procedures followed by the State were constitutionally sufficient." *Schultz v. Alabama*, 42 F.4th 1298, 1332 (11th Cir. 2022). Plaintiffs have alleged they have been deprived of the fundamental liberty interest in directing the upbringing of their children. *Troxel*, 530 U.S. at 65, *Arnold,* 880 F.2d at 313-314. *See supra,* Section IA. By design Defendants' policies provided **no** mechanism to give the Perezes notice regarding issues affecting A.P.'s health and well-being. (SAC§184).

By intentionally having no procedures in place to provide notice and an opportunity to be heard about District actions affecting A.P.'s upbringing, Defendants have "foreclosed [Plaintiffs'] ability to take advantage of it and thus extinguished the right." *Zisser v. Bar*, 747 F. Supp. 2d 1303, 1322 (M.D. Fla. 2010).

## V.  The Official Capacity Claim for Broskie Is Not Duplicative.

Superintendent Broskie is not an agent of the School Board, nor of a non-existent "Office of the Superintendent." (MTD p.5). He is a directly elected

18

constitutional officer on par with, not subject to, the directly elected school board. He is a state "agency" for liability purposes and a co-employer with the Board. *School Bd. of Orange County v. Coffey*, 524 So. 2d 1052, 1054 (Fla. 5th DCA 1988); *Hollis v. School Bd. of Leon County*, 384 So. 2d 661, 664 (Fla. 1st DCA 1980). The official capacity claim against Mr. Broskie is neither improper nor "unnecessarily duplicative of the claim against the Board." (MTD p.6).

## VI.  The SAC Sufficiently Alleges School Board Liability.

The Board is responsible under Section 1983 if execution of a policy or custom, whether made by the Board or Mr. Broskie, whose acts represent official policy (SAC¶14), inflicts a constitutional injury. *Monell v. NYC Dept. of Social Servs.*, 436 U.S. 658, 694 (1978). Liability can attach if the constitutional deprivations occur as result of a governmental custom "even though such a custom has not received formal approval through the body's official decision making channels." *See id.* at 690-91. Plaintiffs allege that fundamental parental rights were violated as the result of a custom, the *De Facto* Policy, that was sanctioned by the Board, implemented by Mr. Broskie and provided that staff was to conceal information regarding a child's gender identity from parents unless the child approved. (SAC¶¶69-70,74). District employees told Mr. Perez that they were not permitted to tell him about discussions regarding A.P.'s gender identity. (SAC¶¶69-70, 76-78). The Board adopted Policy 1.15 that incorporated the *DeFacto* Policy. (SAC ¶¶98-99). Policy 1.15 provides that

19

parents will not be notified of their child's gender identity if the child objects, thus continuing to violate fundamental parental rights. (SAC ¶100).

**VII. The Parents Bill of Rights Has an Implied Private Right of Action.**

The Parents' BOR includes an implied private right of action under *Cort v. Ash*, 422 U.S. 66, 80-84 (1975) and *Smith v. Piezo Tech. & Prof'l Adm'rs*, 427 So. 2d 182, 184 (Fla. 1983). Under *Cort,* a private right of action is implied if 1) the statute was enacted for the benefit of a special class of which plaintiff is a member, 2) there is any indication of legislative intent to create a private remedy, and 3) implication of such a remedy is consistent with the underlying purposes of the legislative scheme, 422 U.S at 80-84. Here, the statute was enacted for the benefit of parents, the incorporation of the strict scrutiny standard into Section 1014.03 evinces an intent for judicial review, and a private right of action fulfills the purpose of ceasing state interference with the protection of parents' rights.

Under *Smith*, "A private right of action may be implied from a statutory provision that would serve no useful purpose in the absence of a private right of action." 427 So. 2d at 184. Here the Parents' BOR's recitation of parents' rights vis-a-vis their children will be meaningless if parents cannot take legal action against educators when those rights are violated. Disciplinary action against school employees does not provide any remedy for parents.

20

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.

Dated: July 31, 2023.

*/s/Mary E. McAlister*

Mary E. McAlister (FL Bar No. 0010168)
CHILD & PARENTAL RIGHTS CAMPAIGN, INC.
P.O. Box 637
Monroe, VA 24574
770.448.4525
mmcalister@childparentrights.org

Vernadette R. Broyles (GA Bar No. 593026)*
Ernest G. Trakas (MO Bar 33813)*
CHILD & PARENTAL RIGHTS CAMPAIGN, INC.
5805 State Bridge Rd., Suite G310
Johns Creek, GA 30097
770.448.4525
vbroyles@childparentrights.org

21

## CERTIFICATE OF SERVICE

I certify that on this 31st day of July 2023, a true and correct copy of the foregoing was electronically filed in the U.S. District Court, Middle District of Florida, using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ *Mary E. McAlister*
MARY E. MCALISTER