UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WENDELL PEREZ, individually and
as next friend of A.P., a minor
MARIA PEREZ, individually and
as next friend of A.P, a minor,

      Plaintiffs,

vs.                              CASE NO.:  3:22-cv-00083-TJC-JBT

DAVID BROSKIE, individually,
and in his official capacity as
Superintendent of Clay County
District Schools, JOHN O'BRIAN,
individually, and in his official
capacity as Principal of Paterson
Elementary School, COURTNEY
SCHUMACHER, individually, and
in her official capacity as
Assistant Principal of Paterson
Elementary School, DESTINEY
WASHINGTON, individually and in
her official capacity as counselor
at Paterson Elementary School,
CLAY COUNTY SCHOOL BOARD,

      Defendants.
_____/

**DEFENDANTS' SUPPLEMENTAL BRIEFING**

Defendants, David Broskie, in his official and individual capacities, Destiney Washington, in her individual capacity, and the Clay County School

Board ("Board") (collectively, "Defendants"), hereby file this Supplemental Briefing pursuant to this Court's Order, [D.E. 58], and state:

### I.     *Mahmoud v. Taylor* Has No Applicability to This Matter

Plaintiffs' supplemental briefing argues the recent Supreme Court decision in *Mahmoud v. Taylor*, 145 S. Ct. 2332 (2025), "establishes the viability of Plaintiffs' free exercise claims." [D.E. 59 at p. 3 ("Plaintiffs' Briefing")]. Plaintiffs are wrong, because *Mahmoud* has no applicability to this matter given the degree to which it is distinguishable from the allegations here.

Plaintiffs' Briefing tries to frame *Mahmoud* as being about a prohibition on parental notification "related to staff-student interactions" and "materials that conflicted with parents' sincerely held religious beliefs." *Id.* This misstates the actual facts of *Mahmoud*, which concerned a codified policy in a school district that mandated elementary school students be present when "LGBTQ+-inclusive" books were read as part of the school curriculum. *See* 145 S. Ct. at 2341–42. As part of this codified policy, parents were not given advance notice and were not permitted to opt their children out from classes in which these storybooks would be used. *See id.* When compared to this matter, the distinguishing nature of these two cases becomes apparent.

First, *Mahmoud* concerned a genuine, codified policy. *See id.* at 2343 (discussing the school board's determination and decision "to introduce into the

curriculum what it described as 'LGBTQ+-inclusive texts'"). Here, by contrast Plaintiffs vaguely allude to what they refer to as the "*De Facto* Policy" of the Board. *See* [D.E. 43 at ¶ 74]. But as Defendants' motion to dismiss points out, Plaintiffs have not identified any actual policy of the Board regarding parental notification; they have not done so because they cannot. *See, e.g.*, [D.E. 46 at pp. 4, 7 n.5, 9 n.7]. That is, actions by a guidance counselor and assistant principal do not constitute actual Board policy. *See generally id.* Plaintiffs' efforts at forcing this square peg into *Mahmoud*'s round hole do meet Federal Rule of Civil Procedure 8's pleading bar. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Second, *Mahmoud* concerned purely curricular behavior. *See* 145 S. Ct. at 2343. Here, by contrast, the actions under scrutiny were non-curricular and instead concern A.P.'s meetings with Defendant Washington regarding allegations of bullying and A.P.'s internet searches about self-harm.[1] [D.E. 43 at ¶¶ 23–25]. The nature of these events cannot be overlooked because in *Mahmoud*, the Court framed the storybooks being presented as "moral messages being conveyed by their teachers' *instruction*." 145 S. Ct. at 2353 (emphasis added). Here, there are no allegations—nor could there be—that the nature of Washington's meetings with A.P. were curricular or instructional in nature or occurred under the authority of

---

[1] Which are disputed, but are presumed to be true for the purpose of motion to dismiss analysis.

3

the classroom structure. *Cf. id.* at 2355 (noting the "objective danger" of the storybooks was "only exacerbated by the fact that the books will be presented to young children by authority figures in elementary school classrooms"). The coercive elements in *Mahmoud* that Plaintiffs point to, *e.g.*, Pls. Briefing at pp. 4–7, are thus inapposite here.

Third, Plaintiffs strain to connect the policy in *Mahmoud* regarding parental notification to this case. *See* Pls.' Briefing at p. 3. That is, in *Mahmoud* the parents were explicitly told "that students and families may not choose to opt out of engaging with the storybooks *and that teachers will not send home letters to inform families when inclusive books are read in the future.*" *Mahmoud*, 145 S. Ct. at 2346 (emphasis added). Here, by contrast, there is no allegation that A.P. was precluded, prohibited, or otherwise stopped from informing her parents about her meetings with Washington. There are no claims that these meetings were random or sprung upon A.P. in a manner which prevented her from informing her parents beforehand; indeed, their own allegations make clear these sessions occurred "weekly," [D.E. 43 at ¶ 26], and began sometime shortly after October 2021 and continued for the rest of that semester. *Id.* at ¶¶ 23, 25, 50. As more fully set forth in Defendants' motion to dismiss, there is no element of coercion present here, nor could there be a Federal Rule of Civil Procedure 11 compliant allegation that there was. *See* [D.E. 46 at pp. 10–13].

Fourth, and relatedly, in *Mahmoud* the students were not given the option of being excused or otherwise engaging with the storybooks. 145 S. Ct. at 2346. Here, there are no well-pleaded allegations that A.P. or her parents attempted to end these meetings with Washington and were rebuffed. Plaintiffs allege in conclusory fashion A.P. was "instructed to meet with Mrs. Washington," and that Plaintiffs were not aware these meetings were happening. [D.E. 43 at ¶¶ 25–26]. This is simply not enough because there are no allegations that Plaintiffs had no recourse to the ongoing alleged burdening of their religious beliefs or that Washington took active measures to conceal the meetings from A.P.'s parents. To be clear, the gravamen of the claim here is that neither Washington nor anyone in the school district proactively notified A.P.'s parents. But as more fully briefed in Defendants' motion to dismiss, no such requirement exists.

The parents in *Mahmoud*, in comparison, had no recourse and had their religious exercise actively burdened. 145 S. Ct. at 2342. That is, "[a] government burdens the religious exercise of parents *when it requires them to submit their children to instruction* that poses 'a very real threat of undermining' the religious beliefs and practices that the parents wish to instill." *Id.* (emphasis added) (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 218 (1972)). Here, however, there are no allegations that Defendants' actions—which cannot under any fair reading be characterized as "instruction"—rise to this level, especially so because—as the motion to dismiss

5

points out—*it was A.P. that initiated the conversation with Washington about A.P.'s gender confusion*, and it was A.P. that asked if she could be seen as a boy and supplied a boy's name to Washington, all while A.P. willingly chose to not divulge this information to her parents. *See* [D.E. 43 at ¶¶ 27–34]; *see also* [D.E. 46 at p. 20]. There are no allegations that A.P. informed Washington she opposed anything Washington told her, or that, conversely, Washington prohibited A.P. from informing A.P. about their meetings or the substance of what was discussed at those meetings (or, indeed, that Washington was even aware A.P. had failed to inform her parents of these meetings). Again, the absence of any allegations of coercion is dispositive.

In sum, *Mahmoud* is drastically different from the allegations here. A case concerning formal school board policy—not stray remarks by an administrator Plaintiffs attempt to impermissibly codify into policy—that mandates students receive instruction—rather than guidance counseling sessions not conducted in a classroom setting—with no advance notice or ability to opt out—as opposed to weekly sessions wherein the student was in no way prevented from informing her parents in advance so as to be excused from them—is a poor fit for these allegations. The observation by the Supreme Court that "a government cannot condition the benefit of free public education on parents' acceptance of such instruction" if it burdens their religious exercise, *Mahmoud*, 143 S. Ct. at 2342, does

6

not change Plaintiffs' allegations or transform their free exercise claims into something they are not. *Mahmoud* is of no aid, and Plaintiffs' First Amendment claims should be dismissed. *See* [D.E. 46 at pp. 19–21].

## II. *Littlejohn v. School Board of Leon County* Squarely Forecloses Plaintiffs' Substantive Due Process Claims

Plaintiffs' Supplemental Briefing contorts itself in an effort to avoid the clear and obvious result from *Littlejohn*: "'[e]xecutive' action violates a plaintiff's substantive due-process rights—even if the right involved is a fundamental one—if the action 'shocks the conscience.'" *Littlejohn v. Sch. Bd. of Leon Cnty.*, 132 F.4th 1232, 1239 (11th Cir. 2025). Plaintiffs' efforts to avoid this result are unpersuasive.

Plaintiffs' argue that *Littlejohn* should not be considered binding precedent and should not be considered dispositive. Pls.' Briefing at p. 10. As a threshold matter, it is axiomatic that this Court is bound by decisions of the Eleventh Circuit. *Mcginley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004). This is true even if there is a circuit split. *Springer v. Wal-Mart Assocs.' Grp. Health Plan*, 908 F.2d 897, 900 n.1 (11th Cir. 1990). Any argument to the contrary is entirely meritless and Plaintiffs have no good faith basis to avoid application of *Littlejohn* to this matter.

And despite Plaintiffs' protestations, *Littlejohn* is applicable, binding, and dispositive.[2] That case, like this one, involved allegations that "[a school board] and its officials violated [the Littlejohns'] parental due-process rights when the officials met with and permitted the Littlejohns' thirteen-year-old child to express the child's gender identity at school," through development of a "gender-identity-related" plan "for and with the child without the Littlejohns' involvement and contrary to the Littlejohns' wishes." *Littlejohn*, 132 F.4th at 1235; *see, e.g.*, [D.E. 43 at ¶¶ 2 ("Through implementation of a protocol and practice of concealing information from parents related to their children's gender identity, Defendants exceeded the bounds of legitimate pedagogical concerns and violated Mr. and Mrs. Perez's fundamental right to direct the upbringing of and make medical and mental health decisions for A.P. Defendants' actions also violated Mr. and Mrs. Perez's and A.P.'s fundamental right to preserve familial privacy."), 111 ("Defendant School Board violated Mr. and Mrs. Perez's fundamental constitutional right to direct the upbringing of their child, including the right to make mental health care decisions, by sanctioning the development and implementation of the De Facto Policy which directed District staff to conceal from parents information related to their children's health and well-being, including in

---

[2] Indeed, Plaintiffs seem to overlook the fact the very reason this matter was administratively closed for over a year was precisely so the Court and Parties could await the Eleventh Circuit's decision in *Littlejohn*. [D.E. 52].

8

Plaintiffs' case, their daughters' conflicts regarding her sex, unless the minor child approves.")]; *see also id.* at ¶¶ 129, 145, 149.

Despite these obvious similarities and overlap, Plaintiffs urge this Court to treat the complained-of actions here not as executive, but as legislative in nature, in order to avoid the "shocks the conscience" test. *See* Pls.' Briefing at pp. 11–12. Plaintiffs point to the alleged "*De Facto* Policy"—the existence of which, Defendants again stress, is not supported by any well-pleaded allegations[3]—and claim this means the actions here were legislative in nature. Plaintiffs are, once more, clearly incorrect. If their arguments were fully credited, *any administrator*, regardless of rank or position within the government could define policy for the agency. This is not the law.

A closer examination of Plaintiffs' own allegations show the actions they are challenging are executive, i.e., they apply only to a limited number of persons and typically arise from the ministerial or administrative activities of members of the executive branch. *Littlejohn*, 132 F.4th at 1242 (citation omitted). Legislative actions, on the other hand, generally apply to a larger segment of (if not all) society, with laws and broad-ranging executive regulations as the most common examples. *Id.*

---

[3] Tellingly, Plaintiffs' own citation for the existence of this supposed 'policy' merely refers to comments by an assistant principal. *See* Pls. Briefing at p. 12 (citing [D.E. 43 at ¶ 74]). There is no support for the position that an assistant principal is the final policymaker for the school, much less the entire Board.

"For example, a school board rule of general applicability is legislative action. But an administrative decision that affects only a limited class of persons is a textbook executive act." *Id.* (citation modified).

Here, the actions were clearly executive: they only affected A.P., were ministerial or administrative in nature, and were taken by members of the executive branch—indeed, Plaintiffs have named the Board's superintendent as a Defendant, an individual Florida courts recognize as "the chief executive officer of the school board and the chief administrator within the school district." *Greene v. Sch. Bd. of Hamilton Cnty.*, 444 So. 2d 500, 501 (Fla. 1st DCA 1984). Defendant Washington is likewise not a member of the Board; rather, as a Board employee she was clearly acting in a ministerial or administrative capacity when providing guidance counseling to A.P.[4]

There are no allegations of any legislative action *by the Board*—which is the legislative body for the school district, §§ 1001.41, 1001.42, Fla. Stat.—the opposite in fact *as Plaintiffs admit* the Board's actual policy explicitly stated students are not entitled to confidentiality and that parents are to have access to information about their children. *See* [D.E. 43 at ¶ 72]. Even if an employee misperceives the policy,

---

[4] To be clear, the description of Defendants Broskie and Washington's actions here as ministerial or administrative speak only to the distinction of their actions as executive versus legislative. They are not—and should not be construed as—an admission that these Defendants were not acting within their discretionary authority for qualified immunity purposes. They were.

an erroneous comment by one without authority to define Board policy does not supersede or supplant the explicit Board policy. This is particularly true where, as here, there are no factually-supported allegations of a custom, pattern, or practice that differs from the Board's official policy. Plaintiffs' claim of a "*De Facto* Policy" is therefore unsupported as a matter of fact and law.

Simply put, Plaintiffs—represented by the same counsel as the Littlejohns, *see Littlejohn*, 132 F.4th at 1234—cannot change their pleading into one it is not merely because they are dissatisfied with the Eleventh Circuit's decision. Nor can they disregard—as they argue here—*Littlejohn's* dispositive effect. The comments by an assistant principal—who is not a member of the Board, nor even the final decisionmaker at her school, § 1001.32(4), Fla. Stat.—cannot will into existence a legislative policy to undergird what are clearly alleged to be executive acts.[5] That means the test to be applied is shocks the conscience. *Littlejohn*, 132 F.4th at 1243. The next question is whether these actions shocked the conscience. Just as in *Littlejohn*, "[t]hey did not." *Id.*

---

[5] And as Defendants' motion to dismiss notes, it is well-settled that the Board, not the superintendent, has final decision-making authority, *see Johnson v. Dade Cty. Pub. Sch.*, No. 91-2952-CIV-DAVIS, 1992 WL 466902, at *4 (S.D. Fla. 1992), and an official policy "includes the decisions of a government's lawmakers [and] the acts of its policymaking officials." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Again, there is no credible argument that a guidance counselor or assistant principal are final policymakers for a school board.

To be clear, the allegations here are even more attenuated than those considered in *Littlejohn*. As observed in that case, only the most egregious conduct will shock the conscience. *Id.* As argued in Defendants' motion to dismiss, Plaintiffs have not cleared this high bar. *See* [D.E. 46 at pp. 13–15]. Plaintiffs try to distinguish (and avoid) *Littlejohn*—a materially identical case—by arguing that because A.P. attempted suicide and was "disturbed" by the content of Washington's conversations, it reaches this standard. Pls.' Briefing at pp. 12–13. But Plaintiffs overlook the fact that the Eleventh Circuit has generally only found conscience-shocking behavior in educational settings in the most extreme circumstances, and usually when corporal punishment was involved. *See Neal ex re. Neal v. Fulton Cnty. Bd. of Educ.*, 229 F.3d 1069, 1075–77 (11th Cir. 2000); *see also Littlejohn*, 132 F.4th at 1244 ("[S]ince *Neal*, we have repeatedly rejected claims of 'conscience-shocking' conduct in educational settings.").

Indeed, even "when a student died from electric shock," or following "a student's death, this time following an 'intense' football practice," the Eleventh Circuit "did not find a substantive-due-process violation." *Littlejohn*, 132 F.4th at 1244 (citations omitted); *see also Wyke v. Polk Cnty. Sch. Bd.*, 129 F.3d 560, 569–70 (11th Cir. 1997). "Taken together, [Eleventh Circuit] precedent impose[s] a high bar: even where a student *dies*, school officials' behavior does not 'shock the

conscience' if it is no more than reckless or deliberately indifferent." *Littlejohn*, 132 F.4th at 1245.

Nothing compels a different finding here given that, like the child in *Littlejohn*:

> [A.P.] was not physically harmed, much less permanently so. Defendants did not remove [A.P.] from [Plaintiffs'] custody. And Defendants did not force [A.P.] to [continue counseling sessions with Washington,] to not invite [Plaintiffs] to th[ose] meeting[s], or to socially transition at school. In fact, Defendants did not force [A.P.] to do anything at all. And perhaps most importantly, Defendants did not act with intent to injure. To the contrary, they sought to help the child. Under these circumstances, even if [Plaintiffs] felt that Defendants' efforts to help [A.P.] were misguided or wrong, the mere fact that the school officials acted contrary to [Plaintiffs'] wishes does not mean that their conduct 'shocks the conscience' in a constitutional sense.

*Id.*

Plaintiffs, perhaps recognizing the fatal nature of *Littlejohn*, instead ask this Court to apply "an alternative framework" from the First Circuit Court of Appeals.[6] Pls. Briefing at p. 13 (citing *Foote v. Ludlow Sch. Comm.*, 128 F.4th 336 (1st Cir. 2025)). Plaintiffs' problem is the Eleventh Circuit "reach[ed] a different conclusion than the First Circuit did when it determined a similar school-gender-identity policy was legislative action." *Littlejohn*, 132 F.4th at 1243 n.8. And this is

---

[6] The troubling nature of Plaintiffs' request in an effort to avoid binding precedent is compounded by the fact the Eleventh Circuit denied the Littlejohns' petition for rehearing en banc. Thus, *Littlejohn*—and its reiteration of the continued vitality of the "shocks the conscience" standard—is the law of this circuit.

13

because, in *Foote*, "the Protocol was itself the 'chief target of the Parents' complaint.'" *Id.* (quoting *Foote*, 128 F.4th at 347). "The focus of the parents' challenge in *Foote* was a more characteristically legislative act—a general policy and its routine applications—not, as we see it here, a more characteristically executive act—the specific application of a general policy to one person." *Id.* Just so here, where even accepting that Plaintiffs have offered up an actual Board policy—they have not—they have instead challenged "the specific application of a general policy to one person," A.P.[7] *Id.*

Plaintiffs incorrectly claim they "have styled their Complaint to challenge Defendants' conduct as legislative." Pls.' Briefing at p. 14. They have not; rather they challenge discrete actions by executive officials of the Board as specifically applied to their daughter A.P. Plaintiffs cannot recast their pleading into a more favorable light to stave off dismissal, any more than they can ask this Court to ignore binding Eleventh Circuit precedent in favor of more favorable out-of-circuit precedent.[8] *Springer*, 908 F.2d at 900 n.1. Plaintiffs have not and, under these

---

[7] Further making *Foote* inapplicable is the Eleventh Circuit's precedent "does not appear to take as narrow a view of executive action as does the First circuit." *Littlejohn*, 132 F.4th at 1243 n.8.

[8] The fact a petition for writ of certiorari is pending on the purported circuit split between *Littlejohn* and *Foote* is likewise of no aid, especially because by Plaintiffs' own admission, "the split with *Littlejohn* regarding 'shocks the conscience' is not part of that petition." Pls.' Briefing at p. 2 n.1.

allegations cannot, state a claim for a violation of their substantive due process rights. These claims should be dismissed with prejudice.

### III. The Individual Capacity Suits Are Clearly Barred by Qualified Immunity, Regardless of the Relief Sought

Plaintiffs' final point in their Briefing contends that *Mahmoud*—which, as argued above, is distinguishable and inapplicable—allegedly "memorialized and clarified fundamental parental rights in the school context," such that the individual Defendants should be denied qualified immunity. Pls.' Briefing at p. 15. Plaintiffs' argument is meritless.

That is, even assuming *Mahmoud* "memorialized and clarified" some clearly established right(s) relevant here—which it does not—it cannot be that a Supreme Court decision on novel facts from June 2025 is sufficient to retroactively place the individual Defendants on notice their conduct violated A.P.'s constitutional rights in the 2021–2022 school year. *See Groover v. Polk Cnty. Bd. of Cnty. Comm'rs*, 460 F. Supp. 3d 1242, 1255 (M.D. Fla. 2020) ("Plaintiffs must show that the constitutional right was 'clearly established' *at the time of the alleged misconduct*." (emphasis added)); *see also Perez v. Suszcynski*, 809 F.3d 1213, 1222 (11th Cir. 2016) (finding right in question was identified as early as 1985 and thus was clearly established by time of shooting that occurred in 2012). This argument, like the one urging this Court to ignore *Littlejohn's* binding precedent in favor of the First Circuit's approach, fails to comply with Rule 11.

Plaintiffs try to paint *Mahmoud* as merely an extension of *Yoder*, but the factual differences between the two—the former involving parents' rights to opt their children out of mandatory curricular instruction involving LGBTQ+-inclusive storybooks, *Mahmoud*, 142 S. Ct. at 2342, and the latter concerning "Amish parents who wished to withdraw their children from conventional schooling after the eighth grade, in direct contravention of a Wisconsin law requiring children to attend school until the age of 16," *id.* at 2349—shows that Plaintiffs' claim that *Mahmoud* merely "affirmed" an alleged "century-old pedigree," Pls. Briefing at pp. 15–16, is flawed. *See Edger v. McCabe*, 84 F.4th 1230, 1235 (11th Cir. 2023) (noting one way a party can show law is clearly established is by finding a "'materially similar case [that] has already been decided,' whose facts are similar enough to give the [officials'] notice" (quoting *Keating v. City of Miami*, 598 F.3d 753, 766 (11th Cir. 2010))).

Likewise, *Mahmoud* did not reiterate a "broader, clearly established principle [that] should control the novel facts." *Keating*, 598 F.3d at 766. Defendants have never denied the "broader, clearly established principle" that "the values of parental direction of the religious upbringing and education of their children in their early and formative years have a high place in our society." Pls.' Briefing at p. 15 (quoting *Yoder*, 406 U.S. at 213–14). But such a broad statement cannot be seen as clearly established for purposes of the specific conduct here, which deals with

16

alleged actions by which parents were not notified of meetings between school officials and a child in which the child expressed confusion about their gender identity.[9] *See District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) ("Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he [or she] is doing is unlawful."); *see also Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (noting qualified immunity "inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition" (citation modified)). At bottom, there was no clearly established right at the time of the alleged First Amendment violations such that the individual Defendants should be denied qualified immunity.

The same is true for Plaintiffs' Fourteenth Amendment claims. Plaintiffs' Briefing does not address the impact of *Littlejohn* to the individual Defendants' arguments that they are entitled to qualified immunity for any due process violations. *See* [D.E. 46 at pp. 18–19]. That said, the effect of *Littlejohn* is clear: these issues—which this Court characterized as one of "if not a case of what we call first impression, that is, a new type of case, something pretty close that," [D.E. 45 at 48:06–48:08]—were, at best, unsettled prior to the Eleventh Circuit's decision in

---

[9] Plaintiffs do not argue that the individual Defendants' actions "so obviously violate[d] [the] constitution that prior case law is unnecessary." *Keating*, 598 F.3d at 766 (citation omitted). Existing substantive due process precedent precludes such an argument.

17

*Littlejohn*. Following *Littlejohn*, this Court is obligated to apply the shocks the conscience standard, as Defendants urged in their motion to dismiss. [D.E. 46 at pp. 13–15]. Plaintiffs have not shown the violation of any "clearly established" rights, such that the individual Defendants should be deprived of qualified immunity in this respect.

At a minimum, the monetary damages claims against Broskie and Washington in their individual capacities should be dismissed with prejudice, because qualified immunity is an immunity from suit and questions about its applicability should be resolved "at the earliest possible stage in litigation." *Miller v. Palm Beach Cnty. Sheriff's Off.*, 129 F.4th 1329, 1333 (11th Cir. 2025) (citations omitted). A court "errs when it reserves ruling on an official's entitlement to qualified immunity." *Id.*; *see also Howe v. City of Enterprise*, 861 F.3d 1300, 1301–03 (11th Cir. 2017) (holding district court erred in reserving ruling on qualified immunity upon a motion to dismiss). However, for the reasons more fully set forth in Defendants' motion to dismiss, Plaintiffs have failed to state a claim against Broskie and Washington in their individual capacities as a matter of law, therefore the declaratory actions against them should be dismissed as well.

**WHEREFORE**, Defendants, David Broskie, in his official and individual capacities, Destiney Washington, in her individual capacity, and the Clay County School Board ("Board") (collectively, "Defendants"), ask for an order granting the

Defendants' Motion to Dismiss and for any further relief the Court determines is just and proper.

## CERTIFICATE OF PAGE LIMIT

The undersigned certifies that this Supplemental Briefing complies with the Court's Order dated August 28, 2025, [D.E. 58] because this Supplemental Briefing is limited to twenty pages, excluding the portions exempted by Local Rule.

Dated October 30, 2024

        Respectfully submitted,

        /s J. David Marsey
        /s Jeffrey J. Grosholz
        J. DAVID MARSEY
        Florida Bar No.: 0010212
        E-mail: dmarsey@rumberger.com
        JEFFREY J. GROSHOLZ
        Florida Bar No.: 1018568
        E-mail: jgrosholz@rumberger.com
        RUMBERGER, KIRK & CALDWELL, P.A.
        101 North Monroe Street
        Suite 1050
        Tallahassee, Florida 32301
        Tel: 850.222.6550
        Fax: 850.222.8783
        Attorneys for Defendants

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 30, 2025, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: **Mary E. McAlister at**

**mmcalister@childparentrights.org,** **Vernadette R. Broyles** at **vbroyles@childparentrights.org** and **Ernest G. Trakas at etrakas@evans-dixon.com**.

/s J. David Marsey
J. DAVID MARSEY
Florida Bar No.: 0010212
E-mail: dmarsey@rumberger.com
JEFFREY J. GROSHOLZ
Florida Bar No.: 1018568
E-mail: jgrosholz@rumberger.com
RUMBERGER, KIRK & CALDWELL, P.A.
101 North Monroe Street
Suite 1050
Tallahassee, Florida 32301
Tel: 850.222.6550
Fax: 850.222.8783
Attorneys for Defendants